NADA I. SHAMONKI (SBN 205359)
nshamonki@mintz.com
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.**
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
Telephone:  (310) 586-3200
Facsimile:   (310) 586-3202

MICHAEL C. WHITTICAR (*pro hac vice forthcoming*)
mikew@novaiplaw.com
**NOVA IP LAW, PLLC**
7420 Heritage Village Plaza, Suite 101
Gainesville, VA 20155
Telephone:  (571) 386-2980
Facsimile:  (855) 295-0740

Attorneys for Defendants
DESCENDENT STUDIOS INC. and
ERIC PETERSON

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LITTLE ORBIT LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>DESCENDENT STUDIOS INC., a Texas corporation, and ERIC PETERSON, an individual,<br><br>Defendants. | Case No. 8:20-cv-00089-DOC-JDE<br><br>**DEFENDANTS' ANSWER AND DEFENSES TO PLAINTIFF'S COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br><br>Judge: Hon. David O. Carter<br><br>Complaint Filed:     1/16/2020 |

Defendants Descendent Studios Inc. and Eric Peterson (collectively the "Defendants"), by the undersigned counsel, hereby submit their answer and defenses to the complaint filed by Plaintiff Little Orbit LLC.

1.     Admitted only that the amount in controversy exceeds $75,000, exclusive of interests and costs. Otherwise, denied.  Denied that Plaintiff has adequately or sufficiently pled subject matter jurisdiction.  Denied that 15 U.S.C. §

1332, which relates to commerce in tobacco, has anything to do with this case or subject matter jurisdiction in this case.

2.      Denied.

3.      The first sentence of Paragraph 3 is admitted.   However, the citizenship of Plaintiff and the identities and citizenship of Plaintiff's members has not been properly pled as required to support diversity jurisdiction.   Denied that Plaintiff itself creates or develops electronic games, as it appears to be primarily involved in misappropriating the development efforts of others without paying for them. Admitted only that Plaintiff attempts to advertise, market and sell electronic games which it has misappropriated from others without paying for them.

4.      Admitted.

5.      Admitted.  However, Mr. Peterson was not a party to the parties' written agreements.

6.      Admitted only that Plaintiff attempts to advertise, market and sell bargain-basement "shovelware" electronic games which it has misappropriated from others without paying for them.  Denied that Plaintiff develops or publishes AAA games.  Otherwise, denied.

7.      Admitted only that Interplay did release "Descent", the first truly 3D "first-person shooter" (FPS) game and the first "six degrees of freedom" (6DoF) FPS game. However, Defendants note that Descent was originally released in "shareware" form in 1994. 1995 was the year in which the retail copies were made available in stores. The defense notes this because the Plaintiff's lack of familiarity with either the original games or Descendent Studios' reboot was a common problem during the term of the Plaintiff's relationship with the Defendants.  Otherwise, denied.

8.      Admitted only that the first two Descent games released by Interplay were commercial and critical successes by the standards of the time. However, it is worth noting that while they were well-reviewed by comparison to Doom, they did

1  not achieve the same level of commercial success as the latter because of Descent's
2  more difficult gameplay and more demanding computer system hardware
3  requirements.  Otherwise, denied.
4      9.    Admitted only that Descendent Studios was formed in November 2014
5  by current game developers who had formerly worked on Star Citizen.  Otherwise,
6  denied.  Plaintiff's wording here is misleading. The developers who formed
7  Descendent Studios were not "former game developers;" rather, the founding
8  members of the studio were all experienced, current developers who had most
9  recently chosen to leave the Star Citizen project rather than relocate to another city.
10     10.   Admitted.   However, Mr. Peterson is not a party to the relevant
11  agreements.
12     11.   Admitted.
13     12.   Admitted.  However, the amount received by Descendent Studios after
14  Kickstarter fees was substantially less than $600,000.
15     13.   Denied as stated.   Descendent Studios wanted Plaintiff to fund the PC
16  and console ports and publish all three or four versions (XBOX1, PlayStation 4,
17  Nintendo Switch and PC versions) at the same time.   However, the original
18  Development Agreement referenced only the development of a single-player PC
19  game, XBOX1 and PS4.   Otherwise, denied.
20     14.   Admitted.
21     15.   Denied.  To the contrary, Defendants stressed the need to conduct a
22  substantial marketing and advertising campaign to introduce the title and the game to
23  newer, younger audiences.
24     16.   Admitted only that the referenced document was signed and is the best
25  evidence  of its own contents and legal effect, prior to being modified by the parties'
26  course of dealing and the Terms Sheet Addendum.   Otherwise, denied.   Plaintiff did
27  not execute the agreement and deliver the needed development funds until October
28

2017.   This created a one-month delay in the development timeline attributable solely to Plaintiff.

17.     The term "role-play based team play" should be "role-based team play." Otherwise, admitted.

18.     Admitted only that the Agreement was signed by Plaintiff a month late as described in Defendants' answer to Paragraph 16 and is the best evidence of its own contents and legal effect, prior to modification through the parties' course of dealing and the Terms Sheet Addendum.  Otherwise, denied.   Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff.

