M. DANTON RICHARDSON (State Bar No. 141709)
mdantonrichardson@yahoo.com
LEO E. LUNDBERG, JR. (State Bar No. 125951)
leo.law.55@gmail.com
LAW OFFICE OF M. DANTON RICHARDSON
131 N. El Molino Ave., Suite 310
Pasadena, CA 91101

*Attorneys for Plaintiff,*
LITTLE ORBIT LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LITTLE ORBIT LLC, a California Limited Liability Company, <br><br> Plaintiff, <br><br> vs. <br><br> DESCENDENT STUDIOS INC., a Texas corporation, and ERIC PETERSON, an individual, <br><br> Defendants. <br>_____<br><br>DESCENDENT STUDIOS INC., a Texas corporation, <br><br> Counterclaimant, <br><br> vs. <br><br> LITTLE ORBIT LLC, a California Limited Liability Company, <br><br> Counter Defendant. <br>_____ | Case No.: 8:20-cv-00089-DOC-JDE <br><br> Judge:   Hon. David O. Carter <br><br> **PLAINTIFF LITTLE ORBIT LLC'S ANSWER TO DESCENDENT STUDIOS INC.'S COUNTERCLAIM** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff/Counter-Defendant Little Orbit LLC ("Little Orbit"), by and through its undersigned counsel, hereby submits its answers and defenses to the Counterclaim of Defendant/Counterclaimant Descendent Studios Inc. ("Descendent") as follows:

## PARTIES AND JURISDICTION

1. Admitted.

2. Admitted.

3. Plaintiff avers that its members are all residents of California and admits that diversity jurisdiction exists.

4. Admitted.

5. Admitted.

6. Admitted.

## COUNT I: BREACH OF CONTRACT

7. Little Orbit repeats and re-alleges Paragraphs 1 through 6 above as if fully set forth herein.

8. Admitted.

9. Denied. Little Orbit performed all, or substantially all, of the significant things that the Development Agreement and the Terms Sheet required Little Orbit to perform, except those things Little Orbit was excused from performing due to Descendent Studios' breach of the Development Agreement and Terms Sheet. Little Orbit further alleges as follows:

   (A) Little Orbit hired 47 studios on retainer to perform PR and marketing services between May 2018 and June 2019 including 3 full days of E3 meetings during June 2018 with potential distributors and press with total 47 studios invoices of more than $66,000 and more fees from the ESA for E3 booth space;

   (B) Little Orbit required Descendent to deliver what was agreed upon in the Development Agreement, the Game Design Document, the Gamestorm specifications, and the Terms Sheet, and only minor additional items were requested based on playtesting and defects, a common occurrence in game development;

(C)    Descendent proposed and was paid for 2 milestones for the Gamestorm project which included the scope for the additional API that included many different features such as Authentication, Build environments, Store purchases, Entitlements, and Game state. Descendent and its contractors were given several months to complete this project but failed to produce any meaningful Gamestorm deliverables forcing Little Orbit to take over development at its own additional expense to help Descendent finish the game. From October 2018 through February 2019, Little Orbit delivered several different features for the API, but Descendent lacked staff to complete the integration into the game forcing Little Orbit to add further resources to do the in-game integration itself;

(D)    Little Orbit's relationship with Torus is immaterial to Descendent and its claims. From March 2018 through July 2018, Torus missed significant milestones on a different project for Little Orbit, and when Little Orbit withheld milestone payments related thereto, Torus voluntarily stopped work on the Descent project. Little Orbit's relationship with Boombox is immaterial to Descendent and its claims. Boombox remains on good terms with Little Orbit and awaits the opportunity to continue the project. Boombox only stopped working after Descendent refused to allow anyone into the source code repository in mid-February 2019;

(E)    Little Orbit has made all contractual payments to CGBott, Glass Egg, and other project vendors. In any event, no payment delays, if any occurred, inhibited Descendent from performing its duties;

