NADA I. SHAMONKI (SBN 205359)
nshamonki@mintz.com
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.**
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
Telephone:  (310) 586-3200
Facsimile:   (310) 586-3202

MICHAEL C. WHITTICAR (*admitted pro hac vice*)
mikew@novaiplaw.com
**NOVA IP LAW, PLLC**
7420 Heritage Village Plaza, Suite 101
Gainesville, VA 20155
Telephone:  (571) 386-2980
Facsimile:   (855) 295-0740

Attorneys for Defendant/Counterclaimant
DESCENDENT STUDIOS INC. and
Defendant ERIC PETERSON

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LITTLE ORBIT LLC, a California Limited Liability Company, | Case No. 8:20-cv-00089-DOC-JDE |
| | **JOINT RULE 26(f) REPORT** |
| Plaintiff, | |
| vs. | |
| DESCENDENT STUDIOS INC., a Texas corporation, and ERIC PETERSON, an individual, | Judge: Hon. David O. Carter |
| | Complaint Filed:   1/16/2020 |
| Defendants. | |
| DESCENDENT STUDIOS INC., a Texas corporation, | |
| Counterclaimant, | |
| vs. | |
| LITTLE ORBIT LLC, a California Limited Liability Company, | |
| Counterdefendant. | |

**Planning Conference**

Counsel engaged in a discovery and planning conference by telephone on or about April 20, 2020. The parties were hopeful of entering into a binding arbitration agreement prior to April 29, 2020, but have not yet reached an agreement on the terms of a binding arbitration agreement.

**Joint Rule 26 Report**

**1. Short Factual Summary of the Case and of Claims and Defenses**

    **A.    Plaintiff's Statement**

Plaintiff Little Orbit is a worldwide video game developer and publisher.

In August of 2017, Descendent Studios approached Little Orbit about providing the financial support necessary to complete the development of a new version of the extremely popular "Descent" video game in return for which Little Orbit would publish the "Descent: Underground" game subject to the payment and royalty terms agreed upon between the parties.

Little Orbit and Descendent entered into a "Development Agreement" effective September 1, 2017 (the "Agreement"). Even though Little Orbit paid to Descendent all sums required under the Agreement, Descendent failed to meet any of the delivery dates required by the parties' Agreement. In an effort to salvage the project and allow Descendent more time to complete the Game, the parties entered into a "Terms Sheet" which modified and supplemented the Agreement.

Pursuant to the Terms Sheet, Little Orbit committed to fund Descendent's monthly payroll going forward in the amount of $60,000 per month "in return for services and deliverables by Descendent in connection with the Game…so long as such services and deliverables are provided in a timely manner and provided Descendent does not materially breach its obligations in providing such services and deliverables." Descendent still continued to fail to meet the deliverable requirements and specifications thereby breaching the Terms Sheet.

The Game was originally planned for a May 2018 retail release date. As a

result of Descendent's slow and problematic progress, the release date for the Game was pushed back to a November 2018 release date. Further delays by Descendent required the release date for the Game to be pushed back a final time to a February 2019, which likewise was not met. Descendent ultimately failed to timely deliver the completed Game required under the specifications of the Agreement or otherwise comply with the Terms Sheet.

Descendent also failed to provide the assignment of the Trademark License Agreement by and between Interplay Entertainment Corp. and Descendent as required under the Terms Sheet Amendment.

Plaintiff further alleges that Defendants made numerous false representations about their ability to complete the game prior to entering into the Agreement and Terms Sheet.

Prior to entering into the Agreement with Little Orbit, Descendent Studios was able to raise funds for the development of "Descent: Underground" through a Kickstarter campaign which, on information and belief, raised over $600,000 based on the popularity of the Descent game among fans.

On information and belief, Peterson, acting on his own behalf as well as in his capacity as the CEO of Descendent, made multiple false and disparaging statements about Little Orbit to the gaming community in an effort to cover up Defendants' failures and inability to meet the agreed scope and to cast blame for the failure of the Game to be published on Little Orbit.

