NADA I. SHAMONKI (SBN 205359)
nshamonki@mintz.com
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.**
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
Telephone: (310) 586-3200
Facsimile:  (310) 586-3202

MICHAEL C. WHITTICAR *(admitted pro hac vice)*
mikew@novaiplaw.com
**NOVA IP LAW, PLLC**
7420 Heritage Village Plaza, Suite 101
Gainesville, VA 20155
Telephone: (571) 386-2980
Facsimile: (855) 295-0740

Attorneys for Defendants
DESCENDENT STUDIOS INC. and
ERIC PETERSON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LITTLE ORBIT LLC, a California Limited Liability Company,<br><br>                    Plaintiff,<br><br>    vs.<br><br>DESCENDENT STUDIOS INC., a Texas corporation, and ERIC PETERSON, an individual,<br><br>                    Defendants. | Case No. 8:20-cv-00089-DOC-JDE<br><br>**DEFENDANTS' ORIGINAL ANSWER AND DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br><u>**JURY TRIAL DEMANDED**</u><br><br>Judge: Hon. David O. Carter<br><br>Complaint Filed:    1/16/2020 |

1

Defendants Descendent Studios Inc. and Eric Peterson (collectively the "Defendants"), by the undersigned counsel, hereby submit their original answer and defenses to the First Amended Complaint ("Complaint") filed by Plaintiff Little Orbit LLC.

1. Admitted only that the amount in controversy exceeds $75,000, exclusive of interests and costs. Otherwise, denied. Denied that Plaintiff has adequately or sufficiently pled subject matter jurisdiction.

2. Denied.

3. The first sentence of Paragraph 3 is admitted. However, the citizenship of Plaintiff and the citizenship of Plaintiff's members has not been properly pled as required to support diversity jurisdiction. Denied that Plaintiff itself creates or develops electronic games, as it appears to be primarily involved in misappropriating the development efforts of others without paying for them. Admitted only that Plaintiff attempts to advertise, market and sell electronic games which it has misappropriated from others without paying for them.

4. Admitted.

5. Admitted. However, Mr. Peterson was not a party to the parties' written agreements.

6. Admitted only that Plaintiff attempts to advertise, market and sell bargain-basement "shovelware" electronic games which it has misappropriated from others without paying for them. Denied that Plaintiff develops or publishes AAA games. Otherwise, denied.

7. Admitted only that Interplay did release "Descent", the first truly 3D "first-person shooter" (FPS) game and the first "six degrees of freedom" (6DoF) FPS game. However, Defendants note that Descent was originally released in "shareware" form in 1994. 1995 was the year in which the retail copies were made available in stores. The Defendants note this because the Plaintiff's lack of

familiarity with either the original games or Descendent Studios' reboot was a common problem during the term of the Plaintiff's relationship with the Defendants.  Otherwise, denied.

8.      Admitted only that the first two Descent games released by Interplay were commercial and critical successes by the standards of the time. However, it is worth noting that while they were well-reviewed by comparison to Doom, they did not achieve the same level of commercial success as the latter because of Descent's more difficult gameplay and more demanding computer system hardware requirements.  Otherwise, denied.

9.      Admitted only that Descendent Studios was formed in November 2014 by current game developers who had formerly worked on Star Citizen.  Otherwise, denied.  Plaintiff's wording here is misleading. The developers who formed Descendent Studios were not "former game developers;" rather, the founding members of the studio were all experienced, current developers who had most recently chosen to leave the Star Citizen project rather than relocate to another city.

10.     Admitted.   However, Mr. Peterson is not a party to the relevant agreements.

11.     Admitted.

12.     Admitted.  However, the amount received by Descendent Studios after Kickstarter fees was substantially less than $600,000.

13.     Denied as stated.   Descendent Studios wanted Plaintiff to fund the PC and console ports and publish all three or four versions (XBOX1, PlayStation 4, Nintendo Switch and PC versions) at the same time.   However, the original Development Agreement referenced only the development of a single-player PC game, and XBOX1 and PS4.   Otherwise, denied.

14.     Admitted.

15.     Denied.  To the contrary, Defendants stressed the need to conduct a substantial marketing and advertising campaign to introduce the title and the game to newer, younger audiences.

16.     Admitted only that the referenced document was signed by Descendent and is the best evidence  of its own contents and legal effect, prior to being modified by the parties' course of dealing and the Terms Sheet Addendum. Otherwise, denied.   Plaintiff did not execute the agreement and deliver the needed development funds until October of 2017.    This created a one-month delay in the development timeline attributable solely to Plaintiff. Mr. Peterson was not a party nor a signatory.

