1  M. DANTON RICHARDSON (State Bar No. 141709)
   mdantonrichardson@yahoo.com
2  LEO E. LUNDBERG, JR. (State Bar No. 125951)
   leo.law.55@gmail.com
3  LAW OFFICE OF M. DANTON RICHARDSON
   131 N. El Molino Ave., Suite 310
4  Pasadena, CA 91101
   ***Attorneys for Plaintiff,***
5  LITTLE ORBIT LLC
6
7                    **UNITED STATES DISTRICT COURT**
                     **CENTRAL DISTRICT OF CALIFORNIA**
8

9  LITTLE ORBIT LLC, a California Limited      ) Case No.: 8:20-cv-00089-DOC-JDE
   Liability Company,                          )
10                                             ) Judge:      Hon. David O. Carter
                                               )
11                    Plaintiff,               )
                                               ) **PLAINTIFF LITTLE ORBIT LLC'S**
12        vs.                                  ) **OPPOSITION TO DEFENDANTS'**
                                               ) **MOTION TO DISMISS PLAINTIFF'S**
13                                             ) **FIRST AMENDED COMPLAINT**
   DESCENDENT STUDIOS INC., a Texas            )
14 corporation, and ERIC PETERSON, an          )
   individual,                                 ) **Date:   July 13, 2020**
15                                             ) **Time:   1:30 p.m.**
                                               ) **Ctrm:   9D**
16                    Defendants.              )
                                               )
17 _____         )
                                               ) **Complaint filed: January 16, 2020**
18 DESCENDENT STUDIOS INC., a Texas            )
   corporation,                                )
19                                             )
                                               )
20                    Counterclaimant,         )
                                               )
21        vs.                                  )
                                               )
22                                             )
   LITTLE ORBIT LLC, a California Limited      )
23 Liability Company,                          )
                                               )
24                    Counter Defendant.       )
                                               )
25 _____         )
26
27
28
                                        1

# Contents

Table of Contents                                                                                       2

Table of Authorities                                                                                    3

I.      INTRODUCTION ................................................................................. 5

II.     ARGUMENT AND AUTHORITIES ..................................................... 6

  A.  Rule 12 Standards............................................................................. 6

  B.  Diversity Jurisdiction has been Alleged and is Present in this Action............................... 6

  C.  Plaintiff's Has Alleged its Misrepresentation and Fraud Causes of Action with Sufficient
Particularity to Satisfy Rule 9(b) ............................................................. 8

  D.  The Economic Loss Rule Does Not Support Dismissal....................................... 11

  E.  This Court has Personal Jurisdiction Over Eric Peterson ................................... 13

III.    CONCLUSION ................................................................................. 19

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CIVIL ACTION No. 8:20-CV-00089-DOC-JDE

**Cases**

*Advanced Skin & Hair, Inc. v. Bancroft*, 858 F.Supp.2d 1084, 1090 (2012 ................................ 17

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009), ................................................ 5

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.,* 874 F.3d 1064, 1069 (9th Cir. 2017) ........................ 12

*Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1990) ............................................ 5

*Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir.2001)). .................................................... 8

*Burdick v. Superior Court* (2015) 233 Cal.App.4th 8, 19. ........................................................ 14

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174 (1985) ............................ 12

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–338 (9th Cir.1996)............................................ 5

*Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) .................................... 14

*Cordance Corp. v. Amazon.com, Inc*., 255 F.R.D. 366, 372 (D. Del. 2009). .............................. 8

*Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989)......................... 8

*Daimler AG v. Bauman*, 571 U.S. 117, 125, 134 S. Ct. 746, 753 (2014). .................................... 12

*Davis v. Metro Prods., Inc*., 885 F.2d 515, 520 (9th Cir. 1989) ...................................... 15. 16, 17

*Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir.1994)). .. 9

*Firestone v. Firestone* (DC Cir. 1996) 76 F3d 1205, 1209 .......................................................... 10

*Gottreich v. San Francisco Investment Corp*., 552 F.2d 866, 866 (9th Cir.1997))......................... 8

