1  NADA I. SHAMONKI (SBN 205359)
   nshamonki@mintz.com
2  **MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.**
   2029 Century Park East, Suite 3100
3  Los Angeles, CA 90067
   Telephone: (310) 586-3200
4  Facsimile:  (310) 586-3202

5  MICHAEL C. WHITTICAR (*admitted pro hac vice*)
   mikew@novaiplaw.com
6  **NOVA IP LAW, PLLC**
   7420 Heritage Village Plaza, Suite 101
7  Gainesville, VA 20155
   Telephone: (571) 386-2980
8  Facsimile:  (855) 295-0740

9  Attorneys for Defendant/Counterclaimant
   DESCENDENT STUDIOS INC. and
10 Defendant ERIC PETERSON

11                **UNITED STATES DISTRICT COURT**

12                **CENTRAL DISTRICT OF CALIFORNIA**

| 13 | LITTLE ORBIT LLC, a California Limited Liability Company, | Case No. 8:20-cv-00089-DOC-JDE |
|---|---|---|
| 14 | | **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE THE BINDING SETTLEMENT TERMS SHEET** |
| 15 | Plaintiff, | |
| 16 | vs. | |
| 17 | DESCENDENT STUDIOS INC., a Texas corporation, and ERIC PETERSON, an individual, | **[REDACTED VERSION OF DOCUMENT FILED UNDER SEAL PURSUANT TO ORDER OF THE COURT DATED APRIL 20, 2021]** |
| 18 | | |
| 19 | | |
| 20 | Defendants. | |
| 21 | DESCENDENT STUDIOS INC., a Texas corporation, | Date: May 24, 2021<br>Time: 8:30 a.m.<br>Courtroom: 9D |
| 22 | Counterclaimant, | |
| 23 | vs. | |
| 24 | | Judge: Hon. David O. Carter |
| 25 | LITTLE ORBIT LLC, a California Limited Liability Company, | Complaint Filed: 1/16/2020 |
| 26 | Counterdefendant. | |
| 27 | | |
| 28 | | |

Defendants and Counterclaim Plaintiffs Eric Peterson and Descendent Studios, Inc. respectfully submit this Reply in Support of their Motion to Enforce the Binding Settlement Terms Sheet between Defendants and Little Orbit, LLC ("LO" or "Little Orbit").

## I. **"Revenues" Means Revenues, Not Net Sales Nor Profits.**

While Little Orbit is correct that there must be a meeting of the minds for a contract to exist and be made, whether there is a meeting of the minds, whether a contract was formed, and what the words mean cannot be based on Little Orbit's *post-hoc*, self-serving statements about its subjective state of mind and unexpressed subjective intent. Rather, all of these issues are objectively determined based on the Parties "objective manifestations" of assent and intent made at the time of contracting. This rule exists primarily to prevent and foreclose the type of backsliding and re-negotiating which Little Orbit is improperly attempting in this case.

> California recognizes the objective theory of contracts. It is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation.
>
> …
>
> Thus, evidence of undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language. Rather, it is the outward manifestation or expression of assent which is controlling. With the respect to the interpretation of a written settlement agreement, one court has stated that "the true, subjective by unexpressed intent of a party is immaterial and irrelevant."

*Berman v. Bromborg,* 56 Cal. App. 4th 936, 948, 65 Cal. Rptr. 2d. 777, 783 (2d. Dist. Ct. App. 1997).

"A signature on a written contract is an objective manifestation of assent." *Rodriguez v. Oto*, 212 Cal. App. 4th 1020, 1027, 151 Cal Rptr. 3rd 667, 672 (2013). "If the terms are unambiguous there is ordinarily no occasion for additional evidence of the parties' intent. Their "actual intent," for purposes of contract law, is

1  that to which they manifested assent by executing the agreement." *Id.* Thus, a
2  parties' secret, unexpected subjective interpretation of words is irrelevant in
3  interpreting a contract:

> Ordinarily, the words of the document are to be given their plain meaning and understood in their common sense; the parties' expressed objective intent, not their unexpressed subjective intent, governs.
>
> The true, subjective, but unexpressed intent of a party is immaterial and irrelevant.

