1
                      UNITED STATES DISTRICT COURT
                      CENTRAL DISTRICT OF CALIFORNIA

2
                      SOUTHERN DIVISION - SANTA ANA

3

4
LITTLE ORBIT LLC,         )   Case No. SACV 20-89-DOC (JDEx)
                       )

5
     Plaintiff,     )   Santa Ana, California
                       )   Monday, May 24, 2021

6
        v.         )   12:00 P.M.
                       )

7
DESCENDENT STUDIOS INC.,  )   VIDEOCONFERENCE
et al.,                )

8
                       )
     Defendants.    )

9
_____)

10

11

12
                  TRANSCRIPT OF PROCEEDINGS

13
          BEFORE THE HONORABLE JOHN D. EARLY
            UNITED STATES MAGISTRATE JUDGE

14

15

16
Appearances:            See Page 2

17
Deputy Clerk:          Maria Barr

18
Court Reporter:        Recorded; CourtSmart

19
Transcription Service:    JAMS Certified Transcription
                       16000 Ventura Boulevard #1010

20
                       Encino, California  91436
                       (661) 609-4528

21

22

23

24
Proceedings recorded by electronic sound recording;

25
transcript produced by transcription service.

1   APPEARANCES:

2

3   For the Plaintiff:        Law Office of M. Danton Richardson
                              By:  MICHAEL DANTON RICHARDSON
4                             131 North El Molino Avenue, Suite 310
                              Pasadena, California  91101
5                             (949) 677-6434
                              mdantonrichardson@yahoo.com
6

7

    For the Defendants:       Nova IP Law PLLC
8                             By:  MICHAEL C. WHITTICAR
                              7420 Heritage Village Plaza, Suite 101
9                             Gainsville, Virginia  20155
                              (571) 386-2980
10                            mikew@noaiplaw.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1     <u>SANTA ANA, CALIFORNIA, MONDAY, MAY 24, 2021, 12:00 P.M.</u>

2          THE COURT:  I think we have -- Mr. Whitticar, is --

3     I don't see you.  I see "Nova IP Law."  Are you present,

4     Mr. Whitticar?

5          MICHAEL C. WHITTICAR:  I am here.  Yes, I am.

6     (Indecipherable) if I start video.  One moment, Your Honor.

7     There we go.  Sorry.  (Indecipherable.)

8          THE COURT:  Okay.  Calling Case No. 8:20-CV-89-DOC-

9     JDE, *Little Orbit LLC v. Descendent Studios Inc. and*

10    *Eric Peterson* and related counter claim -- or claims.  We are

11    here proceeding by videoconference in the United States

12    District Court for the Central District of California on

13    defendants' motion to enforce a settlement agreement.  We

14    will start by taking appearances of counsel, please.

15          MICHAEL DANTON RICHARDSON:  Yes, Your Honor.

16    Danton Richardson here on behalf of the plaintiff, Mr. --

17          THE COURT:  All right.  I just need counsel's

18    appearance all -- that's all I need.

19          MR. RICHARDSON:  Okay.  Fine.

20          THE COURT:  And on behalf of defendants?

21          MR. WHITTICAR:  Michael Whitticar, Your Honor.

22          THE COURT:  All right.  So there's a lot of under-

23    seal filings.  I'm just going to tell you in general what

24    I've reviewed, and the reason why we're here is pursuant to a

25    referral by Judge Carter to proceed by way of videoconference

1   at 12:00 p.m. today, May 24, 2001 [sic] on the motion, and

2   there's a lot of ex parte and under-seal filings so some of

3   these references may be to sealed or redacted filings, but

4   I've reviewed defendants motion to enforce settlement

5   agreement with the request for attorneys' fees -- it's, like,

6   maybe, Docket 61 -- and the supporting memorandum and

7   evidence; I've received and reviewed plaintiff's opposition

8   to the motion with supporting evidence and objections to

9   defendants' evidence; I've received defendants' reply brief,

10  response to objections to evidence -- I think there was an

11  additional declaration submitted -- and defendants own

12  objections to plaintiff's evidence; and then, lastly, there

13  was a request for judicial notice filed by plaintiffs on

14  May 17, 2021.

15          Bearing in mind that there's a lot of sealed and

16  unsealed filings within that universe, starting with

17  defendant, because you're the moving parties, is there

18  anything that I should have considered that I haven't?