19.     Admitted only that the Agreement was signed by Plaintiff a month late as described in Defendants' answer to Paragraph 16 and is the best evidence of its own contents and legal effect, prior to being modified by the parties' course of dealing and the Terms Sheet Addendum.   Otherwise, denied.   Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff.    In addition, many of the terms of the Development Agreement were inapplicable boilerplate terms.

20.     Admitted only that the Agreement was signed by Plaintiff a month late as described in Defendants' answer to Paragraph 16 and is the best evidence of its own contents and legal effect, prior to being modified by the parties' course of dealing and the Terms Sheet Addendum.   Otherwise, denied.   Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the

payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff.   In addition, many of the terms of the Development Agreement were inapplicable boilerplate terms.

21.    Admitted only that the Agreement was signed by Plaintiff a month late as described in Defendants' answer to Paragraph 16 and is the best evidence of its own contents and legal effect, prior to being modified by the parties' course of dealing and the Terms Sheet Addendum.   Otherwise, denied.   Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.   Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff.   In addition, many of the terms of the Development Agreement were inapplicable boilerplate terms.   Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible.

22.    Admitted only that the Agreement was signed by Plaintiff a month late as described in Defendants' answer to Paragraph 16 and is the best evidence of its own contents and legal effect, prior to being modified by the parties' course of dealing and the Terms Sheet Addendum.   Otherwise, denied.   Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.   Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff.   In addition, many of the terms of the Development Agreement were inapplicable boilerplate terms.   Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was

practically, legally and financially responsible.   Plaintiff, through Matthew Scott, expressly acknowledged this prior to executing the Terms Sheet Addendum.

23.    Admitted only that the Agreement was signed by Plaintiff a month late as described in Defendants' answer to Paragraph 16 and is the best evidence of its own contents and legal effect, prior to being modified by the parties' course of dealing and the Terms Sheet Addendum.  Otherwise, denied.   Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff.   In addition, many of the terms of the Development Agreement were inapplicable boilerplate terms.  Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible.  Plaintiff, through Matthew Scott, expressly acknowledged this prior to executing the Terms Sheet Addendum.

24.    Admitted only that the Agreement was signed by Plaintiff a month late as described in Defendants' answer to Paragraph 16 and is the best evidence of its own contents and legal effect, prior to being modified by the parties' course of dealing and the Terms Sheet Addendum.  Otherwise, denied.   Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff.   In addition, many of the terms of the Development Agreement were inapplicable boilerplate terms.   Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was

1  practically, legally and financially responsible.   Plaintiff, through Matthew Scott,

2  expressly acknowledged this prior to executing the Terms Sheet Addendum.

3          25.     Denied.  In fact, Plaintiff falsely promised but then failed to engage 47

4  studios to market the game.  The delays were caused by Plaintiff imposing many new

5  and additional requirements outside the specifications that delayed the development

6  timeline and created additional development costs, for all of which Plaintiff was

7  practically, legally and financially responsible.  Plaintiff, through Matthew Scott,

8  expressly acknowledged this prior to executing the Terms Sheet Addendum.  In

9  addition, Plaintiff failed to invest the time and money necessary to timely complete

10  its own development responsibilities, such as the additional application program

11  interface ("API") demanded by Plaintiff. Plaintiff had assumed this responsibility

12  due to its own budget-busting and deadline-blowing demands for changes to the

13  original specifications and requirements.