(F)    The Development Agreement required Descendent to produce console versions of the game, and First Party manufacturers like Microsoft and Sony required the upgrade to Unreal from v. 4.18 to v. 4.19 in order to submit for approval;

(G)    Descendent initiated the change in their own user interface ("UI") to deviate significantly from what was agreed in the Game Design Document without consulting Little Orbit for approval. This "modernization" change was announced and previewed to Descendent's Bright Locker backers in February 2018. This new version of the UI violated industry standards and was significantly worse than the agreed upon and previously

implemented UI. Descendent lacked the staff to properly implement a reasonably usable, industry standard UI and, in November 2018, Little Orbit was forced to take over development of the UI at their own expense both through internal and contracted resources to help Descendent finish the game;

(H) Little Orbit requested and obtained Descendent's enthusiastic support for adding the Nintendo Switch because the addition of a new console would generate more in royalties for Descendent;

(I) All project expenses were properly documented;

(J) Little Orbit shared all presales data that it obtained, but due to the continuously delayed product launch, all presales were ultimately canceled or refunded.

10. Admitted that the parties agreed to new requirements which led to the parties executing a Terms Sheet Addendum in November of 2018. Except as so admitted the allegations are denied. Little Orbit further alleges the Terms Sheet was to provide additional consideration to Little Orbit in exchange for the significant amount of additional investment that had already been paid to Descendent and to compensate for anticipated further investment from Little Orbit to complete the game. This consideration included the critical transfer of the Interplay license for the Descent trademark, so that Little Orbit could ensure good standing with Interplay and avoid any potential licensing issue that might block the release of the game.

11. Denied. Little Orbit performed all, or substantially all, of the significant things that the Development Agreement and the Terms Sheet required Little Orbit to perform, except those things Little Orbit was excused from performing due to Descendent Studios' breach of the Development Agreement and Term Sheet. Little Orbit further alleges that the Terms Sheet expressly provided as follows:

> Little Orbit agrees to continue funding Descendent's $60,000 monthly payroll in return for services and deliverables by Descendent in connection with the Game until December 31, 2019, ***so long as such services and deliverables from Descendent are provided in a timely manner and provided Descendent does not materially breach its obligations in providing such services and deliverables***. [emphasis added]

As made clear by the foregoing, the Terms Sheet was not simply a one-way obligation on the part of Little Orbit but expressly made Little Orbit's payment obligations contingent upon Descendent providing "services and deliverables" in a "timely manner." After agreeing to the Terms Sheet, Descendent made express commitments as to timely delivery but failed to comply with its obligations. For example, Descendent agreed to provide agreed upon deliverables on December 15, 2018 and then again on January 25, 2019. Neither deliverable met the agreed upon scope violating Descendent's obligation to deliver in a timely manner and creating a breach in its obligations under the Terms Sheet. Put simply, contrary to Descendent's claim of breach, all funding required under the Terms Sheet was subject to Descendent complying with its material obligations, which it failed to do.

12. Denied. Little Orbit performed all, or substantially all, of the significant things that the Development Agreement and the Terms Sheet required Little Orbit to perform, except those things Little Orbit was excused from performing due to Descendent Studios' breach of the Development Agreement and Terms Sheet. Little Orbit further alleges the Terms Sheet expressly provided as follows:

> Little Orbit agrees to continue funding Descendent's $60,000 monthly payroll in return for services and deliverables by Descendent in connection with the Game until December 31, 2019, *so long as such services and deliverables from Descendent are provided in a timely manner and provided Descendent does not materially breach its obligations in providing such services and deliverables*. [emphasis added]

As made clear by the foregoing, the Terms Sheet was not simply a one-way obligation on the part of Little Orbit but expressly made Little Orbit's payment obligations contingent upon Descendent providing "services and deliverables" in a "timely manner." After agreeing to the Terms Sheet, Descendent made express commitments as to timely delivery but failed to comply with its obligations. For example, Descendent agreed to provide agreed upon deliverables on December 15, 2018 and then again on January 25, 2019. Neither deliverable met the agreed upon scope violating Descendent's obligation to deliver in a timely manner and creating a breach in its obligations under the Terms Sheet. Put simply, contrary to Descendent's claim of breach, all

funding required under the Terms Sheet was subject to Descendent complying with its material obligations, which it failed to do.