**B.     Defendants' Statement**

This is a classic case of scope creep in software development. Plaintiff constantly imposed new demands and requirements on Defendants and then acted surprised when its changes caused cost overruns and delays. Mid-stream, Plaintiff wanted to change a key component called an application program interface or "API" and Plaintiff assumed sole financial and functional responsibility for developing and producing the new API. Plaintiff failed to develop and produce the

new API. This prohibited Defendants from being able to complete the project. In the Term Sheet, Plaintiff promised and agreed to pay Defendants another $600,000 to permit them to complete the project. However, Plaintiff failed to complete the API, prevented the project from being completed, and then terminated the project and failed to pay the additional $600,000, all on a fictitious pretense resulting from Plaintiff's inability and unwillingness to complete the API. In post-mortem discussions, Plaintiff's principal admitted that Plaintiff had terminated the project and stopped the payments before and without fulfilling its responsibility to complete the API.

In fact, Plaintiff simply ran out of money and decided that the best defense is a good offense. This is demonstrated by the fact that Plaintiff failed to pay at least two known key vendors during the term of the project, causing vital third party vendors and suppliers to quit the project, further delaying and hindering completion and increasing the costs of the project.

Defendant Descendant therefore seeks damages of $2 million for Plaintiff's breach of contract.

The Parties agree that this case is not "complex" and that there is no need to implement the procedures set forth in the Manual for Complex Litigation.

**2. Short Synopsis of the Principal Issues in the Case**

    **A.**    **Plaintiff's Contentions**

Plaintiff is asserting claims against Defendants for Breach of Contract, Negligent Misrepresentation, Fraud, Trade Libel/Commercial Disparagement and Declaratory Relief.

The legal issues in dispute include, but are not limited to: (1) whether Defendant Descendent breached its contractual obligations to Plaintiff under the Agreement Terms Sheet by failing to timely deliver a completed Game meeting the specifications and requirements of the parties' agreements and also failing to complete the assignment of the "Descent" trademark license; (2) whether

-3-

Defendants made fraudulent or negligent misrepresentations to Plaintiff regarding Descendent's ability to develop the Game; (3) and whether Defendants made false and disparaging statements about Little Orbit.

### B.  Defendants' Statement

The principle issues in the case are likely to be:

A. Whether the Court has subject matter jurisdiction over this case. Plaintiff has not pled the identities or citizenship of its LLC members.

B. Whether the Court has personal jurisdiction over individual Defendant Eric Peterson, who is not party to any agreement or any forum selection clause and never travelled to California before the disputes arose.

C. Who breached the contracts first and the amount of damages for the breach.

D. Whether Plaintiff has pled fraud with sufficient particularity.

E. Whether Plaintiff's fraud claim is barred by the economic loss rule, source of duty rule, or gist of the action doctrine.

F. Whether Plaintiff's trade libel claim or its complaint as a whole constitute SLAPP violations.

### 3. Statement of Whether Parties are Likely to Be Added and Whether Pleadings are Likely to Be Amended

Plaintiff is not aware of any new parties to be added or potentially added at this time.

Defendants have agreed to permit Plaintiff to file an amended complaint to try to adequately plead subject matter and diversity jurisdiction and fraud. Defendants are not aware of any new parties to be added or potentially added at this time.

### 4. Statement of Issues Any Party Believes May Be Determined by Motion and a List of Contemplated Law and Motion Matters

The parties agree that all dispositive motions should be filed such that they may be heard no later than Monday, November 16, 2020.

Plaintiff may file a motion for summary judgment as to one or more of the claims issue, including Descendent's claim for libel, defamation and trade libel which is based on a news report regarding the Complaint filed in this matter rather than any statements by Plaintiff.