17.     Admitted only that the referenced document was signed by Descendent and is the best evidence  of its own contents and legal effect, prior to being modified by the parties' course of dealing and the Terms Sheet Addendum. Otherwise, denied.   Plaintiff did not execute the agreement and deliver the needed development funds until October of 2017.    This created a one-month delay in the development timeline attributable solely to Plaintiff. Mr. Peterson was not a party nor a signatory.

18.     Admitted only that the Agreement was signed by Plaintiff a month late as described in Defendants' answer to Paragraph 16 and is the best evidence of its own contents and legal effect, prior to modification through the parties' course of dealing and the Terms Sheet Addendum.  Otherwise, denied.   Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff. Mr. Peterson was not a party nor a signatory.

19.   Admitted only that the Agreement was signed by Plaintiff a month late as described in Defendants' answer to Paragraph 16 and is the best evidence of its own contents and legal effect, prior to being modified by the parties' course of dealing and the Terms Sheet Addendum.   Otherwise, denied.   Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff.    In addition, many of the terms of the Development Agreement were inapplicable boilerplate terms. Mr. Peterson was not a party nor a signatory.

20.   Admitted only that the Agreement was signed by Plaintiff a month late as described in Defendants' answer to Paragraph 16 and is the best evidence of its own contents and legal effect, prior to being modified by the parties' course of dealing and the Terms Sheet Addendum.   Otherwise, denied.   Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff.    In addition, many of the terms of the Development Agreement were inapplicable boilerplate terms. Mr. Peterson was not a party nor a signatory.

21.   Admitted only that the Agreement was signed by Plaintiff a month late as described in Defendants' answer to Paragraph 16 and is the best evidence of its own contents and legal effect, prior to being modified by the parties' course of dealing and the Terms Sheet Addendum.   Otherwise, denied.   Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month

development set-back and delay solely attributable to Plaintiff.   In addition, many of the terms of the Development Agreement were inapplicable boilerplate terms. Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible. Mr. Peterson was not a party nor a signatory.

22.    Admitted only that the Agreement was signed by Plaintiff a month late as described in Defendants' answer to Paragraph 16 and is the best evidence of its own contents and legal effect, prior to being modified by the parties' course of dealing and the Terms Sheet Addendum.  Otherwise, denied.   Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff.   In addition, many of the terms of the Development Agreement were inapplicable boilerplate terms. Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible. Plaintiff, through Matthew Scott, expressly acknowledged this prior to executing the Terms Sheet Addendum. Mr. Peterson was not a party nor a signatory.

23.    Admitted only that the Agreement was signed by Plaintiff a month late as described in Defendants' answer to Paragraph 16 and is the best evidence of its own contents and legal effect, prior to being modified by the parties' course of dealing and the Terms Sheet Addendum.  Otherwise, denied.   Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month

development set-back and delay solely attributable to Plaintiff.   In addition, many of the terms of the Development Agreement were inapplicable boilerplate terms. Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible. Plaintiff, through Matthew Scott, expressly acknowledged this prior to executing the Terms Sheet Addendum. Mr. Peterson was not a party nor a signatory.

24.    Admitted only that the Agreement was signed by Plaintiff a month late as described in Defendants' answer to Paragraph 16 and is the best evidence of its own contents and legal effect, prior to being modified by the parties' course of dealing and the Terms Sheet Addendum.  Otherwise, denied.   Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff.   In addition, many of the terms of the Development Agreement were inapplicable boilerplate terms. Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible. Plaintiff, through Matthew Scott, expressly acknowledged this prior to executing the Terms Sheet Addendum. Mr. Peterson was not a party nor a signatory.

25.    Denied.  In fact, Plaintiff falsely promised but then failed to engage 47 Studios to market the game.  The delays were caused by Plaintiff imposing many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible.  Plaintiff, through Matthew Scott, expressly acknowledged this prior to executing the Terms Sheet

Addendum.  In addition, Plaintiff failed to invest the time and money necessary to timely complete its own development responsibilities, such as the additional application program interface ("API") demanded by Plaintiff. Plaintiff had assumed this responsibility  due to its own budget-busting and deadline-blowing demands for changes to the original specifications and requirements.

26.   Admitted only that the Terms Sheet Addendum was signed.  Denied that it resulted from delays by Defendants.  To the contrary, the Terms Sheet Addendum resulted from Plaintiff failing to pay vendors involved in the game console adaptation process, including Torus and Boombox, and from Plaintiff's own budget-busting and deadline-blowing demands for changes to the original specifications and requirements.   In addition, Plaintiff failed to invest the time and money necessary to timely complete its own development responsibilities, such as the new API which Plaintiff had demanded and assumed the responsibility for developing. Mr. Peterson was not a party nor a signatory.