*Kanter v. Warner-Lambert Co*., 265 F.3d 853, 857 (9th Cir. 2001). .............................................. 6

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774–75, 104 S.Ct. 1473 (1984) ............... 12, 16

*Lazar v. Superior Court*, 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377, 381 (1996) ........................ 11

*Lincoln Benefit Life Co. v. AEI Life, LLC* (3rd Cir. 2015) 800 F3d 99, 107 ................................ 7

*Mavrix Photo, Inc. v. Brand Technologies, Inc*. (9th Cir. 2011) 647 F.3d 1218, 1223 .............. 12

*McHenry v. Renne,* 84 F.3d 1172, 1178 (9th Cir.1996). .............................................................. 8

*Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir.1989).............................. 8

*Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir.2009) .................................................... 5

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CIVIL ACTION NO. 8:20-cv-00089-DOC-JDE

*Neubronner v. Milken*, 6 F.3d 666, 671–672 (9th Cir.1993) ........................................................ 8

*Oracle USA, Inc. v. XL Glob. Servs., Inc*., No. C 09-00537 MHP, 2009 WL 2084154, at *4

   (N.D. Cal. 2009) .................................................................................................................... 11

*Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 803 (9th Cir. 2004); .................. 12, 14

*Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985). ............................................................. 8

*Sinatra v. National Enquirer, Inc*., 854 F.2d 1191, 1195-98 (9th Cir.1988) ...........................12

*Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). ......................................................... 8

*Tenzer v. Superscope, Inc*., 39 Cal.3d 18, 30 (1985)................................................................. 10

*Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.2003 ................................... 8, 10

*Wool v. Tandem Computers, Inc*., 818 F.2d 1433, 1439 (9th Cir. 1987);..................................... 8

**Statutes**

28 U.S.C. § 1332 .......................................................................................................................... 6

Calif. Code Civ. Pro. § 410.10 ................................................................................................... 12

**Rules**

Fed.R.Civ.P. 8(a). ........................................................................................................................ 8

Fed.R.Civ.P. 9(b).................................................................................................................... 7, 8

Fed.R.Civ.P. 15(a)(2) ................................................................................................................. 10

Fed.R.Civ.P. 12(b)(6) .................................................................................................................. 5

**Treatises**

The Rutter Group Practice Guide: Federal Civil Procedure Before Trial, Calif. & 9th Cir.

   Editions, Ch. 2C-10 (April 2020). ............................................................................................ 7

Plaintiff/Counter-Defendant Little Orbit LLC ("Little Orbit" or "Plaintiff"), by and through its undersigned counsel, hereby submits the following Opposition to Defendant/Counterclaimant Descendent Studios Inc. ("Descendent") and Defendant Eric Peterson's ("Peterson") (collectively, "Defendants") Motion to Dismiss Plaintiff's First Amended Complaint (the "Motion"):

## I.   INTRODUCTION

This action concerns the Defendants' – including Peterson's - purposeful contacts with California in the form of soliciting Plaintiff to invest in a game that Defendants were developing based on the very successful "Descent" franchise and the Defendants' various wrongful acts both before, during and after the contract in issue was terminated including alleged negligent and fraudulent misrepresentations in inducing Plaintiff to enter into the at issue Development Agreement as well as disparaging statements made by Defendants after that Agreement was terminated.  The five (5) causes of action asserted by Plaintiff are (1) Breach of Contract; (2) Negligent Misrepresentation; (3) Fraud (in the inducement); (4) Trade Libel/Commercial Disparagement; and (5) Declaratory Relief.

As Plaintiff's allegations make clear, this action is between a Plaintiff located in Orange County, California, against Defendants located in Austin, Texas.  Thus, complete diversity has been alleged.

As addressed more fully below, Plaintiff's FAC alleges valid claims for negligent misrepresentation and fraud regarding Defendants' inducement of Plaintiff to enter in the Development Agreement at issue.  Jurisdiction over Peterson is also appropriate given his actions directed to California including communicating the negligent and fraudulent communications directed to California as well as his publication of defamatory statements after the breakdown in the parties' relationship knowing those statements would be widely disseminated in the gaming community in California and would cause injury to Plaintiff in California.