*Vaillette v. Fireman's Fraud Ins. Co.*, 18 Cal. App. 4th 680, 686, 690, 22 Cal Rptr. 807, 810, 814 (4th Dist. Ct. App. 1993). Cal. Civ. Code §§ 1636, 1638. Here the plain meaning and dictionary definition ▮

Here, Little Orbit's secret, unexpressed intent that ▮ allegedly meant ▮ was never expressed to Defendants, who had no idea of that purported intent and understanding for weeks after the ▮ ▮ was signed. In addition, given the vast differences between the ▮ there is no reason that Defendants should have known about Little Orbit's erroneous and incorrect interpretation. Thus there is no basis for setting aside the ▮ or any part of it based on any alleged unilateral mistake of fact by Little Orbit.

In addition, there is no reason that ▮ would be unconscionable, as the ▮ was carefully negotiated by skilled counsel at arm's length, Defendants own the relevant ▮ ▮ are typically based on ▮ and not on ▮ or profits, which are subjective and easy to manipulate. Furthermore, Defendants' evidence would have clearly shown that Little Orbit's many ▮ and failures to perform were responsible for the ▮ based on which Little Orbit ▮ and term

1  sheet addendum in February of 2019.  Therefore, there is no basis for setting aside
2  the ▇ based on a mistake. *See Donovan v. RRL Corp*, 26 Cal. 4th 261, 280-282
3  (Cal. Sup. Ct. 2001); Restatement (Second) of Contracts § 153.
4      The word ▇ was not used or defined in the ▇
5  To the contrary, the term used in the ▇
6  very different term which clearly has a very different meaning and a very different
7  connotation.
8      Little Orbit's claim that it construed ▇ not by its common dictionary
9  definition but rather to be the same thing as ▇
10 ▇ is untrue, illogical and objectively baseless.  First, the ▇
11 ▇ never defined or used the terms ▇, but rather the very
12 distinct and different term ▇
13     Second, Little Orbit breached and then terminated the ▇
14 ▇ long ago in February of 2019,
15 which is what caused this litigation.
16     Third, the ▇ provided for ▇
17 ▇ (p. 2, ¶ 19), which completely cancelled the ▇
18     Fourth, the parties' relationship under the ▇ is
19 not based on and looks nothing like their relationship under the ▇
20 ▇  To the contrary, under the ▇
21 assumed absolutely no responsibility for performing
22 ▇ after transferring ▇ to Little Orbit.
23     The ▇ was a completely different animal from
24 the terminated ▇  The ▇
25 simply and objectively was <u>not</u> a continuation of the Development Agreement in
26 whole or in part. There is no objectively logical or accurate reason that Little Orbit
27 could have reasonably expected the meanings of words not used or defined in the
28 ▇ to have the same meaning as its different term

1 ███ when used in the very different ███ In
2 addition, the parties simply did not base the ███ on the
3 ███ Rather, they were the product of back-and-forth dickering
4 and negotiations.

5     In short, as judged by the plain language dictionary definition of the words
6 they chose and used, as properly judged by their <u>objective</u> manifestations of assent
7 and meaning, and properly disregarding *post-hoc* subjective statements of Little
8 Orbit's inaccurate, baseless, purported secret meaning of ███ the parties
9 agreed that Defendants would ███ based on a percentage
10 ███

11 **II.** <u>**Little Orbit is Not Entitled to Skip**</u> ███
12     The next impasse in the signing of the long-form written ███
13 has risen due to Little Orbit's erroneous assertion that the phrase ███
14 ███ actually means and includes "all three ███ not made at all."
15 Nothing could be further from the truth.
16     To be sure, Little Orbit expressed some concern about its ███
17 and ability to make ███ on time during the settlement negotiations.
18 Therefore, the parties built in a remedy (a higher percentage ███
19 for "any ███" (emphasis supplied.) Little Orbit erroneously
20 wants to disregard not only the words ███ but also the fact that ███
21 <u>singular</u>. The simple, plain-language meaning of ███