19          MR. WHITTICAR:  Well, the only -- no, Your Honor.

20  I think it's all covered in our briefs.  If I was -- my

21  opening argument --

22          THE COURT:  I just want -- of everything that I

23  just read off, is there anything else that's -- that I didn't

24  mention that I should have considered?

25          MR. WHITTICAR:  No, Your Honor.

1        THE COURT:  All right.

2        And from plaintiff?

3        MR. RICHARDSON:  That's everything, Your Honor.

4        THE COURT:  All right.  I'm going to start with

5   some procedural thoughts, and then we'll hear from you.

6        The plaintiff's request for judicial notice was

7   filed after the briefing was closed.  Under the Local Rules,

8   it's in violation of the Local Rules.  It's an improper

9   surreply.  I'm not going to consider that.

10        In terms of evidentiary objections, I'm going to

11   make a global ruling that I'm considering only admissible

12   evidence and not considering any evidence that's not

13   admissible.

14        In terms of a tentative, I'll tell you my tentative

15   is to deny the motion but not do what plaintiff seems to be

16   asking me to do, which is to declare that there's no

17   agreement.  I find there is a binding, enforceable settlement

18   agreement, and that it's clear its terms were understood by

19   the parties at the time, and there was a meeting of the

20   minds.

21        The only proviso to that is I do think the parties

22   anticipated at least the possibility of a more-detailed

23   written settlement agreement, and that's contained -- and I'm

24   going to stay in -- I'm not putting us under seal today

25   unless someone wants me to.  I'm going to focus on, I think,

1   what are not any way financial or things that could be

2   considered confidential, but the settlement agreement itself

3   contemplated the parties "may" -- and that was the term that

4   was used -- "may" attempt to have a "further" -- and they

5   used the term "further" -- writing but that the parties also

6   confirmed that they understood that the document that was

7   placed on the docket under seal was, in and of itself, a

8   binding and enforceable agreement.

9          So my inclination, though, is to deny the motion,

10  which wants it enforced, and here's why: I do think that it

11  would be fair to say the parties did contemplate the

12  possibility of a final -- more final, detailed settlement

13  agreement.  That didn't happen.  I'm not going to order

14  plaintiff to sign what's been attached as Exhibit C to the

15  declaration in support of the motion because that's not --

16  that's not the same thing as what's already a binding,

17  enforceable settlement agreement.  But I'm also not going to

18  say that plaintiff is in default by not making the initial or

19  follow-up payments.  I would run those -- the payment dates

20  -- I think the first one was due 60 days from the final

21  settlement agreement, and I'm going to run it from today.

22         So that's my tentative thoughts, and I would deny

23  -- neither party, I don't think, gave me a statutory basis

24  for attorneys' fees and I -- and even if there were one, I

25  would find it not warranted here.  So the motion would

 1  technically be denied, but there is a binding, enforceable

 2  settlement agreement that the parties need to comply with.

 3          All right.  It's defendants' motion.  I'll hear

 4  from defense counsel first.

 5          MR. WHITTICAR:  Yes, Your Honor.  I guess where we

 6  got here was from plaintiff taking the position that it

 7  could, a -- that it could essentially not make any of the

 8  three settlement payments and the only remedy for that was a

 9  very limited advancement in the percentages of the funds paid

10  to my client, which would not result in any additional money

11  to my client but would only result in an acceleration of

12  payments to my client, but I think we have a dispute over the

13  meaning and interpretation of the settlement agreement with

14  respect to that very important term.

15          THE COURT:  Well, we haven't got there yet, as far

16  as I'm concerned.

17          MR. WHITTICAR:  Yeah.  And then we also have a

18  problem with --

19          MR. RICHARDSON:  Your Honor, if I may interrupt.

20  If --

21          THE COURT:  No, you may not, sir.  I'm hearing from

22  defendants.  Thank you.

23          MR. RICHARDSON:  Well, I was going to ask that it

24  be under seal if we're going to get into the particulars.