14          26.     Admitted only that the Terms Sheet Addendum was signed.   Denied that

15  it resulted from delays by Defendants.  To the contrary, the Terms Sheet Addendum

16  resulted from Plaintiff failing to pay vendors involved in the game console adaptation

17  process, including Torus and Boombox, and from Plaintiff's own budget-busting and

18  deadline-blowing demands for changes to the original specifications and

19  requirements.   In addition, Plaintiff failed to invest the time and money necessary to

20  timely complete its own development responsibilities, such as the new API which

21  Plaintiff had demanded and assumed the responsibility for developing.

22          27.     Admitted only that the Terms Sheet Addendum was signed.   Denied that

23  it resulted from delays by Defendants.  To the contrary, the Terms Sheet Addendum

24  resulted from Plaintiff failing to pay vendors involved in the game console adaptation

25  process, including Torus and Boombox, and from Plaintiff's own budget-busting and

26  deadline-blowing demands for changes to the original specifications and

27  requirements.   In addition, Plaintiff failed to invest the time and money necessary to

28

1   timely complete its own development responsibilities, such as the new API which

2   Plaintiff had demanded and assumed the responsibility for developing.

3       28.    Denied.  This date was never agreed to by Defendants and is a complete

4   fabrication by Plaintiff.  Notably, it appears nowhere in the Terms Sheet Addendum.

5   Defendants expressly declined to agree to any new due date until Plaintiff completed

6   the development of a working, complete and fully functional API, after Plaintiff had

7   demanded a new, additional API and had agreed to develop it but failed to do so.

8       29.    Denied.   Admitted only that the Agreement was signed by Plaintiff a

9   month late as described in Defendants' answer to Paragraph 16 and is the best

10  evidence of its own contents and legal effect, prior to being modified through the

11  parties' course of dealing by the Terms Sheet. Otherwise, denied.  Plaintiff and

12  Matthew Scott breached and repudiated the Agreement and interfered with

13  Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff

14  making the payment and paying the money caused a one-month development set-

15  back and delay solely attributable to Plaintiff.   In addition, many of the terms of the

16  Development Agreement were inapplicable boilerplate terms.  Plaintiff imposed

17  many new and additional requirements outside the specifications that delayed the

18  development timeline and created additional development costs, for all of which

19  Plaintiff was practically, legally and financially responsible.  Plaintiff, through

20  Matthew Scott, expressly acknowledged this prior to executing the Terms Sheet

21  Addendum.  No new deadline was agreed to because Plaintiff never completed the

22  new API which Plaintiff had demanded and agreed to develop but failed to  do so,

23  preventing any new deadline from being established.

24      30.    Denied.  Plaintiff imposed many new and additional requirements

25  outside the specifications that delayed the development timeline and created

26  additional development costs, for all of which Plaintiff was practically, legally and

27  financially responsible.   Plaintiff, through Matthew Scott, expressly acknowledged

28

1  this prior to executing the Terms Sheet Addendum.  No new deadline was agreed to

2  because Plaintiff never completed the new API which Plaintiff had demanded and

3  agreed to develop but failed to  do so, preventing any new deadline from being

4  established.  The few changes made by Defendants were either required by pending

5  legal and regulatory changes or due to  changing market conditions creating new and

6  different "best practices."

7          31.    Admitted only that the License Agreement was not assigned because

8  Plaintiff did not timely make or complete the payments as well as continued to

9  withhold key performance and impose new and additional requirements that created

10  additional delays and cost over-runs, without paying the required consideration for

11  them.  The Terms Sheet Addendum was a high-level, interim document which was

12  intended to be replaced and supplemented with a longer, more complete agreement

13  that the parties were still negotiating.   In addition, the consent of Interplay was an

14  express condition precedent to the assignment of the trademark license, and that

15  consent was never obtained.

16          32.    Admitted only that the license agreement was permitted to expire due to

17  interference from Plaintiff and Matthew Scott after they breached and repudiated the

18  Terms Sheet Addendum by stopping payments, failing in their own development

19  efforts, and continuing to impose new and additional requirements that created

20  additional delays and cost overruns.

21          33.    Denied.   Defendants had plenty of staff and resources to perform the

22  original scope of the development effort.  The delays and overruns were created by

23  Plaintiff signing and funding late, failing in its own development efforts, and

24  continuing to impose new, additional and conflicting requirements that created

25  additional delays and cost overruns.

26          34.    Denied.  One CTO left due to Plaintiff's delay in signing and funding the

27  Development Agreement.  He was quickly replaced with an equally competent and

28

1   skilled CTO.

2   35.   Denied.  The game had high online approval ratings for over 3 years

3   (70% mostly positive or better) until they were undermined by the delays caused by

4   Plaintiff imposing new requirements beyond the original specifications and delaying

5   its own development efforts.

6   36.   Denied and frivolous.   Plaintiff was expressly informed that Defendants

7   could not commit to a deadline while the new API which Plaintiff had demanded and

8   agreed to develop but failed to develop remained incomplete and while Plaintiff kept

9   imposing new, additional and conflicting demands and requirements.