13. Denied. Little Orbit performed all, or substantially all, of the significant things that the Development Agreement and the Terms Sheet required Little Orbit to perform, except those things Little Orbit was excused from performing due to Descendent Studios' breach of the Development Agreement and Terms Sheet. Little Orbit further alleges that after Descendent failed to deliver the completed Single Player game on January 25, 2019, Little Orbit made a partial payment towards Descendent's February 2019 invoice, in the hope withholding part of the payment would incentivize Descendent to step it up and deliver the agreed upon milestones (withholding payments is a common industry mechanism to provide a late developer incentive to deliver agreed upon milestones). Rather than recognize and take responsibility for its failings, and despite more than 9 months of goodwill and diligent effort from Little Orbit to help Descendent complete the Game and the significant investment from Little Orbit of more than double what was originally agreed, Descendent chose to immediately claim Little Orbit was in breach only a single day after receiving the reduced payment. Little Orbit had never resorted to such extreme measures during the entire time Descendent failed to perform their duties. In an effort to salvage the failing project, Little Orbit subsequently cured the alleged breach on February 5, 2019, by paying an additional $20,000 of payroll to cover the cost of Descendent's staff through mid-February. Notwithstanding that payment, Descendent still failed to comply with its obligations and commitments leaving Little Orbit no choice but to terminate the Agreement. Little Orbit has received no net revenue from the sale of Descent. All presales were canceled and refunded to players after Descendent failed to cure their breach by the end of February 2019. No royalties were required.

14. Denied. Little Orbit performed all, or substantially all, of the significant things that the Development Agreement and the Terms Sheet required Little Orbit to perform, except those things Little Orbit was excused from performing due to Descendent Studios' breach of the Development Agreement and Terms Sheet. Little Orbit further alleges that Descendent's breach of contract and subsequent refusal to agree to allow Little Orbit to complete and release the game

has prevented Little Orbit from recouping the 2 million dollars it has spent to date on the project, and cost Little Orbit significantly more in anticipated profits that would have been earned had Descendent fulfilled its contractual obligations during the original agreed timeline or at any time during the 9 months of extended timeline granted by Little Orbit. Those reasonably anticipated lost profits are estimated to be in excess of $5,000,000.

15. Denied. Descendent initiated all material changes to the scope including but not limited to the change in UI and the additional Gamestorm API requirements. Furthermore, Descendent's Peterson agreed that all requirements for the Single Player game were not dependent on the API, and that Descendent would deliver the completed Single Player game with all agreed upon scope by January 25, 2019. Descendent's "final build" ultimately delivered in February 2019 did not contain a completed Single Player game with all requirements documented by Little Orbit in their second response letter dated February 8, 2019, constituting a material breach of the parties' agreement.

## COUNT II: LIBEL, DEFAMATION AND TRADE LIBEL

16. Little Orbit repeats and re-alleges Paragraphs 1 through 15 as if fully set forth herein.

17. Denied. Little Orbit made no statements to the public or the trade press about Descendent until after Descendent's claims were reported in gaming related mediation and Descendent's statement only contained information that was truthful and already public knowledge.

18. Denied. Little Orbit had no involvement in the pcgamer.com article or in any way publicizing the text of Little Orbit's legal claims asserted in this lawsuit. Upon researching and reviewing the matter, it appears the pcgamer article was based on a techraptor.net article dated February 24, 2020. In that article the author links to a resetera.com thread where a member of the Descendent community named KSweeley posted the complete legal claim.