Defendants intend to file motions to dismiss for lack of personal jurisdiction over Mr. Peterson and based on Plaintiff's failure to identify its members and their domiciles, which is necessary for Plaintiff to adequately plead subject matter and diversity jurisdiction since it is an LLC.  Defendants plan to file motions for SLAPP sanctions and to dismiss the trade libel claim on truth and First Amendment grounds.  Defendants plan to file a motion to dismiss Plaintiff''s fraud claim for failure to state a claim for lack of specificity and because it is barred by the economic loss rule or gist of the action doctrine.  Defendants plan to file these motions after Plaintiff files the First Amended Complaint that Defendants agreed several weeks ago to permit Plaintiff to file.

The parties are discussing whether to submit this case to binding arbitration and may file a motion to stay or dismiss without prejudice if an arbitration agreement is reached.

### 5. Statement of What Settlement Discussions Have Occurred and Recommended Settlement Procedure

The parties have held substantial settlement discussions to date but, numerically speaking, are not especially close to settlement.  The parties are willing to participate in a judicial settlement conference in July or August of 2020.

## 6. Discovery Status and Plan

### A. Status of Discovery

If the parties do not promptly agree on the terms of an arbitration agreement, they will commence written discovery forthwith.

### B. Rule 26(f)(3)(A): Initial Disclosures

If an arbitration agreement is not reached before then, the parties will serve their initial disclosures by May 20, 2020,  The parties reserve the right to modify, amend, or supplement such disclosures, subject to further investigation, discovery, the addition of parties, or further amendment of the pleadings.

### C. Rule 26(f)(3)(B): Subjects, Completion Date, and Phasing of Discovery

#### 1. Subjects of Discovery

##### i. Plaintiff's Statement

Plaintiff plans to conduct discovery into the negotiations and communications between the parties, Defendants' work on the game, including what was accomplished and when, as well as any other projects, Defendants' commitments regarding the development of the game and whether those commitments were met, the personnel assigned to work on the game and their qualifications, Defendants' statements to the public including the gaming community regarding the game and/or Plaintiff or its principals and employees, Defendants' finances, financial statements and condition, and solvency.

##### ii. Defendants' Statement

Defendants plan to take discovery into the fact and reasons why Plaintiff did not pay key third-party project vendors, the identities and domiciles of Plaintiff's members, Plaintiff's API development efforts and completion status, why Plaintiff never completed the API, where the allegedly missed completion deadline appears (it is not mentioned in the Term Sheet), Plaintiff's marketing efforts, and Plaintiff's finances, financial statements and condition, and solvency.

**Rule 26(f)(3)(C): Electronic Discovery**

Electronic records may be produced in hard copy, in PDF or in non-proprietary native formats as to e-mails. If native format with intact metadata is required as to particular documents or categories thereof as to issues of authenticity, alteration, disposal or completeness, any party may request and receive them in native format with intact metadata.

The parties have requested that each other party preserve all records and information relating to the case or the subject matter of claims in the case, including ensuring (and directing where necessary) that employees, agents, attorneys, accountants, and other persons and third persons in possession of such records and information take all necessary steps to preserve such records and information.

**D.     Rule 26(f)(3)(D): Privilege Issues**

The parties agree that any inadvertently produced privileged documents will be voluntarily returned upon discovery of the apparent error without waiver. The parties agree that no privilege logs will be required as to attorney-client communications made after the complaint was filed.

**E.     Rule 26(f)(3)(E): Changes to or Limitations of Discovery**

Each party may serve up to 25 interrogatories, 25 requests to admit as to the authenticity of documents, 25 requests to admit as to other facts, 25 requests for production in any month, and 75 total requests for production. Each party may take up to 7 party witness depositions and 7 non-party depositions, subject to modification for good cause through agreement of counsel or by order of the Court.

**F.     Rule 26(f)(3)(F): Any Other Orders the Court Should Issue**

       **i.     Plaintiff's Statement:**

None.