27.   Admitted only that the Terms Sheet Addendum was signed.  Denied that it resulted from delays by Defendants. Otherwise, denied. To the contrary, the Terms Sheet Addendum resulted from Plaintiff failing to pay vendors involved in the game console adaptation process, including Torus and Boombox, and from Plaintiff's own budget-busting and deadline-blowing demands for changes to the original specifications and requirements.   In addition, Plaintiff failed to invest the time and money necessary to timely complete its own development responsibilities, such as the new API which Plaintiff had demanded and assumed the responsibility for developing. Mr. Peterson was not a party nor a signatory.

28.   Denied.  This date was never agreed to by Defendants and is a complete fabrication by Plaintiff.  Notably, it appears nowhere in the Terms Sheet Addendum.  Defendants expressly declined to agree to any new due date until Plaintiff completed the development of a working, complete and fully functional

API, after Plaintiff had demanded a new, additional API and had agreed to develop it but failed to do so.  Mr. Peterson was not a party nor a signatory.

29.   Denied.   Admitted only that the Agreement was signed by Plaintiff a month late as described in Defendants' answer to Paragraph 16 and is the best evidence of its own contents and legal effect, prior to being modified through the parties' course of dealing by the Terms Sheet. Otherwise, denied.  Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff.   In addition, many of the terms of the Development Agreement were inapplicable boilerplate terms. Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible. Plaintiff, through Matthew Scott, expressly acknowledged this prior to executing the Terms Sheet Addendum.  No new deadline was agreed to because Plaintiff never completed the new API which Plaintiff had demanded and agreed to develop but failed to  do so, preventing any new deadline from being established.

30.   Denied.  Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible.   Plaintiff, through Matthew Scott, expressly acknowledged this prior to executing the Terms Sheet Addendum.  No new deadline was agreed to because Plaintiff never completed the new API which Plaintiff had demanded and agreed to develop but failed to  do so, preventing any new deadline from being established.  The few changes made by Defendants were either required by pending

9

legal and regulatory changes or due to changing market conditions creating new and different "best practices."

31.    Admitted only that the License Agreement was not assigned because Plaintiff did not timely make or complete the payments and Plaintiff continued to withhold key performance and impose new and additional requirements that created additional delays and cost over-runs, without paying the required consideration for them. The Terms Sheet Addendum was a high-level, interim document which was intended to be replaced and supplemented with a longer, more complete agreement that the parties were still negotiating.

32.    Admitted only that the license agreement was permitted to expire due to interference from Plaintiff and Matthew Scott after they breached and repudiated the Terms Sheet Addendum by stopping payments, failing in their own development efforts, and continuing to impose new and additional requirements that created additional delays and cost overruns.

33.   Denied and baseless.   Defendants had plenty of staff and resources to perform the original scope of the development effort.  The delays and overruns were created by Plaintiff signing and funding late, failing in its own development efforts, and continuing to impose new, additional and conflicting requirements that created additional delays and cost overruns.

34.   Denied and baseless.  One CTO left due to Plaintiff's delay in signing and funding the Development Agreement.  He was quickly replaced with an equally competent and skilled CTO.

35.   Denied.  The game had high online approval ratings for over 3 years (70% mostly positive or better) until they were undermined by the delays caused by Plaintiff imposing new requirements beyond the original specifications and delaying its own development efforts.

36.   Denied and frivolous.   Plaintiff was expressly informed that Defendants could not commit to a deadline while the new API which Plaintiff had demanded and agreed to develop but failed to develop remained incomplete and while Plaintiff kept imposing new, additional and conflicting demands and requirements.

37.   Denied.  Plaintiff did very little to advertise or market the game despite its false and unfulfilled promise to employ 47 Studios to market it.   What little advertising Plaintiff did conduct was riddled with errors and false advertising because Plaintiff was too cheap to pay its employees to read and learn about the game.

38.   Admitted only that there was some public discussion on message boards and bulletin boards and the like.  This was a positive occurrence which any competing publisher would have promoted and engaged with as free advertising. Denied that the discussion was the result of any delays or breaches caused by Defendants.  The delays and overruns were created by Plaintiff signing and funding late, failing in its own API development efforts, and continuing to impose new, additional and conflicting requirements that created additional delays and cost overruns. Otherwise, denied.

39.   Denied.

40.   Denied.

41.   Denied.

42.   Admitted only that Peterson in the scope of his employment on behalf of Descendent made comments in a testing forum to defend Descendent to interested parties with a need to know, many or most of whom were under nondisclosure agreements.   Denied that any of these statements were false. Otherwise, denied.

43.    Defendants incorporate by reference their answers to all prior Paragraphs of Plaintiff's Complaint as though fully set forth herein.