## II.   ARGUMENT AND AUTHORITIES

### A.   Rule 12 Standards

A Rule 12(b)(6) dismissal is only proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1990).  In addressing dismissal, a court must: (1) construe the complaint or counterclaim in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether the complaining party can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–338 (9th Cir.1996).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009), the U.S. Supreme Court explained:

> ... a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." ... A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.... The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir.2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

### B.   Diversity Jurisdiction has been Alleged and is Present in this Action

Defendants argue that Plaintiff has not properly alleged diversity jurisdiction based on Plaintiff Little Orbit, LLC, referencing its members based on their "residence" as if "residence" should be read as having a different meaning than "citizenship."  A person is a "citizen" of the state in which they are domiciled.

> The natural person's state citizenship is then determined by [their] state of domicile, not [their] state of residence. A person's domicile is [their] permanent

6

home, where [the person] resides with the intention to remain or to which [they intend] to return. See *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir.1986). A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state. See, e.g., *Weible v. United States*, 244 F.2d 158, 163 (9th Cir.1957) ("Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode, though, to be sure, domicile often hangs on the slender thread of intent alone, as for instance where one is a wanderer over the earth. Residence is not an immutable condition of domicile.").

*Kanter v. Warner-Lambert Co*., 265 F.3d 853, 857 (9th Cir. 2001).

Defendants' hyper technical argument is misplaced here in any event as one does not need to compare meanings of "resident" and "citizen" as the context of Plaintiff's allegations (something Defendant's Motion ignores) makes clear the reference to the parties state of "residence" is the same as alleging their state of "citizenship."

Plaintiff's First Amended Complaint (the "FAC") alleges at paragraph 1: "This Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1332 given that this matter *is between citizens of different states* and the amount in controversy exceeds $75,000, exclusive of interest and costs."  (emphasis added).

The FAC further alleges at paragraph 3:

Plaintiff Little Orbit LLC ("Little Orbit") is a limited liability company organized under the laws of the State of California, with its principal place of business in Rancho Santa Margarita, California.  The Members of Little Orbit are (a) Matthew Paul Scott, *who is a resident of Laguna Beach, California; and (b) Wilbur Quon, who is a resident of Tustin, California*.  [emphasis added]

Read together, it is clear Plaintiff alleges that the two members of Little Orbit, who reside in close proximity to its office located in Rancho Santa Margarita, are citizens of the State of California.  There is no indication that either of Little Orbit's members reside, or intend to reside, anywhere other than in Orange County, California, so there is no reason to read "resident" as not being the equivalent of citizenship, especially given the context as addressed above.

7

Likewise, the same context makes clear that the allegation that Mr. Peterson is a resident of Austin where Descendent Studios is based is likewise effectively an allegation that Mr. Peterson a citizen of the State of Texas and, more importantly, that Plaintiff and Defendants are "citizens of different states."  *See e.g., Lincoln Benefit Life Co. v. AEI Life, LLC* (3rd Cir. 2015) 800 F3d 99, 107 (allegation that members of limited liability company are not citizens of plaintiff's state sufficient to establish diversity jurisdiction).  In fact, it is a bit disingenuous of Peterson to argue on, on the one hand, proper diversity has not been alleged but then on the other, argue he has no contacts with California, the state where Plaintiff is located.

While it should not be necessary, if there is any doubt that diversity jurisdiction has been properly alleged, Plaintiff should be allowed to amend the complaint to make clear that Plaintiff's members are citizens of the state of California, the place of their residence, and that Mr. Peterson is a citizen of the State of Texas, the place of his residence.

> [2:2041] Defective allegations curable by amendment: Where diversity is improperly alleged (e.g., complaint alleges parties' "residence" rather than "citizenship"), the pleadings may be amended in either the trial or appellate court on terms the court deems just. [28 USC § 1653; *Snell v. Cleveland, Inc.* (9th Cir. 2002) 316 F3d 822, 828—amendment permitted even after final judgment where diversity existed; *Swindol v. Aurora Flight Sciences Corp.* (5th Cir. 2015) 805 F3d 516, 518-519]

The Rutter Group Practice Guide: Federal Civil Procedure Before Trial, Calif. & 9th Cir. Editions, Ch. 2C-10 (April 2020).