---

[1] Oddly, Little Orbit devotes several pages of its Opposition to arguing about the meaning of the word "profits." Tellingly, "profits" is not a word that was ever used in the ███ Like ███ "profits" has a very different definition and connotation than ███ as "profits" means profits or income after subtracting costs and operation expenses. Once again, Little Orbit and its counsel have confused ███ with another, very dissimilar word and concept. See <u>Black's Law Dictionary</u>, first definition of "profit," 11th ed. at p. 1463: ("The excess of revenue over expenditures in a business transaction; Gain."). ███

-4-

Case 8:20-cv-00089-DOC-JDE   Document 72   Filed 05/10/21   Page 6 of 10   Page ID #:788

1   is that if Little Orbit made one late payment, the earlier [REDACTED]
2   would be part of Descendant's [REDACTED] resulting from Little
3   Orbit's admittedly [REDACTED] Once again, the parties simply did not
4   base the [REDACTED] Rather, they
5   were the product of back-and-forth dickering and negotiations.
6       The [REDACTED] and would not be a [REDACTED] to
7   Descendent. Under the Binding Settlement Terms Sheet, Defendants get the [REDACTED]
8   [REDACTED] on the back end of the [REDACTED] in any event. If there is a
9   [REDACTED] by Little Orbit, part of the [REDACTED] gets advanced in time.
10  Little Orbit still gets [REDACTED] even if there is a [REDACTED] by
11  Little Orbit. That means that if the game sells well, the early [REDACTED]
12  after a [REDACTED] by Little Orbit yields [REDACTED]
13  Descendent in the long run. That cannot possibly be a disproportionate or punitive
14  penalty clause.
15      Additionally, Little Orbit's ongoing concern about [REDACTED]
16  [REDACTED]
17  was signed highlights its clear [REDACTED] Properly
18  viewing the grave risks and potential damages that Little Orbit's [REDACTED]
19  [REDACTED] Descendant pose to Little Orbit's ability to
20  [REDACTED]
21  in any event is neither a windfall nor a punitive penalty.
22      There is nothing in the [REDACTED]
23  [REDACTED] That is as
24  it should be. If Little Orbit does not make the [REDACTED] does not
25  [REDACTED] Defendants are and should be entitled to [REDACTED]
26  payments. This is especially so because Defendants are releasing their very clear
27  right to [REDACTED] due under the [REDACTED]
28  terms sheet amendment to the Development Agreement. The accelerated (but not

-5-



1  additional) ▮▮▮▮▮ is reasonable and proportionate and neither
2  punitive nor a penalty.

3  **III.   Defendants are Not Seeking Advisory Opinions.**

4  Little Orbit wrote Defendants and expressly stated that it would not ▮▮
5  ▮▮▮▮ if the Court adopted Defendants' position on the plain language
6  meaning of ▮▮▮ (Ex. A to Declaration of Eric Peterson in Support of Motion
7  to Enforce). This was a clear repudiation of Little Orbit's good faith best efforts
8  obligations as ▮▮▮▮▮▮▮ (Memo In Support of Motion to
9  Enforce at p. 4). There is nothing improper or inadmissible about Defendants calling
10 this breach and repudiation to the Court's attention. Defendants are not seeking to
11 establish the fact or the amount of Little Orbit's liability on the original claims
12 asserted in this litigation. Therefore, there is no prohibition on Defendants using
13 these alleged settlement negotiations to show Little Orbit's ▮▮▮▮
14 which has created a real, actual justiciable controversy.

15     Federal Rule of Evidence 408 provides that settlement communications are not
16 admissible for certain limited purposes. Those limited purposes are "to prove or
17 disprove the validity or amount of a disputed claim or to impeach by a prior
18 inconsistent statement or contradiction." F.R.E. 408(a).