25          THE COURT:  I'm not going to place this under seal.

1   So I'm going to ask counsel to please be -- and I'm going to

2   be blunt.  The amount of sealing here is ridiculous.  Now,

3   maybe it was done as a courtesy to me because I placed a

4   settlement agreement under seal, but the parties here and how

5   things have been filed, it made it very difficult to follow

6   with the amount of redaction on things that clearly should

7   not be redacted, and I owe a duty to -- you owe a duty to

8   your clients.  I owe a duty to the public, and this is a

9   public courthouse, this is a public dispute, and barring, for

10   nondispositive matters, good cause -- and for dispositive

11   matters -- and you can certainly make a case -- I'm not

12   making a finding -- this is dispositive matter -- compelling

13   reasons, and we don't have compelling reasons for a lot of

14   what's been redacted.

15        So I'm going to suggest that the parties, if they

16   get into something specific, be careful, but I don't think

17   whether or not the parties fight over the meaning of a word

18   -- one word that is not, in and of itself, confidential or

19   even surprising that it's in a settlement agreement is not

20   good cause and certainly not compelling reasons to seal.

21        All right.  Let's proceed.  Back to counsel for

22   defendants, Mr. Whitticar.

23        MR. WHITTICAR:  Yes, Your Honor.  So I appreciate

24   that there's a binding settlement agreement based on the term

25   sheet, and I don't think our side has ever disputed that.

1  The question is that the plaintiff has announced in fairly

2  clear, unequivocal writings its intent not to abide by that

3  settlement agreement when they said they're not going to make

4  the three payments; when they said they're not going to

5  market the game; and when they said they're not going to

6  honor, you know, the common sense, ordinary, plain language

7  definition of "revenue" and --

8  　　　　　　THE COURT:  Well, here's what I'm telling you: that

9  the -- the first payment was due in -- and unfortunately my

10 CM -- my electronic filing system is down, and I don't have a

11 copy of the order in front of me, and it doesn't appear to be

12 included in the other things that I have, but the first

13 payment is due 60 days, as I recall, from -- and the language

14 that's used in --

15 　　　　　　MR. WHITTICAR:  It was 30 days --

16 　　　　　　THE COURT:  Let me speak, please, sir.

17 　　　　　　MR. WHITTICAR:  Sorry --

18 　　　　　　THE COURT:  The language that's used is from,

19 quote, "the signing" -- or -- and I'm paraphrasing now so I

20 should not say "quote," but the signing of a "written

21 memorialization," and then later on the parties say,

22 (reading) Each party intends to be bound by this agreement

23 and recognize that "it" -- the agreement -- is a final and

24 binding settlement agreement even though the parties (end

25 reading) -- and here's the key -- (reading) "may" draft and

1   execute a further, more detailed, written memorialization

2   (end reading).

3           So the parties contemplated it -- that it was

4   possible.  It didn't happen.  So now we're going to revert to

5   the settlement agreement that was put on the record way back

6   in -- on November 17th.  But in fairness to plaintiff, I'm

7   not going to make that retroactive -- that his payment was

8   due 60 days from November 17th.  I'm going to make that

9   payment due -- and I'm saying "60 days."  Maybe it was

10  30 days -- from today.  So plaintiff will have an opportunity

11  to comply.  If he doesn't make that payment, then we'll see

12  where we are, but that's what we're going to do.  I see --

13  I'm going to hold my tongue.

14          Please continue, Mr. Whitticar.

15          MR. WHITTICAR:  So the second issue, Your Honor,

16  was that the plaintiff said that they were going to treat

17  revenues as some kind of net sales under the original

18  development agreement which was of course --

19          THE COURT:  It's not -- that dispute is not ripe

20  for me.  Okay?  Come back to me, if you need to, if the first

21  payment is not made.  I think revenue -- the meaning of it is

22  clear.  It's not ambiguous.  It was clear from the context of

23  the agreement itself, and from the parties course of dealing,

24  it was not unclear.  It appears to me that the -- there's

25  been an effort made by plaintiff to create an ambiguity where

1   there was none, but it's not -- unless and until that first

2   payment is missed, you're asking me -- and I do think this is

3   fair from plaintiff -- you're asking me or Judge Carter to

4   make a advisory ruling when it's not before us.  We make

5   rulings on actual, live disputes.  Even if everybody says

6   it's going to be a dispute 60 days from now, I'm not walking

7   you guys through this.