10   37.   Denied.  Plaintiff did very little to advertise or market the game despite

11   its false and unfulfilled promise to employ 47 studios to market it.   What little

12   advertising Plaintiff did conduct was riddled with errors and false advertising because

13   Plaintiff was too cheap to pay its employees to read and learn about the game.

14   38.   Admitted only that there was some public discussion on message boards

15   and bulletin boards and the like.  This was a positive occurrence which any

16   competing publisher would have promoted and engaged with as free advertising.

17   Denied that the discussion was the result of any delays or breaches caused by

18   Defendants.  The delays and overruns were created by Plaintiff signing and funding

19   late, failing in its own API development efforts, and continuing to impose new,

20   additional and conflicting requirements that created additional delays and cost

21   overruns.

22   39.   Denied.

23   40.   Denied.

24   41.   Admitted only that Peterson in the scope of his employment on behalf of

25   Descendent made the comments in a testing forum to defend Descendant to interested

26   parties with a need to know, many or most of whom were under nondisclosure

27   agreements.   Denied that any of these statements were false.

28

10

42.     Defendants incorporate by reference their answers to all prior Paragraphs of Plaintiff's Complaint as though fully set forth herein.

43.     Admitted only that the Agreement was signed by Plaintiff a month late as described in Defendants' answer to Paragraph 16 and is the best evidence of its own contents and legal effect, prior to being modified by the parties' course of dealing and by the Terms Sheet Addendum.   Otherwise, denied.   Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.   Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff.   In addition, many of the terms of the Development Agreement were inapplicable boilerplate terms.   Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible.   Plaintiff, through Matthew Scott, expressly acknowledged this prior to executing the Terms Sheet Addendum.   In addition, Plaintiff failed to complete or timely complete the new API development and other development responsibilities which it had assumed, making it impossible for Defendants to agree to or set a firm completion date.

44.     Denied.   Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.   Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff.   Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible.   Plaintiff, through Matthew Scott, expressly acknowledged this prior to executing the Terms Sheet Addendum.   In addition, Plaintiff failed to complete or timely complete the additional

API which Plaintiff demanded and then agreed but failed to develop and other development responsibilities which it had assumed, making it impossible for Defendants to agree to or set a firm completion date.

45.    Denied.  Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff.  Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible.  Plaintiff, through Matthew Scott, expressly acknowledged this prior to executing the Terms Sheet Addendum.  In addition, Plaintiff failed to complete or timely complete the additional API which Plaintiff demanded and then agreed but failed to develop and other development responsibilities which it had assumed, making it impossible for Defendants to agree to or set a firm completion date.

46.    Denied.  Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff.  Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible.  Plaintiff, through Matthew Scott, expressly acknowledged this prior to executing the Terms Sheet Addendum.  In addition, Plaintiff failed to complete or timely complete the additional API which it had demanded and then agreed but failed to develop and other development responsibilities which it had assumed, making it impossible for Defendants to agree to or set a firm completion date.  Because Plaintiff never

completed the additional API which it had demanded and agreed but failed to develop and never paid the additional agreed upon $660,000, Defendants would not and could not agree to a firm completion date.  Note that no new completion date appears or is stated in the Terms Sheet Addendum.  Rather, it required Plaintiff to continue funding through December 2019.

47.    Admitted only that the License Agreement was not assigned because Plaintiff did not timely make or complete the payments as well as continued to withhold key performance and to impose new and additional requirements that created additional delays and cost over-runs without paying the required consideration for them.  The Terms Sheet Addendum was a high-level, interim document which was intended to be replaced and supplemented with a longer, more complete agreement that the parties were still negotiating. In addition, the consent of Interplay was an express condition precedent to the assignment of the trademark license, and that consent was never obtained.

48.    Denied.  The statements were not made to the public and were truthful. Moreover, Defendants had been discharged of their obligations by Plaintiff's prior material breaches and anticipatory repudiation.

49.    Denied.  Plaintiff committed the first and prior material breaches by not paying $660,000 due under the Terms Sheet Addendum, by failing to complete the additional API which Plaintiff had demanded and agreed to develop but then failed to develop, and by demanding that Defendants meet additional and conflicting requirements that were material changes to the Agreement and specifications without allotting sufficient additional time and without paying the promised additional money.   In addition, the consent of Interplay was an express condition precedent to the assignment of the trademark license, and that consent was never obtained.

50.    Denied.  To the contrary, Defendants have been injured in the amount of at least $5,660,000 by Plaintiff's failure to make required payments, wrongful

termination, and failure to complete the additional API and other development projects that Plaintiff had agreed to complete but failed to complete.