19. Denied.

20. Denied.

21. Denied.

22. Denied.
23. Denied.
24. Denied.
25. Denied.
26. Denied.
27. Denied.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

### (Anticipatory Repudiation and Prior Material Breach)

28. As described in more detail in Little Orbit's Complaint, which Little Orbit incorporates herein by this reference, Descendent committed anticipatory repudiations and prior material breaches which discharged Defendants of any obligations under the contracts.

### Second Affirmative Defense

### (Fraudulent Inducement)

29. Descendent knew that completion of the development project was time sensitive due to the rapid development of the gaming world. Descendent induced Little Orbit to enter into the Development Agreement and the Terms Sheet Addendum by falsely representing and claiming that Descendent had the ability to complete the development project in a timely manner and according to specifications. In fact, all of those representations and claims were false and untrue. Descendent made such false representations to induce Little Orbit to provide funding for the development project.

### Third Affirmative Defense

### (Truth)

30. To the extent the statements challenged as libelous or defamatory are facts rather than opinions, they true and correct.

//

### Fourth Affirmative Defense

### (Opinion)

31. The statements challenged as libelous or defamatory are opinions rather than statements of fact.

### Fifth Affirmative Defense

### (Privilege)

32. The statements challenged as libelous or defamatory are and were privileged as they were made in a private forum to interested persons with a right to know and an interest in the subject matter and possibly to correct false statements and misrepresentations previously made by Descendent about the same subject matter.

### Sixth Affirmative Defense

### (Unclean Hands)

33. Each and every claim alleged against Little Orbit is barred in its entirety by the doctrine of unclean hands.

### Seventh Affirmative Defense

### (Failure to Mitigate Damages)

34. Little Orbit is informed and believes, and upon such information and belief alleges, that had Descendent taken reasonable steps toward mitigating its losses (and it did not), Descendent would not have suffered the damages allegedly sustained, and its right to recover damages are barred or diminished accordingly.

### Eighth Affirmative Defense

### (Estoppel)

35. Descendent is estopped from seeking relief due to its own acts or omissions with reference to the subject matter of the Counterclaim.

### Ninth Affirmative Defense

### (Waiver)

36. Descendent has engaged in conduct and activities sufficient to constitute a waiver of any alleged breach of contract or any other conduct, if any, alleged in its Counterclaim.

### Tenth Affirmative Defense

### (Additional Defenses)

37. Little Orbit hereby gives notice that it intends to rely upon any additional defenses that become available or apparent during discovery and thus reserve the right to amend its Answer to assert such additional defenses.

### PRAYER FOR RELIEF

**WHEREFORE**, Little Orbit prays for Judgment on Descendent's Counterclaim as follows:

(a) That Descendent take nothing by way of its Counterclaim;

(b) That Little Orbit be awarded judgment in its favor in this action;

(c) That attorneys' fees be awarded to Little Orbit as appropriate;

(d) That costs of suit be awarded to Little Orbit; *and*

(e) such other and further relief as the Court deems appropriate.

### DEMAND FOR JURY TRIAL

Little Orbit hereby demands a jury trial on all claims for relief triable by jury.

DATED: April 3, 2020              **LAW OFFICE OF M. DANTON RICHARDSON**

By: ___/s/ M. Danton Richardson_____
M Danton Richardson

*Attorney for Plaintiff,*
Little Orbit LLC

# CERTIFICATE OF SERVICE

I hereby certify that on this 3rd Day of April 2020, the foregoing Answer to Counterclaim was filed with the Court's CM/ECF system and was served on the following counsel of record via email:

Michael C. Whitticar; VSB No. 32968
NOVA IP Law, PLLC
7420 Heritage Village Plaza, Suite 101
Gainesville, VA 20155
Tel:  571-386-2980
Fax:  855-295-0740
Email: mikew@novaiplaw.com
Counsel for Defendants

NADA I. SHAMONKI (SBN 205359)
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
Telephone: (310) 586-3200
Facsimile: (310) 586-3202
Email: nshamonki@mintz.com
Counsel for Defendants

/s/ M. Danton Richardson
M. Danton Richardson