       **ii.     Defendants' Statement**

None.

**Bench v. Jury Trial and Length of Trial:**

Absent an arbitration agreement, Defendants seek a jury trial and estimate a four-day trial.

Plaintiff estimates that a Jury Trial of this matter will take 5-7 days.

7. **Statement of Other Issues Affecting the Status or Management of the Case**

   A. **Arbitration**

   The parties are negotiating an agreement to refer and submit this case for decision by binding arbitration. If those negotiations are successful, the parties will submit a joint motion to stay or dismiss.

   B. **Status of FAC**

   Defendants agreed several weeks ago to permit Plaintiff to file a first amended complaint to try to cure the issues of alleged lack of particularity in pleading fraud and failure to plead facts supporting diversity and subject matter jurisdiction. Plaintiff has not yet filed it but is expected to do so soon if the parties do not agree to arbitrate. Defendants expect that they will move to dismiss the proposed first amended complaint if filed.

8. **Proposed Dates for Discovery, Motions and Trial**

   A. **Expert Disclosure Dates**

   The parties agree the expert disclosures referred to in Rule 26(a)(2)(A)-(C) will be made by July 15, 2020. Any rebuttal expert disclosures shall be made pursuant to Rule 26(a)(2)(D)(ii) by August 15, 2020.

   B. **Discovery Cut-off Dates**

   The parties agree the fact discovery cut-off should be October 15, 2020, and the expert discovery cut-off should be October 30, 2020.

   C. **Final Motion Cut-off Date**

   The parties agree the final motion cut-off date should be November 16, 2020.

### D. Date for Final Pretrial Conference

The parties agree the Final Pretrial Conference should be scheduled for January 11, 2021.

### E. Trial Date

The parties agree the trial should commence on February 22, 2021.

## 9. Other Issues Agreed Upon By Counsel

Counsel discussed any other matters to enhance the efficient litigation of this dispute, and agreed:

The parties will endeavor to submit a stipulated protective order governing confidential documents and information. The order also will contain a provision providing for the return of any inadvertently produced privileged documents. If the parties are unable to agree on the terms of any provision of the protective order, they will instead submit to the Court a stipulated proposed protective order containing all agreed-upon terms, and alternative proposals for any disputed terms.

Respectfully submitted this 30th day of April, 2020.

By: */s/ M. Danton Richardson*
    Counsel

M. Danton Richardson (State Bar No. 141709)
Leo E. Lundberg, Jr. (State Bar No. 125951)
LAW OFFICE OF M. DANTON RICHARSON
131 N. El Molino Ave., Suite 310
Pasadena, CA 91101
E-mail: mdantonrichardson@yahoo.com
      leo.law.55@gmail.com
*Counsel for Plaintiff*

By: /s/ Nada I. Shamonki
     Counsel

NADA I. SHAMONKI (SBN 205359)
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
Telephone: (310) 586-3200
Facsimile: (310) 586-3202
Email: nshamonki@mintz.com

Michael C. Whitticar (*admitted pro hac vice*)
NOVA IP Law, PLLC
7420 Heritage Village Plaza, Suite 101
Gainesville, VA 20155
Tel:   571-386-2980
Fax:  855-295-0740
E-mail: mikew@novaiplaw.com
*Counsel for Defendants*

*Pursuant to Local Rule 5-4.3.4(a)(2)(i), Nada I. Shamonki hereby attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

# CERTIFICATE OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and am not a party to the above-entitled action.

On April 30, 2020, I filed a copy of the following document(s):

**JOINT RULE 26(f) REPORT**

By electronically filing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- **Leo Edward Lundberg , Jr**
  leo.law.55@gmail.com
- **Michael Danton Richardson**
  mdantonrichardson@yahoo.com

Executed on April 30, 2020, at Los Angeles, California.  I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

/s/ Diane Hashimoto_____
Diane Hashimoto