44.    Admitted only that the Agreement was signed by Plaintiff a month late as described in Defendants' answer to Paragraph 16 and is the best evidence of its own contents and legal effect, prior to being modified by the parties' course of dealing and by the Terms Sheet Addendum.   Otherwise, denied.   Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.   Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff.   In addition, many of the terms of the Development Agreement were inapplicable boilerplate terms. Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible. Plaintiff, through Matthew Scott, expressly acknowledged this prior to executing the Terms Sheet Addendum.   In addition, Plaintiff failed to complete or timely complete the new API development and other development responsibilities which it had assumed, making it impossible for Defendants to agree to or set a firm completion date. Mr. Peterson was not a party nor a signatory.

45.    Denied.   Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.   Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff. Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible. Plaintiff, through Matthew Scott, expressly acknowledged this prior to executing

the Terms Sheet Addendum.  In addition, Plaintiff failed to complete or timely complete the additional API which Plaintiff demanded and then agreed but failed to develop and other development responsibilities which it had assumed, making it impossible for Defendants to agree to or set a firm completion date.

46.   Denied.  Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff. Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible. Plaintiff, through Matthew Scott, expressly acknowledged this prior to executing the Terms Sheet Addendum.  In addition, Plaintiff failed to complete or timely complete the additional API which Plaintiff demanded and then agreed but failed to develop and other development responsibilities which it had assumed, making it impossible for Defendants to agree to or set a firm completion date.

47.   Denied.  Plaintiff and Matthew Scott breached and repudiated the Agreement and interfered with Defendants' ability to perform.  Among other things, the one-month delay in Plaintiff making the payment and paying the money caused a one-month development set-back and delay solely attributable to Plaintiff. Plaintiff imposed many new and additional requirements outside the specifications that delayed the development timeline and created additional development costs, for all of which Plaintiff was practically, legally and financially responsible. Plaintiff, through Matthew Scott, expressly acknowledged this prior to executing the Terms Sheet Addendum.  In addition, Plaintiff failed to complete or timely complete the additional API which it had demanded and then agreed but failed to develop and other development responsibilities which it had assumed, making it

impossible for Defendants to agree to or set a firm completion date.  Because Plaintiff never completed the additional API which it had demanded and agreed but failed to develop and never paid the additional agreed upon $660,000, Defendants would not and could not agree to a firm completion date.  Note that no new completion date appears or is stated in the Terms Sheet Addendum.  Rather, it required Plaintiff to continue funding through December 2019.

48.    Admitted only that the License Agreement was not assigned because Plaintiff did not timely make or complete the payments and also continued to withhold key performance and to impose new and additional requirements that created additional delays and cost over-runs without paying the required consideration for them.  The Terms Sheet Addendum was a high-level, interim document which was intended to be replaced and supplemented with a longer, more complete agreement that the parties were still negotiating. In addition, the consent of Interplay was an express condition precedent to the assignment of the trademark license, and that consent was never obtained.

49.    Denied.  The statements were not made to the public and were truthful. Moreover, Defendants had been discharged of their obligations by Plaintiff's prior material breaches, anticipatory repudiation and fraud in the inducement.

50.    Denied.  Plaintiff committed the first and prior material breaches by not paying $660,000 due under the Terms Sheet Addendum, by failing to complete the additional API which Plaintiff had demanded and agreed to develop but then failed to develop, and by demanding that Defendants meet additional and conflicting requirements that were material changes to the Agreement and specifications without allotting sufficient additional time and without paying the promised additional money.   In addition, the consent of Interplay was an express condition precedent to the assignment of the trademark license, and that consent was never obtained.

51.   Denied.  To the contrary, Defendants have been injured in the amount of at least $5,660,000 by Plaintiff's failure to make required payments, wrongful termination, and failure to complete the additional API and other development projects that Plaintiff had agreed to complete but failed to complete.

52.   Defendants incorporate by reference their answers to Paragraphs 1 through 51 of Plaintiff's Complaint as though fully set forth herein.

53.   Defendants are unable to answer this Paragraph because, in violation of Fed. R. Civ. P. 9(b), no particularity is provided as to when, to whom, where, or in what medium the alleged representation supposedly was made.  It appears to be merely a poorly pled attempt to convert Plaintiff's already tenuous breach of contract claim into an even more tenuous tort claim.  Therefore, the allegations set forth in Paragraph 53 are denied for lack of sufficient knowledge and information and are objected to as being insufficiently specific.  However, Defendants did have sufficient staff for the original development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game that Defendants made available approximately five months after the Kickstarter campaign had concluded. Otherwise, denied.

54.   Denied.  Plaintiff continued to pay Defendants because Plaintiff was constantly imposing new and conflicting demands and requirements beyond the scope of the Agreement and specifications, because Plaintiff had never finished the additional API which Plaintiff had demanded and agreed to develop but failed to develop, and because Plaintiff knew that Defendants had already created and published a successful and highly-rated multi-player related game.