### C.    Plaintiff's Has Alleged its Misrepresentation and Fraud Causes of Action with Sufficient Particularity to Satisfy Rule 9(b)

Fed.R.Civ.P. 9(b) requires pleading of fraud claims with particularity, including details of which Defendant committed what wrongful acts and some information about when.  Relaxation of Rule 9(b)'s particularity requirement is appropriate in instances of corporate fraud where, as here, information is in the defendant's control.  *Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989).  This is an important exception to the heightened pleading

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CIVIL ACTION NO. 8:20-cv-00089-DOC-JDE

standards of Rule 9(b).  See *Wool v. Tandem Computers, Inc*., 818 F.2d 1433, 1439 (9th Cir. 1987); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir.1989).  "[C]ourts still must apply Rule 9(b) with some flexibility so that a party is not required to plead issues which may have been concealed by an adverse party."  *Cordance Corp. v. Amazon.com, Inc*., 255 F.R.D. 366, 372 (D. Del. 2009).  See also *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Here, the details are within the knowledge of Defendants and Plaintiff is excused from providing such details other than sufficient facts to put Defendants on notice of the claim and allow them to prepare a defense.  Rule 8(a).

F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." *McHenry v. Renne,* 84 F.3d 1172, 1178 (9th Cir.1996).  F.R.Civ.P 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671–672 (9th Cir.1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp*., 552 F.2d 866, 866 (9th Cir.1997)).

In the Ninth Circuit, Rule 9(b) has been interpreted as requiring the plaintiff to allege "the who, what, when, where, and how" of the misconduct charged.  *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.2003) (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir.2001)).  Plaintiffs must allege circumstances constituting the alleged fraud that are "specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *Id*.  "[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id*. (quoting *Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir.1994)).

Plaintiff has provided sufficient facts to satisfy the requirements of Rule 9(b) under the circumstances of this case.  For example, Defendants argue that Plaintiff has not alleged the date of any of the alleged false statements.  However, Plaintiff alleged at paragraph 18 that: "In an effort to induce Little Orbit into entering into the Agreement, ***Defendants expressly represented during the parties' discussions during the months of August and September, 2017***, that Descendent was capable of developing the Game which, at all times, would be in conformity with common and accepted industry standards, including the use of modern, high-fidelity game systems," [sic] and would satisfy general standards of quality to be expected from a developer of electronic games as well as the specific specifications in the Agreement."

Defendants' also argue that Plaintiff has not alleged the "mode of communication."  This also is not true.  For example, at Paragraph 62, Plaintiff alleges:

In and around ***August through September 2017***, Peterson, to induce Little Orbit to enter into the Development Agreement, ***intentionally misrepresented by telephone, in person and in electronic mail messages*** to, among others, Matt Scott of Little Orbit, that Descendent Studios:

    a.    would deliver the Game in conformity with industry standards and customs and in conformity with the express specifications contained in the Development Agreement and the agreed upon scope of the Game;

    b.    was capable of manufacturing and delivering the Game completed and ready to ship for a promised original release date of May 2018;

    c.    had the key personnel with the appropriate skills and qualifications to deliver the Game in conformity with industry standards and customs and in conformity with the express specifications contained in the Development Agreement and the agreed upon scope of the Game;

[emphasis added]

Defendants were parties to foregoing discussions – which occurred via telephone, in person and via email – so the foregoing allegations are surely specific enough to allow Defendants to answer the claims against them, that is, "specific enough to give defendants notice

of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong."  *Vess*, 317 F.3d at 1106.