19     Section (b) of Rule 408 provides that "the court may admit this evidence for
20 another purpose." The other purpose for which Little Orbit's email is being used
21 here is to show repudiation and breach of the ▮▮▮▮▮ not
22 for impeachment and not to establish liability on the original claims. *See Cates v.*
23 *Morgan Portable Bldg. Corp.*, 780 F. 2d 683, 691 (7th Cir. 1985) (settlement
24 communications admissible to show breach of settlement agreement). *See also*
25 *Basha v. Mitsubishi Motor Credits of Am., Inc.*, 336 F. 3d 451, 454 n. 4 (5th Cir.
26 2003); *Central Soya Co. v. Epstein Fisheries, Inc.*, 676 F. 2d 939, 944 (7th Cir.
27 1982) (both holding that settlement negotiations are admissible to prove or construe
28 the terms of the settlement agreement).

1  In addition, a statement that a party refuses to abide by a prior written agreement is not a settlement communication in the first place but rather a breach and repudiation.

Therefore, the repudiation claim is ripe and Little Orbit should be found in breach and ordered to comply with its good faith best efforts obligation as an █████████.

The other alleged "advisory" issues are also simply Defendants seeking proper and lawful remedies for Little Orbit breaching and repudiating █████ █████.

### IV. Little Orbit Is Only Entitled to Use the Game Code as it Was Known and Discussed at the Time of the Binding Settlement Terms Sheet.

███████████████████████████████ did not require Descendent to provide, deliver, transfer any ███████████████ Rather, it grants Little Orbit a "█████████████████" which it already had in its possession for testing and evaluation purposes. (BSTS ¶12). The minor work which Descendent performed for only about a week after Little Orbit ████████████████████ ████████████████ in February of 2019 consisted of minor debugging work and removal of Little Orbit's preferred and specified API (Application Program Interface). Therefore, that work was contrary to Little Orbit's specified development path and would not be useful to Little Orbit.

Contrary to Little Orbit's incorrect assertion, this small amount of additional work, post-termination, was never discussed or offered to Little Orbit in connection with the ███████████████████ negotiations, in part because it would be of little or no use to Little Orbit. It is at best unclear and worst fictional whether and how Little Orbit developed its alleged subjective "understanding" that Defendants continued to develop the game for ████████████ Little Orbit's █████ ████████. Simply put, that assertion is made up and not factual and the alleged ████████ additional development work simply did not take place.

1     There was about ▮▮▮▮ done to reinsert an existing API which
2 deviated from Little Orbit's development path. If the Court decides that Little Orbit
3 is entitled to ▮▮▮ work done to remove Little Orbit's mistakes, then
4 Defendants are willing to convey or transfer the "additional" ▮▮▮
5 reversing Little Orbit's development path. However, the alleged failure by
6 Defendants to provide Little Orbit with something that was never promised nor even
7 discussed with them, and which would be worthless to Little Orbit in any event, is
8 not a substantial failure of consideration.

## V. CONCLUSION.

    For all of the foregoing reasons, Defendants' positions on the plain language and meaning of the ▮▮ are correct and should be enforced. Little Orbit is in breach of the ▮▮ and should be required to comply with it, to make the ▮▮ ▮▮ and to pay Defendants their ▮▮▮▮.

Dated: May 10, 2021      Respectfully submitted,

By: /s/ Michael C. Whitticar
Counsel

Nada I. Shamonki (SBN 205359)
MINTZ LEVIN COHN FERRIS GLOVSKY
AND POPEO P.C.
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
Telephone: (310) 586-3200
Facsimile: (310) 586-3202
Email: nshamonki@mintz.com

Michael C. Whitticar (*admitted pro hac vice*)
NOVA IP Law, PLLC
7420 Heritage Village Plaza, Suite 101
Gainesville, VA 20155
Tel: 571-386-2980
Fax: 855-295-0740
E-mail: mikew@novaiplaw.com

*Counsel for Defendants*

# CERTIFICATE OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and am not a party to the above-entitled action.

On May 10, 2021, I filed a copy of the following document(s):

**[REDACTED] REPLY IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE THE BINDING SETTLEMENT TERMS SHEET**

By electronically filing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- **Leo Edward Lundberg , Jr**

  leo.law.55@gmail.com

- **Michael Danton Richardson**

  mdantonrichardson@yahoo.com

Executed on May 10, 2021, at Los Angeles, California. I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

/s/ Diane Hashimoto_____
Diane Hashimoto

-1-