8         You had a full and fair opportunity to put whatever

9   terms you wanted in a term sheet, in a settlement agreement,

10  and I said, I'll put whatever you -- whatever terms you want

11  will be what the settlement terms are.  This is what is

12  before us.  I find that it's not ambiguous and the meaning is

13  clear based on the course of dealing with the party and the

14  language used, and I'm not going beyond that unless there's

15  some particular ripe dispute.

16        MR. WHITTICAR:  Okay.  And then the third issue,

17  Your Honor, was them saying that they refused to market the

18  game or spend on marketing or user acquisition --

19        THE COURT:  Again, I -- I'm just going to repeat

20  myself.  It's not a ripe -- it's not ripe at this point.  I'm

21  not going to get into that.  The agreement is clear.  If you

22  hit a point where that has been violated, as opposed to them

23  expressing their agreement about what the -- their views on

24  what the agreement means, so be it, but let's get first

25  things first.  There's no more -- there's -- this is clear:

1    There's no more -- there's no more "further" written

2    settlement agreement.  It was contemplated, didn't happen.  I

3    think it's fair to give plaintiff time now to comply with the

4    first payment under the agreement.  It'll run from today,

5    May 24th, and if they don't make that payment, whatever the

6    remedies are, they are.

7              Anything further, Mr. Whitticar?

8              MR. WHITTICAR:  I understand Your Honor's ruling.

9    The only reason we contend that this was ripe and needs to be

10   addressed is they've already written us and told us they're

11   not going to do that, which I would consider an anticipatory

12   breach which makes --

13             THE COURT:  Nope.  I disagree.

14             All right.  Let's turn to Mr. Richardson.  Anything

15   you want to argue on any point or anything I've said?

16             MR. RICHARDSON:  Yes, Your Honor.  I -- there's

17   only one point that I really need to address.  I understand

18   the rest of everything you're saying and would concede, but

19   as far as singling out in the term sheet the language "may"

20   be a written agreement, it's unfortunate that the word "may"

21   was used.  I would point out in the very beginning of the

22   agreement the payment terms were all triggered based on the

23   signing of a "written memorialization."  That shows, to me, a

24   clear intent that the parties planned to have a written

25   agreement and everything was contingent on that.  So I --

1      THE COURT:  No.  But I'm going to -- here's where
2  I'm going to disagree with you.  There -- you -- there were
3  -- in addition to the word "may" -- that's not the only thing
4  I'm hanging my hat on.  In addition to the word "may," right
5  after the word "may," it says "draft" and "execute," and then
6  it says a "further, more detailed, written memorialization."
7  So it says a "further"; so it acknowledges that's what being
8  put on the record itself was -- again, the words are
9  important -- a "written memorialization," and bear in mind
10  that the payment obligation, the triggering language is what?
11  "Written memorialization."

12      So the fact that there may have been an intent to
13  have a "further" or a "possible" -- "may" have a further
14  written memorialization, the language "written
15  memorialization" was the triggering language on the payment
16  and -- again, this is where it's crystal clear -- (reading)
17  each party intends to be bound by this agreement and
18  recognize that "it" is a final and binding settlement
19  agreement (end reading).

20      So I disagree with your interpretation, and, again,
21  I think it's clear, and we're going to use that language, and
22  I'm going to give your client -- and I think it's only fair
23  now that this determination has been made to run the payment
24  obligation from today, rather than from the date of the
25  settlement agreement.

1      MR. RICHARDSON:  Thank you, Your Honor.  That's all

2  I have.

3      THE COURT:  All right.  So I guess I wish we had a

4  representative from plaintiff beyond counsel here so that

5  maybe I could talk -- we're on the record, and we're in open

6  court; so I'm not going to be getting into anything that

7  happened in our settlement conference but --

8      MR. RICHARDSON:  I'll relay anything you would like

9  to share, Your Honor, with Mr. Scott.  He wanted to be here,

10  but unfortunately he was en route traveling at this time.

11      THE COURT:  Well, I'm just going to leave it with

12  this: You folks need to work this out and finalize it, and

13  I'm not here to blame, but I am here to say that the --

14  although not lengthy, the settlement agreement is clear, and

15  maybe nothing will come of the issues -- the substantive

16  issues that are discussed in the settlement agreement, but

17  trying to declare it unclear or unworkable and go back to a

18  status quote ante back in November when you're all going to

19  suddenly be trying to prepare for a trial that's in no one's

20  interest and that is going to result in no one being happy --

21  and I'll give you a perfect example.  I think you've told me

22  combined you'd spent close to $15,000 on this motion, and

23  maybe I missed it: On what statutory basis is there a request

24  for fees from either side?