51.     Defendants incorporate by reference their answers to Paragraphs 1 through 50 of Plaintiff's Complaint as though fully set forth herein.

52.     Defendants are unable to answer this Paragraph because, in violation of Fed. R. Civ. P. 9(b), no particularity is provided as to when, to whom, where, or in what medium the alleged representation supposedly was made.  It appears to be merely a poorly pled attempt to convert Plaintiff's tenuous breach of contract claim into an even more tenuous tort claim.  Therefore, the allegations set forth in Paragraph 52 are denied for lack of sufficient knowledge and information and are objected to as being insufficiently specific.  However, Defendants did have sufficient staff for the original development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game that Defendants made available approximately five months after the Kickstarter campaign had concluded.

53.     Denied.  Plaintiff continued to pay Defendants because Plaintiff was constantly imposing new and conflicting demands and requirements beyond the scope of the Agreement and specifications, because Plaintiff had never finished the additional API which Plaintiff had demanded and agreed to develop but failed to develop, and because Plaintiff knew that Defendants had already created and published a successful and highly-rated multi-player related game.

54.     Denied.  To the contrary, Plaintiff refused to show cost data to Defendants for either development work or alleged marketing costs, because Plaintiff was not really making any sincere effort to either market or develop the game.  In addition, two console support vendors, Torus and Boombox, quit the project because Plaintiff failed to pay them money that it owed them.  Failing to pay vendors and making them quit is one way that Plaintiff created even more cost increases and delays.

55.     Defendants are unable to answer this Paragraph because, in violation of Fed. R. Civ. P. 9(b), no particularity is provided as to when, by whom, to whom, where, or in what medium the alleged representations supposedly were made.  It appears to be merely a poorly pled attempt to convert Plaintiff's tenuous breach of contract claim into an even more tenuous tort claim.  Therefore, the allegations set forth in Paragraph 55 are denied for lack of sufficient knowledge and information and are objected to as being insufficiently specific.  However, Defendants did have sufficient staff, skills and resources for the original development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game that Defendants made available approximately five months after the Kickstarter campaign had concluded.

56.     Denied.  Defendants did have sufficient staff, skills and resources for the original PC game development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game that Defendants made available approximately five months after the Kickstarter campaign had concluded.

57.     Defendants are unable to answer this Paragraph because, in violation of Fed. R. Civ. P. 9(b), no particularity is provided as to when, by whom, to whom, where, or in what medium the alleged representations supposedly were made.   It appears to be merely a poorly pled attempt to convert Plaintiff's tenuous breach of contract claim into an even more tenuous tort claim.   Therefore, the allegations set forth in Paragraph 57 are denied for lack of sufficient knowledge and information and are objected to as being insufficiently specific.   However, Defendants did have sufficient staff, skills and resources for the original development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game that Defendants made available approximately five months after the Kickstarter campaign had concluded.

58.     Defendants are unable to answer this Paragraph because, in violation of

1  Fed. R. Civ. P. 9(b), no particularity is provided as to when, by whom, to whom,
2  where, or in what medium the alleged representations supposedly were made.  It
3  appears to be merely a poorly pled attempt to convert Plaintiff's tenuous breach of
4  contract claim into an even more tenuous tort claim.  Therefore, the allegations set
5  forth in Paragraph 58 are denied for lack of sufficient knowledge and information are
6  objected to as being insufficiently specific.  However, Defendants did have sufficient
7  staff, skills and resources for the original development scope set forth in the
8  Agreement, as evidenced by the successful and highly-rated multi-player game that
9  Defendants made available approximately five months after the Kickstarter campaign
10  had concluded.

11      59.    Defendants are unable to answer this Paragraph because, in violation of
12  Fed. R. Civ. P. 9(b), no particularity is provided as to when, by whom, to whom,
13  where, or in what medium the alleged representations supposedly were made.  It
14  appears to be merely a poorly pled attempt to convert Plaintiff's tenuous breach of
15  contract claim into an even more tenuous tort claim.  Therefore, the allegations set
16  forth in Paragraph 59 are denied for lack of sufficient knowledge and information are
17  and are objected to as being insufficiently specific.  However, Defendants did have
18  sufficient staff, skills and resources for the original development scope set forth in the
19  Agreement, as evidenced by the successful and highly-rated multi-player game that
20  Defendants made available approximately five months after the Kickstarter campaign
21  had concluded.

22      60.    Defendants incorporate by reference their answers to Paragraphs 1
23  through 59 to Plaintiff's Complaint as though fully set forth herein.