55.   Denied.  To the contrary, Plaintiff refused to show cost data to Defendants for either development work or alleged marketing costs, because Plaintiff was not really making any sincere effort to either market or develop the game.  In addition, two console support vendors, Torus and Boombox, quit the

project because Plaintiff failed to pay them money that it owed them. Failing to pay vendors and making them quit is one way that Plaintiff created even more cost increases and delays.

56.    Defendants are unable to answer this Paragraph because, in violation of Fed. R. Civ. P. 9(b), no particularity is provided as to when, by whom, to whom, where, or in what medium the alleged representations supposedly were made. It appears to be merely a poorly pled attempt to convert Plaintiff's already tenuous breach of contract claim into an even more tenuous tort claim. Therefore, the allegations set forth in Paragraph 56 are denied for lack of sufficient knowledge and information and are objected to as being insufficiently specific. However, Defendants did have sufficient staff, skills and resources for the original development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game that Defendants made available approximately five months after the Kickstarter campaign had concluded.

57.    Denied. Defendants did have sufficient staff, skills and resources for the original PC game development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game that Defendants made available approximately five months after the Kickstarter campaign had concluded.

58.    Defendants are unable to answer this Paragraph because, in violation of Fed. R. Civ. P. 9(b), no particularity is provided as to when, by whom, to whom, where, or in what medium the alleged representations supposedly were made. It appears to be merely a poorly pled attempt to convert Plaintiff's tenuous breach of contract claim into an even more tenuous tort claim. Therefore, the allegations set forth in Paragraph 58 are denied for lack of sufficient knowledge and information and are objected to as being insufficiently specific. However, Defendants did have sufficient staff, skills and resources for the original development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game

that Defendants made available approximately five months after the Kickstarter campaign had concluded. Otherwise, denied.

59.    Defendants are unable to answer this Paragraph because, in violation of Fed. R. Civ. P. 9(b), no particularity is provided as to when, by whom, to whom, where, or in what medium the alleged representations supposedly were made.  It appears to be merely a poorly pled attempt to convert Plaintiff's tenuous breach of contract claim into an even more tenuous tort claim.  Therefore, the allegations set forth in Paragraph 59 are denied for lack of sufficient knowledge and information are objected to as being insufficiently specific.  However, Defendants did have sufficient staff, skills and resources for the original development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game that Defendants made available approximately five months after the Kickstarter campaign had concluded. Otherwise, denied.

60.    Admitted only that the License Agreement was not assigned because Plaintiff did not timely make or complete the payments and Plaintiff continued to withhold key performance and impose new and additional requirements that created additional delays and cost over-runs, without paying the required consideration for them.  The Terms Sheet Addendum was a high-level, interim document which was intended to be replaced and supplemented with a longer, more complete agreement that the parties were still negotiating.   In addition, the consent of Interplay was an express condition precedent to the assignment of the trademark license, and that consent was never obtained.

61.    Defendants incorporate by reference their answers to Paragraphs 1 through 60 to Plaintiff's Complaint as though fully set forth herein.

62.    Defendants are unable to answer this Paragraph because, in violation of Fed. R. Civ. P. 9(b), no particularity is provided as to when, to whom, where, or in what medium each of the several separate alleged representations supposedly was

made.  It appears to be merely a poorly pled attempt to convert Plaintiff's already tenuous breach of contract claim into an even more tenuous tort claim.  Therefore, the allegations set forth in Paragraph 62 are denied for lack of sufficient knowledge and information and are objected to as being insufficiently specific.  However, Defendants did have sufficient staff, funding and resources for the original development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game that Defendants made available approximately five months after the Kickstarter campaign had concluded. Otherwise, denied.

63.    Defendants are unable to answer this Paragraph because, in violation of Fed. R. Civ. P. 9(b), no particularity is provided as to when, to whom, where, or in what medium each of the alleged promises or representations supposedly was made.  It appears to be merely a poorly pled attempt to convert Plaintiff's already tenuous breach of contract claim into an even more tenuous tort claim.  Therefore, the allegations set forth in Paragraph 63 are denied for lack of sufficient knowledge and information and are objected to as being insufficiently specific.  However, Defendants did have sufficient staff, funding and resources for the original development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game that Defendants made available approximately five months after the Kickstarter campaign had concluded. Otherwise, denied.