As to the falsity of the at issue representations, "fraudulent intent must often be established by circumstantial evidence." *Tenzer v. Superscope, Inc*., 39 Cal.3d 18, 30 (1985). For example, "fraudulent intent has been inferred from such circumstances as defendant's insolvency, his hasty repudiation of the promise, his failure even to attempt performance, or his continued assurances after it was clear he would not perform." *Id.*

This case presents a text book case of fraudulent inducement based on Defendants' numerous [alleged] false statements which induced Plaintiff to enter into the Development Agreement and the Terms Agreement as alleged in the FAC.  Given Defendants' total failure to deliver what was promised, after multiple extensions of time, and given that what was delivered fell far below industry standards, a fact finder could easily conclude that Defendants' knew or should have known their representations were false at the time made.

Whether that is the case will be up to this Court or a Jury to decide.  But at this stage, the allegations have been made and they sufficiently support the negligent misrepresentation and fraud claims.

Here, all indications are that Defendant Descendent is out of business.  Declaration of M. Danton Richardson ("Richardson Decl."), Exhibit A.  This also would support a finding that Descendent was and is insolvent.

Should the Court find that Plaintiff's fraud allegations are not sufficient under Rule 9(b), leave to amend should be allowed.  See Fed.RCiv.P. 15(a)(2) (leave to amend should be freely granted "when justice so requires."); *Firestone v. Firestone* (DC Cir. 1996) 76 F3d 1205, 1209 ("leave to amend is 'almost always' allowed to cure deficiencies in pleading fraud").

### D.    The Economic Loss Rule Does Not Support Dismissal

Under California law, the economic loss rule does not apply to claims for fraudulent inducement to contract.

[T]he fundamental rule in California is that no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement. ***Exceptions have been permitted only where:*** a breach of duty causes a physical injury; the covenant of good faith and fair dealing is breached in an insurance contract; an employee was wrongfully discharged in violation of a fundamental public policy; or ***a contract was fraudulently induced****. Butler–Rupp v. Lourdeaux*, 134 Cal.App.4th 1220, 36 Cal.Rptr.3d 685 (2005), quoting *Erlich*, 21 Cal.4th at 551–552, 87 Cal.Rptr.2d 886, 981 P.2d 978.

*Oracle USA, Inc. v. XL Glob. Servs., Inc*., No. C 09-00537 MHP, 2009 WL 2084154, at *4 (N.D. Cal. 2009) (emphasis added).

> ***An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract.*** (*Chelini v. Nieri* (1948) 32 Cal.2d 480, 487, 196 P.2d 915 ["tort of deceit" adequately pled where plaintiff alleges "defendant intended to and did induce plaintiff to employ him by making promises ... he did not intend to (since he knew he could not) perform" (fn. omitted) ]; *Kuchta v. Allied Builders Corp*. (1971) 21 Cal.App.3d 541, 549, 98 Cal.Rptr. 588, citing *Horn v. Guaranty Chevrolet Motors* (1969) 270 Cal.App.2d 477, 484, 75 Cal.Rptr. 871; *Squires Dept. Store, Inc. v. Dudum* (1953) 115 Cal.App.2d 320, 323, 252 P.2d 418.) In such cases, the plaintiff's claim does not depend upon whether the defendant's promise is ultimately enforceable as a contract. "If it is enforceable, the [plaintiff] ... has a cause of action in tort as an alternative at least, and perhaps in some instances in addition to his cause of action on the contract." (Rest.2d Torts, § 530, subd. (1), com. c, p. 65, cited with approval in *Tenzer v. Superscope* (1985) 39 Cal.3d 18, 29, 216 Cal.Rptr. 130, 702 P.2d 212.) ***Recovery, however, may be limited by the rule against double recovery of tort and contract compensatory damages.*** (*Tavaglione v. Billings* (1993) 4 Cal.4th 1150, 1159, 17 Cal.Rptr.2d 608, 847 P.2d 574.)

*Lazar v. Superior Court*, 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377, 381 (1996) (emphasis added).

### E.      This Court has Personal Jurisdiction Over Eric Peterson

California's "long arm" statute permits courts to exercise jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States."  See Calif. Code Civ. Pro. § 410.10; *Mavrix Photo, Inc. v. Brand Technologies, Inc*. (9th Cir. 2011) 647 F.3d 1218, 1223.

> California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution.