25          MR. WHITTICAR:  It'd have been the settlement

 1  agreement itself, Your Honor.

 2          THE COURT:  Well, but that -- the terms that are --

 3  the settlement agreement -- maybe I missed it.  Does the --

 4  what was put on the record at Docket 48-1 -- did that have

 5  attorneys' --

 6          MR. WHITTICAR:  Paragraph 18, Your Honor.

 7          THE COURT:  -- fee provision?

 8          MR. WHITTICAR:  Yes, Your Honor.  Paragraph 18.

 9          THE COURT:  Oh, okay.  Well, let me look at that.

10  See if my CM is back up.  Maybe I'll revisit that one.

11          Oh, you know what?  You're right.  I'm sorry,

12  Mr. Whitticar.  You are correct.  So maybe we should revisit

13  that.  So tell me -- Mr. Whitticar, tell me why -- even

14  though I'm going to deny the motion, why I should award your

15  client attorneys' fees in connection with the language in the

16  settlement agreement, which is prevailing party may recover

17  attorneys' fees and expenses.

18          MR. WHITTICAR:  Because we're now six months after

19  the first written memorialization and the binding settlement

20  term sheet and we haven't received any money and we haven't

21  received any payments.  They've sent at least two emails

22  stating that they don't intend to abide by the clear --

23          THE COURT:  Well, you're rearguing the motion.

24  I've told you I'm going to deny the motion.  So in light of

25  the fact that the motion is going to be denied, why your

1    client would be the prevailing party on the motion.

2            MR. WHITTICAR:  I think the definition of

3    "revenues" is about a hundred-million-dollar -- sorry --

4    about a million-dollar question as we would expect there to

5    be about a --

6            THE COURT:  Well, maybe you'll be able to take care

7    of that in the future, but for right now I'm denying the

8    motion.  So how is your client the prevailing party?

9            MR. WHITTICAR:.  If that's the Court's ruling, then

10   I would say that we're not, Your Honor.

11           THE COURT:  All right.

12           Mr. Richardson, you had a cross-request for

13   attorneys' fees.  In light of the fact that I'm not granting

14   the relief that your client requested on the motion and I'm,

15   in fact, directing that the running date -- I'm doing your

16   client a favor in having the running date for its -- for his

17   -- or its payment run from today, rather than November 17th,

18   do you contend your client is the prevailing party?

19           MR. RICHARDSON:  Yes, as to the defendants' motion,

20   we are.  It was premature.  It should have been clear it's

21   premature.

22           THE COURT:  Well, maybe -- you know what?  In light

23   of that argument, maybe I should get to the claim of

24   anticipatory breach.  Maybe it's not premature anymore.  And

25   I didn't say it was premature, but maybe we should get --

1          MR. RICHARDSON:  Well, it's not ripe yet.  There's

2     a payment obligation that was triggered based on a written

3     memorialization, and there's been no written memorialization.

4     So now we have a finite date --

5          THE COURT:  Well, there has been a written

6     memorialization.  The same term is used to describe the

7     settlement agreement itself -- "written memorialization."  It

8     describes "it" as a "written memorialization."  The question

9     was whether there would be a "further" written

10    memorialization.  Maybe I should reach the issue of the

11    anticipatory breach if we're just going to be back here --

12    what I'm trying to get a sense of, Mr. Richardson: Is your

13    client going to make the payment?

14         MR. RICHARDSON:  We certainly have the ability to

15    make the payment.  What counsel is referring to, this email

16    traffic back and forth, came about when the parties were

17    trying to work out their differences about what deductions

18    could be made and those type of issues, and so it was said by

19    my client without consulting his attorney, and it was

20    basically said, "Well, if you're going to do X, then here's,"

21    you know, "what we can do."  And saying it is one thing;

22    doing it is something different.  For there to be a breach,

23    it takes action.  And so we're not there yet, but my client

24    has every intent to comply with the agreement.