24      61.    Defendants are unable to answer this Paragraph because, in violation of
25  Fed. R. Civ. P. 9(b), no particularity is provided as to when, to whom, where, or in
26  what medium each of the five separate alleged representations supposedly was made.
27  It appears to be merely a poorly pled attempt to convert Plaintiff's already tenuous

28

breach of contract claim into an even more tenuous tort claim.  Therefore, the allegations set forth in Paragraph 61 are denied for lack of sufficient knowledge and information and are objected to as being insufficiently specific.  However, Defendants did have sufficient staff, funding and resources for the original development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game that Defendants made available approximately five months after the Kickstarter campaign had concluded.

62.   Defendants are unable to answer this Paragraph because, in violation of Fed. R. Civ. P. 9(b), no particularity is provided as to when, to whom, where, or in what medium each of the five separate alleged representations supposedly was made. It appears to be merely a poorly pled attempt to convert Plaintiff's already tenuous breach of contract claim into an even more tenuous tort claim.  Therefore, the allegations set forth in Paragraph 62 are denied for lack of sufficient knowledge and information and are objected to as being insufficiently specific.  However, Defendants did have sufficient staff, funding and resources for the original development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game that Defendants made available approximately five months after the Kickstarter campaign had concluded.

63.   Defendants are unable to answer this Paragraph because, in violation of Fed. R. Civ. P. 9(b), no particularity is provided as to when, to whom, where, or in what medium each of the five separate alleged representations supposedly was made. It appears to be merely a poorly pled attempt to convert Plaintiff's already tenuous breach of contract claim into an even more tenuous tort claim.  Therefore, the allegations set forth in Paragraph 63 are denied for lack of sufficient knowledge and information and are objected to as being insufficiently specific.  However, Defendants did have sufficient staff, funding and resources for the original development scope set forth in the Agreement, as evidenced by the successful and

highly-rated multi-player game that Defendants made available approximately five months after the Kickstarter campaign had concluded.

64.    Defendants are unable to answer this Paragraph because, in violation of Fed. R. Civ. P. 9(b), no particularity is provided as to when, to whom, where, or in what medium each of the five separate alleged representations supposedly was made. It appears to be merely a poorly-pled attempt to convert Plaintiff's already tenuous breach of contract claim into an even more tenuous tort claim.   Therefore, the allegations set forth in Paragraph 64 are denied for lack of sufficient knowledge and information and are objected to as being insufficiently specific.  However, Defendants did have sufficient staff, funding and resources for the original development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game that Defendants made available approximately five months after the Kickstarter campaign had concluded.

65.    Defendants are unable to answer this Paragraph because, in violation of Fed. R. Civ. P. 9(b), no particularity is provided as to when, to whom, where, or in what medium each of the five separate alleged representations supposedly was made. It appears to be merely a poorly-pled attempt to convert Plaintiff's already tenuous breach of contract claim into an even more tenuous tort claim.   Therefore, the allegations set forth in Paragraph 65 are denied for lack of sufficient knowledge and information and are objected to as being insufficiently specific.  However, Defendants did have sufficient staff, funding and resources for the original development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game that Defendants made available approximately five months after the Kickstarter campaign had concluded.  Any damages or injury incurred by the parties were due Plaintiff's breaches of the Agreements, failure to continue funding, and failing to fulfill its own development, marketing and funding obligations.

66.     Defendants incorporate by reference their answers to Paragraphs 1 through 65 to Plaintiff's Complaint as though fully set forth herein.

67.     Denied.  All of the cited statements were true.   Many of them were also simply opinions.

68.     Denied.  Defendant already had a terrible reputation for underfunding and sabotaging development projects and attempting to misappropriate the work of its developers.

69.     Denied.  All of the cited statements were true.  Many of them were also simply opinions.

70.     Denied.  All of the cited statements were true.  Many of them were also simply opinions.

71.     Denied.  All of the cited statements were true.  Many of them were also simply opinions.

72.     Denied.  Defendant already had a terrible reputation for underfunding and sabotaging development projects and attempting to misappropriate the work of its developers.

73.     There is no subject or object to Paragraph 73 of Plaintiff's Complaint. Given that so much of Plaintiff's Complaint is sloppy, inaccurate, fictitious nonsense, Defendants feel comfortable denying - and therefore deny - whatever Plaintiff intended to write in Paragraph 73 to Plaintiff's Complaint.

74.     Denied.  Any damages or losses incurred by Plaintiff are the direct and proximate result of its own fraudulent inducement, wrongful termination, prior material breaches, and wrongful anticipatory repudiation of the Development Agreement and the Terms Sheet Addendum, including breach of Plaintiff's marketing, funding and development obligations.