64.    Defendants are unable to answer this Paragraph because, in violation of Fed. R. Civ. P. 9(b), no particularity is provided as to when, to whom, where, or in what medium each of the separate alleged promises or representations supposedly was made.   It appears to be merely a poorly pled attempt to convert Plaintiff's already tenuous breach of contract claim into an even more tenuous tort claim. Therefore, the allegations set forth in Paragraph 64 are denied for lack of sufficient knowledge and information and are objected to as being insufficiently specific. However, Defendants did have sufficient staff, funding and resources for the

original development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game that Defendants made available approximately five months after the Kickstarter campaign had concluded. Otherwise, denied.

65.    Denied.

66.    Defendants are unable to answer this Paragraph because, in violation of Fed. R. Civ. P. 9(b), no particularity is provided as to when, to whom, where, or in what medium each of the several separate alleged promises and representations supposedly was made.   It appears to be merely a poorly-pled attempt to convert Plaintiff's already tenuous breach of contract claim into an even more tenuous tort claim.  Therefore, the allegations set forth in Paragraph 66 are denied for lack of sufficient knowledge and information and are objected to as being insufficiently specific.  However, Defendants did have sufficient staff, funding and resources for the original development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game that Defendants made available approximately five months after the Kickstarter campaign had concluded. Otherwise, denied.

67.    Defendants are unable to answer this Paragraph because, in violation of Fed. R. Civ. P. 9(b), no particularity is provided as to when, to whom, where, or in what medium each of the several separate alleged promises or representations supposedly was made.   It appears to be merely a poorly-pled attempt to convert Plaintiff's already tenuous breach of contract claim into an even more tenuous tort claim.  Therefore, the allegations set forth in Paragraph 67 are denied for lack of sufficient knowledge and information and are objected to as being insufficiently specific.  However, Defendants did have sufficient staff, funding and resources for the original development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game that Defendants made available

approximately five months after the Kickstarter campaign had concluded. Otherwise, denied.

68.   Defendants are unable to answer this Paragraph because, in violation of Fed. R. Civ. P. 9(b), no particularity is provided as to when, to whom, where, or in what medium each of the several separate alleged promises or representations supposedly was made.   It appears to be merely a poorly-pled attempt to convert Plaintiff's already tenuous breach of contract claim into an even more tenuous tort claim.  Therefore, the allegations set forth in Paragraph 68 are denied for lack of sufficient knowledge and information and are objected to as being insufficiently specific.  However, Defendants did have sufficient staff, funding and resources for the original development scope set forth in the Agreement, as evidenced by the successful and highly-rated multi-player game that Defendants made available approximately five months after the Kickstarter campaign had concluded. Otherwise, denied.

69.   Denied.  To the contrary, Defendants have been injured in the amount of at least $5,660,000 by Plaintiff's failure to make required payments, wrongful termination, and failure to complete the additional API and other development projects that Plaintiff had agreed to complete but failed to complete. Any damages or injury incurred by the parties were due Plaintiff's breaches of the Agreements, failure to continue funding, and failing to fulfill its own development, marketing and funding obligations.

70.   Defendants incorporate by reference theirs answers to Paragraphs 1 through 69 to Plaintiff's Complaint as though fully set forth herein.

71.   Denied.  All of the cited statements were true.  Many of them were also simply opinions.

72.     Denied. Defendant already had a terrible reputation for underfunding and sabotaging development projects and attempting to misappropriate the work of its developers.

73.     Denied. All of the cited statements were true. Many of them were also simply opinions.

74.     Denied. All of the cited statements were true. Many of them were also simply opinions.

75.     Denied. All of the cited statements were true. Many of them were also simply opinions.

76.     Denied. Defendant already had a terrible reputation for underfunding and sabotaging development projects and attempting to misappropriate the work of its developers.

77.     Denied. Any damages or losses incurred by Plaintiff are the direct and proximate result of its own fraudulent inducement, wrongful termination, prior material breaches, and wrongful anticipatory repudiation of the Development Agreement and the Terms Sheet Addendum, including breach of Plaintiff's marketing, funding and development obligations.

78.     Defendants incorporate by reference their answers to Paragraphs 1-74 to Plaintiff's Complaint as though fully set forth herein.

79.     Admitted only that the Development Agreement was signed belatedly by Plaintiff and is was the best evidence of its own contents and legal effect until it was modified by the parties' course of dealing, by Plaintiff's breaches, and by the Terms Sheet Addendum.   Otherwise, denied.   Plaintiff was required to pay for the development pursuant to the Terms Sheet Addendum but failed to do so.   The Terms Sheet Addendum (Paragraph 4) gave Plaintiff the right to purchase the game and the IP for $1 million, but Plaintiff failed to do so.

80.   Admitted only that the Development Agreement was signed belatedly by Plaintiff and is was the best evidence of its own contents and legal effect until it was modified by the parties' course of dealing, by Plaintiff's breaches, and by the Terms Sheet Addendum.   Otherwise, denied.   Plaintiff was required to pay for the development pursuant to the Terms Sheet Addendum but failed to do so.   The Terms Sheet Addendum (Paragraph 4) gave Plaintiff the right to purchase the game and the IP for $1 million, but Plaintiff failed to do so.