*Daimler AG v. Bauman*, 571 U.S. 117, 125, 134 S. Ct. 746, 753 (2014).

The Supreme Court has held that due process permits the exercise of personal jurisdiction over a defendant who "purposefully direct[s]" his activities at residents of a forum, even in the "absence of physical contacts" with the forum.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174 (1985) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774–75, 104 S.Ct. 1473 (1984).)

> We evaluate purposeful direction under the three-part "effects" test traceable to the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). We recently described *Calder* and its three-part test as follows:
>
> > *Calder* stands for the proposition that purposeful availment is satisfied even by a defendant "whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state." ... [Under] *Calder*, the "effects" test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.

*Dole Food,* 303 F.3d at 1111 (citations omitted).

*Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 803 (9th Cir. 2004); see also, *Axiom Foods, Inc. v. Acerchem Int'l, Inc.,* 874 F.3d 1064, 1069 (9th Cir. 2017); and *Sinatra v. National Enquirer, Inc*., 854 F.2d 1191, 1195-98 (9th Cir.1988).

Here, Peterson committed (allegedly) intentional acts in making false statements in inducing Plaintiff to enter into the Development Agreement and the Terms Sheet as well as in making disparaging statements about Plaintiff in trying to cast blame on Plaintiff for Descendent's failure to complete the game.  Thus, the first prong is satisfied based on Peterson's intentional conduct.

The second prong is also met as Defendant Peterson purposefully directed his conduct to California by making solicitations to Plaintiff in California and personally making the alleged misrepresentations and fraud used to induce Plaintiff into entering into the at issue Development Agreement.  See for example, Paragraph 13 which alleges: "In or around August of 2017 Little Orbit was approached by Descendent Studios about providing the financial support necessary to complete the development of the Descent game in return for which Little Orbit would publish the Descent: Underground game subject to the payment and royalty terms agreed upon between the parties."

Thus, it was Descendent, through its principal (and believed alter ego), Peterson, that contacted Plaintiff about investing in the new Descent game.  Further, the statements alleged to be false were made by Peterson during the course of the parties' negotiations in August and September of 2017, communications with Plaintiff which Peterson knew was located in California.  Peterson's actions in making those false statements was conduct specifically directed to California.

Likewise, after the parties' relationship broke down Peterson made numerous disparaging statements online with an obvious intent to try to deflect blame from Descendent and onto Little Orbit for Descendent's failure to complete the Descent game, never mind the falsity of Defendants' statements.  (The motivation for such disparaging statements trying to place blame on Little Orbit is obvious once one remembers that Peterson had solicited over $600,000 in Kickstarter funds to undertake the development of a new game based on the very popular "Descent" franchise.).

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CIVIL ACTION No. 8:20-cv-00089-DOC-JDE

The "express aiming" analysis depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue. The reporter and editor in *Calder* were not accused of "untargeted negligence" that merely happened to cause harm to Jones. *Id.* At 789, 104 S.Ct. 1482. Rather, their actions in writing and publishing a false and injurious article about Jones's alleged drinking problem constituted intentional behavior directed at Jones in California.

*Schwarzenegger,* 374 F.3d at 807. The same can be said for Peterson's disparaging statements regarding Plaintiff.

Peterson's false statements were similar to the disparaging statements at issue in *Calder v. Jones, supra*. The *Calder* decision has been explained as follows:

> Those effects were felt in California because, the court explained, "[t]he allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California." (*Id*. at pp. 788–789, 104 S.Ct. 1482, fn. omitted.) "In sum," the court concluded, "California is the focal point both of the story and of the harm suffered." (*Id*. at p. 789, 104 S.Ct. 1482.) The court noted too the intentional acts of the reporter and the editor "were expressly aimed at California" in that they wrote or edited an article "they knew would have a potentially devastating impact upon respondent" and "knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation." (*Id*. at pp. 789–790, 104 S.Ct. 1482.)

*Burdick v. Superior Court* (2015) 233 Cal.App.4th 8, 19.

The same can be said for Peterson's posts directly criticizing the competence of a California based company: "California is the focal point both of the [posts] and of the harm suffered."