25              MR. WHITTICAR:  May I respond to that, Your Honor?

 1          THE COURT:  No.

 2          Here's what plaintiffs wrote in their opposition:

 3   (reading) Defendants' motion is basically asking this Court

 4   to rewrite and also add terms to the settlement term sheet

 5   entered between -- into between the parties (end reading) --

 6   and I'm reading from page 2 of the opposition brief.

 7   (Reading) This is not authorized under the law, and the

 8   motion should be denied.  In fact, what the motion clearly

 9   establishes is that there was never a meeting of the minds

10   between the parties as to the essential terms required for

11   settlement of this action, and the Court should therefore

12   declare the settlement term sheet not valid and set a new

13   trial and related dates in this matter (end reading).

14          So that's what plaintiff's requested and I --

15   that's not warranted.  Defendants not getting what they

16   wanted because of the only issue about whether there would be

17   a final written settlement -- a "further" final written

18   settlement agreement.

19          So I'm finding neither party is the prevailing

20   party in the context of this motion, and I would strongly

21   urge the parties to, rather than spending money filing serial

22   sealing documents and objections to evidence, and sealing

23   objection -- portions of objections to evidence, and

24   responding to objections to evidence, and belated -- late

25   not-permitted requests for judicial notice attaching pages

 1  upon pages of dictionary -- copies of online dictionaries --

 2  you had a meeting of the minds on November 17th.  The terms

 3  as set forth in the binding written settlement agreement that

 4  everyone agreed was a binding written settlement agreement

 5  are clear, are sufficient, and should be complied with.  I'm

 6  -- we're going to run that compliance date for the first

 7  payment from today, and if the parties declare a breach, then

 8  I guess we'll be back, but I'm not going to recommend that

 9  the -- either that the motion itself, as written, be granted,

10  that the relief sought by plaintiff be granted, or that

11  either side's attorneys' fee request be granted.

12          But I will offer, if anyone thinks it's of

13  assistance, outside the context of this hearing -- and it was

14  referred to me by Judge Carter; so I will be providing to him

15  a further response about today's proceedings.  If the parties

16  want my further assistance to try to work through issues on a

17  -- what I would call a "continuing settlement conference" --

18  so covered by the California state mediation privilege -- I'm

19  available.  Send an email to my courtroom deputy the same way

20  you set up the initial settlement conference.

21          But that's likely to be the ruling from the Court.

22  I'll give each side one more opportunity to not repeat things

23  that are in your papers that we've already covered.

24          Mr. Whitticar, is there anything further from

25  defendants, as the moving party, having heard my tentative

1   thoughts?

2          MR. WHITTICAR:   The only addition I would have,

3   Your Honor, is that in an email attached as Exhibit A to

4   Mr. Peterson's first declaration, Little Orbit clearly said,

5   "I am not going to make the payments."  So I understand the

6   Court's ruling, but I do think that him having unequivocally

7   said that he's not going to make the payments, it is ripe for

8   adjudication.

9          THE COURT:   Well, as I mentioned, the issue about

10  whether there would be a final written settlement agreement,

11  even though that's not what the agreement says, left open

12  sufficient ambiguity for the parties to continue to discuss.

13  So I'm not finding that that was an anticipatory breach.

14          And, Mr. Richardson, anything further on behalf of

15  plaintiff?

16          MR. RICHARDSON:   That's all.  We'll submit,

17  Your Honor.

18          THE COURT:   All right.  So technically the matter

19  is under submission, but there will be a written ruling in

20  some form as soon as possible.  But again, I wish there was a

21  representative from plaintiff here so that we could talk

22  about it, we could even go off the official record and switch

23  into mediation mode, but I'm not going to do that without the

24  actual party being here.  So I appreciate everyone's

25  thoughts.  There will be an order forthcoming.

1          Is there anything further on behalf of plaintiff?

2          MR. RICHARDSON:  Nothing, Your Honor.

3          THE COURT:  Anything further on behalf of

4   defendants?

5          MR. WHITTICAR:  No, Your Honor.  Thank you for your

6   --

7          THE COURT:  All right.  Thank you.  We are

8   concluded.

9      (Proceedings adjourned.)

10  ///

11  ///

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                                    CERTIFICATE

5              I certify that the foregoing is a correct

6    transcript from the electronic sound recording of the

7    proceedings in the above-entitled matter.

8

9    /s/ Julie Messa             May 29, 2021
     Julie Messa, CET**D-403      Date
10   Transcriber

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25