75.     Defendants incorporate by reference their answers to Paragraphs 1-74 to Plaintiff's Complaint as though fully set forth herein.

76.     Admitted only that the Development Agreement was signed belatedly by Plaintiff and is was the best evidence of its own contents and legal effect until it was modified by the parties' course of dealing, by Plaintiff's breaches, and by the Terms Sheet Addendum.   Otherwise, denied.   Plaintiff was required to pay for the development pursuant to the Terms Sheet Addendum but failed to do so.   The Terms Sheet Addendum (Paragraph 4) gave Plaintiff the right to purchase the game and the IP for $1 million, but Plaintiff failed to do so.

77.     Admitted only that the Development Agreement was signed belatedly by Plaintiff and is was the best evidence of its own contents and legal effect until it was modified by the parties' course of dealing, by Plaintiff's breaches, and by the Terms Sheet Addendum.   Otherwise, denied.   Plaintiff was required to pay for the development pursuant to the Terms Sheet Addendum but failed to do so.   The Terms Sheet Addendum (Paragraph 4) gave Plaintiff the right to purchase the game and the IP for $1 million, but Plaintiff failed to do so.

78.     Admitted only that Plaintiff makes this false and frivolous claim. Otherwise, denied.  Plaintiff was required to pay for the development pursuant to the Terms Sheet Addendum but failed to do so.  The Terms Sheet Addendum (Paragraph 4) gave Plaintiff the right to purchase the game and the IP for $1 million, but Plaintiff failed to do so.

79.     Admitted only that Plaintiff makes this false and frivolous claim. Otherwise, denied.  Plaintiff was required to pay for the development pursuant to the Terms Sheet Addendum but failed to do so.  The Terms Sheet Addendum (Paragraph 4) gave Plaintiff the right to purchase the game and the IP for $1 million, but Plaintiff failed to do so.

80.     Admitted only that Plaintiff makes this false and frivolous claim. Otherwise, denied.  Plaintiff was required to pay for the development pursuant to the Terms Sheet Addendum but failed to do so.  The Terms Sheet Addendum (Paragraph

4) gave Plaintiff the right to purchase the game and the IP for $1 million, but Plaintiff failed to do so.  Declaratory judgment is not necessary or appropriate when the parties have sued each other for damages arising from actual breach of contract.

## Defenses and Affirmative Defenses

## First Affirmative Defense

## (Improper Venue and Lack of Personal Jurisdiction, Especially Over Eric Peterson)

This court lacks personal jurisdiction over Eric Peterson and venue here is improper over Mr. Peterson.   Mr. Peterson was not a party to any of the parties' contracts and never visited or went to California in connection with the parties' relationship.

## Second Affirmative Defense

## (Anticipatory Repudiation and Prior Material Breach)

As described in more detail in the accompanying counterclaim, Plaintiff committed anticipatory repudiations and prior material breaches which discharged Defendants of any obligations under the contracts.  Among these prior material breaches and repudiations were: (1) Plaintiff not putting out the promised marketing spend and efforts with the 47 promised studios;  (2) not paying eleven required installments of $60,000 due under the Terms Sheet Addendum; (3) demanding additional budget-busting, delay-creating work-product and development efforts without paying for them nor allotting sufficient time for their completion; (4) agreeing to develop but failing to develop the additional API demanded by Plaintiff; (5) failing to pay console vendors, including Torus and Boombox, forcing Boombox to quit the project in November of 2018;  (6) failing to pay other project vendors, such as CGBott and Glass Egg, delaying both the PC and console versions of the games;  (7) switching engine versions from v. 4.18 to v. 4.19; (8) changing the user interface ("UI") back and forth at least four times;  (9) adding new consoles,

1  including the lower-end technology Nintendo Switch,  that required more

2  modifications and adaptations; (10) failing to document and account for and share

3  documentation of expenses paid by Plaintiff;  (11) not providing quarterly statements

4  or any statements about presales;  and, (12) not providing any royalty accounting(s)

5  after termination of the agreement.

6  <u>**Third Affirmative Defense**</u>

7  <u>**(Wrongful Termination)**</u>

8  Plaintiff wrongfully terminated the Development Agreement and the Terms

9  Sheet Addendum in breach thereof due to delays and cost overruns caused by its own

10  breaches, failures to make necessary payments for which it was responsible, breach of

11  its agreement to develop the additional API, and imposition of extra-contractual

12  changes and requirements.