81.   Admitted only that Plaintiff makes this false and frivolous claim. Otherwise, denied.  Plaintiff was required to pay for the development pursuant to the Terms Sheet Addendum but failed to do so.  The Terms Sheet Addendum (Paragraph 4) gave Plaintiff the right to purchase the game and the IP for $1 million, but Plaintiff failed to do so.

82.   Admitted only that Plaintiff makes this false and frivolous claim. Otherwise, denied.  Plaintiff was required to pay for the development pursuant to the Terms Sheet Addendum but failed to do so.  The Terms Sheet Addendum (Paragraph 4) gave Plaintiff the right to purchase the game and the IP for $1 million, but Plaintiff failed to do so.

83.   Admitted only that Plaintiff makes this false and frivolous claim. Otherwise, denied.  Plaintiff was required to pay for the development pursuant to the Terms Sheet Addendum but failed to do so.  The Terms Sheet Addendum (Paragraph 4) gave Plaintiff the right to purchase the game and the IP for $1 million, but Plaintiff failed to do so.  Declaratory judgment is not necessary or appropriate when the parties have sued each other for damages arising from actual breach of contract.

**Defenses and Affirmative Defenses**

**First Affirmative Defense**

**(Improper Venue and Lack of Personal Jurisdiction, Especially Over Eric Peterson)**

This court lacks personal jurisdiction over Eric Peterson and venue here is improper over Mr. Peterson.   Mr. Peterson was not a party to any of the parties' contracts and never visited or went to California in connection with the parties' relationship.

**Second Affirmative Defense**

**(Anticipatory Repudiation and Prior Material Breach)**

As described in more detail in the accompanying counterclaim, Plaintiff committed anticipatory repudiations and prior material breaches which discharged Defendants of any obligations under the contracts.  Among these prior material breaches and repudiations were: (1) Plaintiff not putting out the promised marketing spend and efforts with 47 Studios; (2) not paying eleven required installments of $60,000 due under the Terms Sheet Addendum; (3) demanding additional budget-busting, delay-creating work-product and development efforts without paying for them nor allotting sufficient time for their completion; (4) agreeing to develop but failing to develop the additional API demanded by Plaintiff; (5) failing to pay console vendors, including Torus and Boombox, forcing Torus to quit the project in November of 2018; (6) switching engine versions from v. 4.19 to v. 4.20; (7) changing the user interface ("UI") back and forth at least four times; (8) adding new consoles, including the lower-end technology Nintendo Switch,  that required more modifications and adaptations; (9) failing to document and account for and share documentation of expenses paid by Plaintiff; (10) not providing quarterly statements or any statements about presales; and, (11) not

providing any royalty accounting(s) after  the wrongful purported termination of the agreement.

## Third Affirmative Defense
### (Wrongful Termination)

Plaintiff wrongfully purported to terminate the Development Agreement and the Terms Sheet Addendum in breach thereof due to delays and cost overruns caused by its own breaches, failures to make necessary payments for which it was responsible, breach of its agreement to develop the additional API, and imposition of extra-contractual changes and requirements.

## Fourth Affirmative Defense
### (Fraud In the Inducement)

Plaintiff induced the Development Agreement and the Terms Sheet Addendum by Matthew Scott falsely representing and claiming that Plaintiff had the contacts and funds to fund the development project and to advertise the game through 47 Studios.   In fact, all of  those representations and claims were  false and untrue, and Plaintiff had to borrow over $ 1 million to fund the game development project and did not advertise or promote the game through the represented 47 Studios.

## Fifth Affirmative Defense
### (Truth)

To the extent the statements challenged as libelous or defamatory are facts rather than opinions, they true and correct.

Sixth Affirmative Defense
### (Opinion)

The statements challenged as libelous or defamatory are opinions rather than statements of fact.

### **Seventh Affirmative Defense**

### **(Privilege)**

The statements challenged as libelous or defamatory are and were privileged as they were made in a private forum to interested persons with a right to know and an interest in the subject matter and possibly to correct false statements and misrepresentations previously made by Plaintiff about the same subject matter.  In addition, many or most of the recipients of the challenged statements were bound by non-disclosure agreements.

### **Eighth Affirmative Defense**

### **(Failure To Plead or Perform Satisfaction of Conditions Precedent)**

The approval of Interplay was an express condition precedent to Defendants' obligation to assign the trademark license under Paragraph 9 of the Terms Sheet Addendum.   Plaintiff fails to allege that any such approval was ever sought or obtained.