Like the intentional acts of the reporter and the editor in *Calder*, Peterson's intentional acts "were expressly aimed at California" in that Peterson posted disparaging claims he "knew would have a potentially devastating impact upon" Plaintiff and "knew that the brunt of that injury would be felt by [Plaintiff] in the State in which [Plaintiff is located and operates]" and which is the home for the most developers in the electronic gaming industry. See Richardson

15

Decl., ¶ 4 and Exhibit B.  Here, Peterson clearly knew his false statements would cause harm to Little Orbit in California.  Therefore, the third prong is also satisfied.

Interestingly, Defendants' Motion focuses its jurisdictional analysis on the trade libel/commercial disparagement claim and fails to address the allegations regarding Peterson's misrepresentations and fraud in inducing Plaintiff to enter into the Development Agreement and the Terms Sheet agreements at issue in this matter.  Rather, Defendants simply state in conclusory fashion:

> Furthermore, ***under the fiduciary-shield doctrine***, "a person's ***mere association*** with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989). In summary, Plaintiff has alleged no contacts with California sufficient to permit the exercise of personal jurisdiction.

Motion at 12:10-13 (emphasis added).

However, the *Davis* case actually shows precisely why personal jurisdiction over Peterson is present here.  While personal jurisdiction cannot be asserted over an individual *merely* because of their association to a corporation which has caused injury in the forum state, that fiduciary shield does not bar personal jurisdiction where an individual's actions have subjected that individual to personal liability based on their own activities – in that instance those same activities are also viewed as the activities of the individual which can give rise to personal jurisdiction.  That is the case here as addressed above given Peterson's purposeful contacts with California in soliciting and inducing – through misrepresentations and fraud - Plaintiff to enter in the Development Agreement and Terms Sheet agreement.

The *Davis* court addressed the distinction as follows in finding individuals subject to personal jurisdiction notwithstanding the "fiduciary shield" they may have otherwise been entitled to:

> The record before us shows that Smith and Miller, each 50% shareholders of Metro and its only officers and directors, ***purposefully directed their activities toward Arizona when Metro solicited business from Arizona residents***. See *Calder*, 465 U.S. at 789–90, 104 S.Ct. at 1487; *Burger King v. Rudzewicz*, 471

---

16

U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). *Smith and Miller met with Allen, an Arizona resident whose business was in Arizona, to discuss the opportunity for his clients to invest in Metro, and offered a financial incentive for Allen to find investors*. They "clearly acted with the intent to induce Allen to obtain purchasers of the tapes in Arizona, [which] resulted in six agreements with Arizona residents." *Sullivan v. Metro*, 150 Ariz. at 577, 724 P.2d at 1246. *Their acts did not amount to "untargeted negligence," but rather, Miller and Smith should reasonably have known that their actions "could have [an] effect on the plaintiff, ... and that the brunt of the injury caused by their actions would be felt in [Arizona]*." *Brainerd v. Governors of Univ. of Alberta*, 873 F.2d 1257, 1259–60 (9th Cir.1989) (citing *Calder*). *Miller and Smith could have reasonably foreseen that they would be haled into Arizona's courts if the investments by Allen's clients in Arizona resulted in litigation.*

\*   \*   \*

*Because Smith and Miller purposefully directed their actions toward Arizona, assertion of personal jurisdiction over them is presumed to be reasonable.* See *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184–85. *Smith and Miller have not argued that defending themselves in Arizona District Court would be burdensome*; nor could they, as they have defended themselves in suits arising out of the Metro scheme several times in Arizona state courts. See *Lake v. Lake*, 817 F.2d 1416, 1421–22 (9th Cir.1987) (listing factors in analysis of reasonableness of jurisdiction). Neither have they addressed any other of the considerations involved in a determination of the reasonableness of jurisdiction: existence of an alternative forum; convenience and effectiveness of relief for the plaintiff; interest of the forum state; efficiency of adjudication; extent of the defendants' purposeful interjection into Arizona; or possibility of conflict with sovereignty. Id. We cannot divine any substantial concern respecting any of these considerations.