13  <u>**Fourth Affirmative Defense**</u>

14  <u>**(Fraud In the Inducement)**</u>

15  Plaintiff induced the Development Agreement and the Terms Sheet Addendum

16  by Matthew Scott falsely representing and claiming that Plaintiff had the contacts and

17  funds to fund the development project and to advertise the game through 47 different

18  studios.   In fact, all of  those representations and claims were  false and untrue, and

19  Plaintiff had to borrow over $ 1 million to fund the game development project and

20  did not advertise or promote the game through anything close the represented 47

21  studios.

22  <u>**Fifth Affirmative Defense**</u>

23  <u>**(Truth)**</u>

24  To the extent the statements challenged as libelous or defamatory are facts

25  rather than opinions, they true and correct.

26

27

28

## Sixth Affirmative Defense

## (Opinion)

The statements challenged as libelous or defamatory are opinions rather than statements of fact.

## Seventh Affirmative Defense

## (Privilege)

The statements challenged as libelous or defamatory are and were privileged as they were made in a private forum to interested persons with a right to know and an interest in the subject matter and possibly to correct false statements and misrepresentations previously made by Plaintiff about the same subject matter.  In addition, many or most of the recipients of the challenged statements were bound by non-disclosure agreements.

## Eighth Affirmative Defense

## (Failure To Plead or Perform Satisfaction of Conditions Precedent)

The approval of Interplay was an express condition precedent to Defendants' obligation to assign the trademark license under Paragraph 9 of the Terms Sheet Addendum.   Plaintiff fails to allege that any such approval was ever sought or obtained.

Under Paragraph 4 of the Terms Sheet Addendum, Plaintiff had the right to purchase the Game-related IP and work-product by paying $1 million.   Plaintiff fails to allege that any such payment was ever made.

## Ninth Affirmative Defense

## (Failure To Plead Fraud or Negligent Representation With Particularity As Required By Rule 9(b))

Plaintiff has utterly failed to plead fraud or negligent misrepresentations consistent with the particularity requirements of Fed. R. Civ. P. 9(b).  Plaintiff fails to

specify when, where, to whom, and by what medium any of the alleged misrepresentations were made.

### **Tenth Affirmative Defense**

### **(Economic Loss and Source or Duty Rule)**

Plaintiff's fraud and negligent misrepresentation claims are barred by the economic loss rule and the gist of the action doctrine in that they merely attempt to re-characherterize and mis-charachterize contractual promises and warranties as tort claims and duties.

### **Eleventh Affirmative Defense**

### **(Declaratory Judgment Inappropriate)**

Declaratory judgment is not necessary or appropriate when the parties have sued each other for damages arising from actual breach of contract.

### **Twelfth Affirmative Defense**

### **(Additional Defenses)**

Defendants hereby give notice that they intend to rely upon any additional defenses that become available or apparent during discovery and thus reserve the right to amend their Answer to assert such additional defenses.

WHEREFORE, Defendants pray for judgment on Plaintiff's Complaint as follows:

1.      Plaintiff takes nothing by way of its Complaint;

2.      That Defendants be awarded judgment in their favor in this action; and

3.      For such other and further relief as the Court may deem just and proper.

Dated:  February 28, 2020                    Respectfully submitted,

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC

By      /s/ Nada I. Shamonki

Nada I. Shamonki
Attorneys for Defendants
DESCENDENT STUDIOS INC. and
ERIC PETERSON

## **DEMAND FOR JURY TRIAL**

Defendants Descendent Studios Inc. and Eric Peterson hereby demands trial by jury.

Dated:  February 28, 2020                           Respectfully submitted,

                                                    MINTZ LEVIN COHN FERRIS GLOVSKY
                                                    AND POPEO PC

                                          By     /s/ Nada I. Shamonki
                                                    Nada I. Shamonki
                                                    Attorneys for Defendants
                                                    DESCENDENT STUDIOS INC. and
                                                    ERIC PETERSON

## CERTIFICATE OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and am not a party to the above-entitled action.

On February 28, 2020, I filed a copy of the following document(s):

**DEFENDANTS' ANSWER AND DEFENSES TO PLAINTIFF'S COMPLAINT; DEMAND FOR JURY TRIAL**

By electronically filing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- **Leo Edward Lundberg , Jr**

   leo.law.55@gmail.com

- **Michael Danton Richardson**

   mdantonrichardson@yahoo.com

Executed on February 28, 2020, at Los Angeles, California.  I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

/s/ Diane Hashimoto_____
Diane Hashimoto

97208679v.1