Under Paragraph 4 of the Terms Sheet Addendum, Plaintiff had the right to purchase the Game-related IP and work-product by paying $1 million.   Plaintiff fails to allege that any such payment was ever made.

### **Ninth Affirmative Defense**

### **(Failure To Plead Fraud or Negligent Representation With Particularity As Required By Rule 9(b))**

Plaintiff has utterly failed to plead fraud or negligent misrepresentations consistent with the particularity requirements of Fed. R. Civ. P. 9(b).  Plaintiff fails to specify when, where, to whom, and by what medium any of the alleged misrepresentations were made.

**Tenth Affirmative Defense**

**(Economic Loss and Source or Duty Rule)**

Plaintiff's fraud and negligent misrepresentation claims are barred by the economic loss rule and the gist of the action doctrine in that they merely attempt to re-characterize and mis-characterize contractual promises and warranties as tort claims and duties.

**Eleventh Affirmative Defense**

**(Declaratory Judgment Inappropriate)**

Declaratory judgment is not necessary or appropriate when the parties have sued each other for damages arising from actual breach of contract.

**Twelfth Affirmative Defense**

**(Failure to State A Claim)**

Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted, for reasons including but not limited to those set forth in Defendants' motion to dismiss and the supporting memorandum.

**Thirteenth Affirmative Defense**

**(Anti-SLAPP Violation)**

Plaintiff's First Amended Complaint, especially the trade libel claim, violates the California Anti-SLAPP statute (Cal. Code Civ. Proc. § 425.16) and is therefore barred and subject to a special motion to strike.  In addition, Plaintiff is liable for Defendants' attorneys' fees, costs and expenses.

**Fourteenth Affirmative Defense**

**(Additional Defenses)**

Defendants hereby give notice that they intend to rely upon any additional defenses that become available or apparent during discovery and thus reserve the right to amend their Answer to assert such additional defenses.

WHEREFORE, Defendants pray for judgment on Plaintiff's Complaint as follows:

1.    Plaintiff takes nothing by way of its Complaint;

2.    That Defendants be awarded judgment in their favor in this action;

3.    Defendants are entitled to recover their attorneys' fees from Plaintiff pursuant to the California Anti-SLAPP statute (Cal. Code Civ. Proc. § 425.16), and as otherwise may be provided for by contract, law or statute; and

4.    For such other and further relief as the Court may deem just and proper.

Dated: June 4, 2020

Respectfully submitted,

By: _____
        Counsel

Nada I. Shamonki (SBN 205359)
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
Telephone: (310) 586-3200
Facsimile: (310) 586-3202
Email: nshamonki@mintz.com

Michael C. Whitticar (*admitted pro hac vice*)
NOVA IP Law, PLLC
7420 Heritage Village Plaza, Suite 101
Gainesville, VA 20155
Tel:   571-386-2980
Fax:   855-295-0740
E-mail: mikew@novaiplaw.com

Attorneys for Defendants
DESCENDENT STUDIOS INC. and
ERIC PETERSON

27

1

## <u>DEMAND FOR JURY TRIAL</u>

2       Defendant Descendent Studios Inc. and Eric Peterson hereby demand trial by

3   jury.

4

5   Dated: June 4, 2020                          Respectfully submitted,

6
                                                 By: _____
7                                                      Counsel

8
                                                 Nada I. Shamonki (SBN 205359)
9                                                MINTZ LEVIN COHN FERRIS GLOVSKY
                                                 AND POPEO P.C.
10                                               2029 Century Park East, Suite 3100
                                                 Los Angeles, CA 90067
11                                               Telephone: (310) 586-3200
                                                 Facsimile: (310) 586-3202
12                                               Email: nshamonki@mintz.com

13
                                                 Michael C. Whitticar (*admitted pro hac vice*)
14                                               NOVA IP Law, PLLC
15                                               7420 Heritage Village Plaza, Suite 101
                                                 Gainesville, VA 20155
16                                               Tel:  571-386-2980
                                                 Fax:  855-295-0740
17                                               E-mail: mikew@novaiplaw.com

18
                                                 Attorneys for Defendants
19                                               DESCENDENT STUDIOS INC. and
                                                 ERIC PETERSON
20

21

22

23

24

25

26

27

28

# **CERTIFICATE OF SERVICE**

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and am not a party to the above-entitled action.

On, June 4, 2020, I filed a copy of the following document(s):

**DEFENDANTS' ORIGINAL ANSWER AND DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

By electronically filing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- **Leo Edward Lundberg , Jr**

  leo.law.55@gmail.com

- **Michael Danton Richardson**

  mdantonrichardson@yahoo.com


Executed on June 4, 2020, at Los Angeles, California.  I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

/s/ Diane Hashimoto_____
Diane Hashimoto