*Davis*, 885 F.2d at 522-23 (emphasis added).

As stated by the *Calder* Court, "Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually." 465 U.S. at 790, 104 S.Ct. at 1487. See also, *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 781 n. 13, 104 S.Ct. 1473, 1482 n. 13 (1984) ("It does not of course follow from the fact that jurisdiction may be asserted over Hustler Magazine, Inc., that jurisdiction may also be asserted over either of the other [individual]

17

defendants.... [But] we today reject the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity.").

The *Davis* court summed up the foregoing as follows: "Thus in both *Calder* and *Keeton*, the Supreme Court applied the constitutional due process analysis to the contacts of the individuals concerned; it did not consider the existence of a state-created corporate form to create a due process limit on jurisdiction." *Davis*, 885 F.2d at 521.

California law is the same:

> The Court finds that the fiduciary shield doctrine does not apply to Defendant given that a corporate officer's contacts on behalf of a corporation are sufficient to subject the officer to personal jurisdiction where the officer is a "primary participant in the alleged wrongdoing or had control of, and direct participation in the alleged activities." *Allstar Marketing Group, LLC v. Your Store Online, LLC*, 666 F.Supp.2d 1109, 1120 (C.D.Cal.2009).

*Advanced Skin & Hair, Inc. v. Bancroft*, 858 F.Supp.2d 1084, 1090 (2012).

Here, as addressed above, Peterson's purposefully directed his action toward California and it was therefore foreseeable that he would be hauled into court here to answer for those actions.

Like the individual defendants in *Davis*, Peterson has not addressed the fairness of this Court exercising jurisdiction over him individually.  That is because it would not be unfair to require Peterson to defend his actions in this forum.  The Development Agreement which Peterson negotiated includes a choice of law and forum selection clause agreeing to jurisdiction in California:

> 15.10. This Agreement is made and shall be construed in accordance with the laws of the State of California and each Party agrees to submit to the exclusive jurisdiction of courts located in Orange County, California.

Richardson Decl., Exhibit C, at page 12.

Although Peterson is not himself a party to the Development Agreement, no objection to jurisdiction has been raised by Peterson's company, Descendent, which must litigate before this Court and is facing the same misrepresentation and fraud allegations as well as trade libel/commercial disparagement claims as Peterson is.  It makes no sense to dismiss Peterson

18

while his company must still defend those same allegations, allegations which Peterson will be required to defend already on behalf of Descendent and, as an owner, be liable. Given the foregoing, the most efficient resolution of the issues between the parties is in this Court which clearly has jurisdiction over Plaintiff and Descendent. Including a principal of Descendent and the individual personally involved in the misrepresentations and fraud as well as the disparaging statements which are going to be litigated in this forum is the most efficient was to resolve the instant claims.

California also has a strong interest in maintaining jurisdiction over an individual who committed fraud in purposefully soliciting business with a California entity and then added insult to injury by also disparaging that entity when their dealings fell through.

## III.    CONCLUSION

As set forth above, Defendants' Motion to Dismiss Plaintiff's First Amended Complaint should be denied in its entirety.

DATED: June 22, 2020          **LAW OFFICE OF M. DANTON RICHARDSON**

By:    /s/ M. Danton Richardson
              M Danton Richardson

              ***Attorney for Plaintiff,***
              Little Orbit LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd Day of June 2020, the foregoing PLAINTIFF LITTLE ORBIT LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT was filed with the Court's CM/ECF system and was served on the following counsel of record via email:

Michael C. Whitticar; VSB No. 32968
NOVA IP Law, PLLC
7420 Heritage Village Plaza, Suite 101
Gainesville, VA 20155
Tel:   571-386-2980
Fax:  855-295-0740
Email: mikew@novaiplaw.com
Counsel for Defendants

NADA I. SHAMONKI (SBN 205359)
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
Telephone: (310) 586-3200
Facsimile: (310) 586-3202
Email: nshamonki@mintz.com
Counsel for Defendants

/s/ M. Danton Richardson
M. Danton Richardson