M. DANTON RICHARDSON (State Bar No. 141709)
mdantonrichardson@yahoo.com
LEO E. LUNDBERG, JR. (State Bar No. 125951)
leo.law.55@gmail.com
LAW OFFICES OF M. DANTON RICHARDSON
131 N. El Molino Ave., Suite 310
Pasadena, CA 91101
*Attorneys for Plaintiff,*
LITTLE ORBIT LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LITTLE ORBIT LLC, a California Limited Liability Company, <br><br> Plaintiff, <br><br> vs. <br><br> DESCENDENT STUDIOS INC., a Texas corporation, and ERIC PETERSON, an individual, <br><br> Defendants. <br> _____ <br><br> DESCENDENT STUDIOS INC., a Texas corporation, <br><br> Counterclaimant, <br><br> vs. <br><br> LITTLE ORBIT LLC, a California Limited Liability Company, <br><br> Counter Defendant. <br> _____ | Case No.: 8:20-cv-00089-DOC-JDE <br><br> Judge: Hon. David O. Carter <br><br> **PLAINTIFF LITTLE ORBIT LLC'S NOTICE OF MOTION AND MOTION TO SET ASIDE THE BINDING SETTLEMENT TERMS SHEET DUE TO DEFENDANTS' FRAUD AND FAILURE TO DELIVER THE ASSETS COVERED BY THE TERMS SHEET OR FOR ALTERNATIVE RELIEF AND FOR AN AWARD OF ATTORNEYS' FEES** <br><br> **[FILED UNDER SEAL PURSUANT TO ORDER OF THE COURT DATED APRIL 20, 2021]** <br><br> **Date: July 26, 2021** <br> **Time: 8:30 a.m.** <br> **Courtroom: 9D** |

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 28, 2021, at 8:30 a.m. or as soon thereafter as the matter can be heard by the above-entitled Court, in Courtroom 9D of the United States District Court for the Central District of California, located at 411 West Fourth Street, Santa Ana, CA, 92701, Plaintiff Little Orbit LLC will, and hereby does, move the Court for an order setting aside the Binding Settlement Terms Sheet due to Defendants' failure to turn over the licensed assets covered by the Settlement Terms Sheet, or alternatively for other relief, and for attorneys' fees for having to bring this Motion.

This motion is made following a good faith conference of counsel pursuant to L.R. 7-3, which took place on June 21, 2021 (¶¶ 4-5 to the Declaration of M. Danton Richardson, filed concurrently herewith). No agreement could be reached so this Motion is presented to the Court for determination.

1. As provided in the "Binding Settlement Terms Sheet" in paragraph ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Implicit in such a license is the ability to deliver to the licensing party ▮▮▮▮▮▮▮▮

2. This Motion to Set Aside the Binding Settlement Terms Sheet is necessary due to the fact Defendants have now admitted that all of the game IP assets – with the exception of a snapshot of the developed code as of some unspecified date – have been destroyed notwithstanding Descendent's contractual obligation to maintain those assets.

3. The Defendants' failure to deliver "all game IP", including the original artwork and project history, as covered by the license provided to Plaintiff under the Settlement Terms Sheet frustrates the very purpose of the parties' settlement agreement and greatly inhibits the ability to complete development of the video Game in issue, the very purpose of such agreement.

4. Pursuant to paragraph 3.8 of the Development Agreement in dispute Descendent was required to maintain a "secure" copy of all of the game assets with an "off-site storage" facility for 4 years following delivery of the final version of the Game. See paragraph 3.8, page 6, of Exhibit A.

5. Defendants have now admitted they did not maintain the required secure repository for all of the game IP assets and have admitted that those assets have all been destroyed – with the exception of a snapshot of the game code as of some unknown date - which means Defendants cannot deliver the bargained for assets which are the subject of the Settlement Terms Sheet.

6. Given Defendants' breach of the Settlement Terms Sheet by failing to deliver to Plaintiff all of the game IP assets as required, Plaintiff should be relieved of any obligation to make the payments to Defendants required by the Settlement Terms Sheet and the Court should set aside that agreement for a failure of consideration.

7. Alternatively, the settlement terms must be adjusted in light of Defendants' failure to preserve and deliver all of the "game IP" licensed to Plaintiff.

8. The Settlement Terms Sheet should alternatively be set aside due to Plaintiff's mistake in believing that the term "revenues" meant revenues after industry standard and customary deductions already agreed to between the parties in the Development Agreement if Defendants' position is correct that no such deductions are allowed. Plaintiff will suffer material harm if the agreement is enforced in that if no deductions are to be allowed that greatly changes the amounts that have to be paid to Defendants and kills any hope of Plaintiff ever recovering its ▮▮▮▮▮▮▮▮▮ investment into developing the Game. In essence, under Defendants interpretation of "revenues" Defendants would reap all of the benefits from sales and Plaintiff would have to bear all of the costs, which is wholly inequitable and inconsistent with the original agreement and the standard in the gaming industry.

WHEREFORE, Plaintiff respectfully asks the Court to set aside the Settlement Terms Sheet or, alternatively, provide for other relief to compensate for Defendants' failure to preserve and deliver all of the game IP. Additionally, pursuant ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the Court should also order Defendants to pay Plaintiff's reasonable attorney's fees in the amount of $8,575 incurred in having to bring this Motion.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Matthew Scott and M. Danton Richardson, the other

1  papers and records on file in this action, and such further oral and any and all other evidence as
2  may come before the Court upon the hearing of this matter.

DATED: June 23, 2021              **LAW OFFICES OF M. DANTON RICHARDSON**

                                  By:   /s/ M. Danton Richardson
                                        M Danton Richardson

                                  ***Attorney for Plaintiff,***
                                  Little Orbit LLC

## I.  INTRODUCTION

This Motion concerns Defendant Descendent Studios Inc. ("Descendent") and Eric Peterson's ("Peterson") (collectively "Defendants") recent admission that the game assets which are the subject of the Settlement Terms Sheet have been destroyed and Defendants cannot deliver the bargained for assets which are the subject of the Settlement Terms Sheet.  The inability of the Defendants to deliver a complete and up to date copy of the original game assets, including all original artwork and project history, constitutes a total failure of consideration and the Settlement Terms Sheet should be set aside by this Court.

The case was originally brought as a result of Descendent's breach of its contractual obligations under a Development Agreement and a Terms Sheet addendum by failing to timely deliver a completed video Game (which was planned to be released under the "Descent" brand) (the "Game") meeting the specifications and requirements of the parties' agreements and also failing to complete the assignment of the "Descent" trademark license (and other claims as more fully addressed in the First Amended Complaint in this action).  The parties ultimately reached a settlement agreement (the "Settlement Terms Sheet") with the help of Magistrate John D. Early which provided that Plaintiff would take over and complete the development of the Game under a license from Descendent covering "all game IP" and would make certain payments in that regard.

The agreed license covered "all game IP."  However, Defendants have admitted that all game IP has been destroyed with the exception of a snapshot version of the game code as it existed as of some unknown time.  Plaintiff has no way of knowing if that code is the latest version of the game code.  More importantly, that code is but one part of the game IP covered under the Settlement Terms Sheet.  What is missing is all of the original artwork and the project history among other assets.

The first payment Plaintiff is required to make under the Settlement Terms Sheet is due on ▓▓▓▓▓▓▓▓▓▓  By this Motion Plaintiff seeks a determination from the Court that Plaintiff is relieved from any obligation to make any payments called for under the Terms Sheet due to Defendants failure to deliver to Plaintiff "all game IP" as provided in the Settlement Terms Sheet.

## II. ATTEMPTS TO RESOLVE THE PARTIES DISPUTES

Since the hearing on Defendants' Motion to Enforce Plaintiff has been attempting to resolve the disagreements regarding the Settlement Terms Sheet, including multiple requests that the parties schedule a time with Judge Early (who offered to assist the parties resolve their differences during the hearing on the Motion to Enforce) but to no avail as Defendants have refused. Plaintiff has also requested that the deadline for the first payment required by the Terms Sheet be held in suspense while the parties attempt to work out their differences either directly or with the assistance of Judge Early.  Again, Defendants have steadfastly refused all the while insisting that Plaintiff must make the required first payment under the Settlement Terms Sheet notwithstanding Defendants' failure to deliver "all game IP".   Richardson Decl., ¶¶ 3 and 5, and Exhibit A.

As a result, Plaintiff has been forced to bring this Motion given the payment required under the Settlement Terms Sheet which Plaintiff should not have to pay given the failure of consideration for that payment obligation.

## III. FACTUAL BACKGROUND

Little Orbit is a worldwide video game developer and publisher formed in January 2010 with a focus on AAA license-based entertainment products.  Little Orbit has developed and published games on all relevant gaming platforms and continues to pioneer electronic entertainment for consumers of all ages.  Over 20 games have been published by Little Orbit including "Kung Fu Panda: Showdown of Legendary Legends", "Adventure Time: Finn and Jake Investigations", "Young Justice", "Falling Skies the Game", "APB Reloaded," and "Fallen Earth.".

In 1995 Interplay Productions Corp., a major video game developer and publisher, released a game known as Descent, a first-person shooter ("FPS") game.  Descent popularized a subgenre of FPS games using the "six degrees of freedom" which is the movement of a rigid body (the game player's avatar) in three-dimensional space in six different ways: forward/back, up/down, left/right, yaw, pitch, roll. Descent was also the first FPS to entirely feature 3D

graphics. Descent was a commercial success, selling over 1.1 million units, together with its sequel, Descent II, as of 1998.

In or around November of 2014, several former game developers working on a game known as Star Citizen, including Defendant Eric Peterson ("Peterson"), announced that they were forming Defendant Descendent Studios ("Descendent") to work on a game similar to Descent in play style, with the working title "Ships That Fight Underground." Peterson is/was the CEO of Descendent and the key player in this saga for Descendent.

Descendent raised funds for the development of this new version of the "Descent" video game through a Kickstarter campaign which raised over $600,000 based on the popularity of the Descent game among fans. Descendent also entered into a license agreement with Interplay to use the "Descent" name for the new game.

By August of 2017, however, Descendent was out of funds. Peterson/Descendent approached Little Orbit about providing the financial support necessary to complete the development of the game in return for which Little Orbit would publish the re-named video game, "Descent: Underground." The parties' discussions led to Little Orbit and Descendent entering into a "Development Agreement" effective September 1, 2017 (the "Agreement"). See Exhibit "1".

To induce Little Orbit to enter into the Development Agreement Peterson/Descendent made numerous representations regarding Descendant's alleged staff and capabilities to complete the game which Little Orbit later discovered to be false given the inexperience of those working on the game and the constant problems and shortcomings in the work by Descendent including missing various milestones and multiple planned release dates.

In fact, even though Little Orbit paid Descendent all sums required under the Agreement ▮▮▮▮▮▮▮ Descendent failed to meet any of the delivery dates required by the parties' Agreement. In an effort to salvage the project and allow Descendent more time to complete the Game, the parties entered into a "Terms Sheet" addendum which modified and supplemented the Agreement. See Exhibit "2". Pursuant to the Terms Sheet, Little Orbit committed to ▮▮▮

7

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ going forward in the amount of ▮▮▮▮▮▮▮ "in return for services and deliverables by Descendent in connection with the Game…so long as such services and deliverables are provided in a timely manner and provided Descendent does not materially breach its obligations in providing such services and deliverables." Descendent still continued to fail to meet the deliverable requirements and specifications thereby breaching the Terms Sheet.

The Game was originally planned for a May 2018 retail release date. As a result of Descendent's slow and problematic progress, the release date for the Game was pushed back to a November 2018 release date. Further delays by Descendent required the release date for the Game to be pushed back a final time to a February 2019, which likewise was not met. Descendent ultimately failed to timely deliver the completed Game required under the specifications of the Agreement or otherwise comply with the Terms Sheet.

Little Orbit made a couple of payments under the Terms Sheet addendum but on January 30, 2019, Little Orbit sent 50% of the payroll amount because Descendent had missed two deadlines in a row. Instead of trying to fix the problems in its deliverables and earn the entirety of the payment, on February 1st, Descendent instead sent a "Notice of Breach" for non-payment. On February 4th, Little Orbit paid the remaining 50% to cure the alleged breach and then filed its own Notice of Breach" for Descendent's failure to meet its delivery requirements. Descendent failed to cure within the allowed 30 day period thereby relieving Little Orbit of any obligation to make any further payments to Descendent.

Descendent also breached the Terms Sheet by failing to provide the assignment of the Trademark License Agreement by and between Interplay Entertainment Corp. and Descendent. Plaintiff has since been informed that Interplay has cancelled that license agreement so the game cannot be released using the "Descent" trademark absent a new agreement being entered into with Interplay.

As a result of the above Plaintiff filed this lawsuit.

The parties participated in a settlement conference before Magistrate John D. Early on November 17, 2021, which resulted in the parties agreeing to certain "deal points" set forth in a "Settlement Terms Sheet." It was anticipated the parties would enter into a long form agreement which would flesh out the substance of the agreement but the parties were never able to agree on a long form agreement due to various disputes as to the "fine print" for the parties' agreement. One area of disagreement was the meaning of "revenues" which Defendants have since contended means "gross revenues" and does not allow for any deductions before determining the royalties payable to Defendants. This totally ignores the custom in the industry and the fact that the Development Agreement in dispute between the parties provides for various deductions before determining royalties and, in Plaintiff's view, that prior course of dealing was the starting point in arriving at the agreed royalties payable under the Settlement Terms Sheet.

Defendants brought a Motion to Enforce the Settlement Terms Sheet which was referred to Judge Early and was denied. Since that time, even though Plaintiffs have repeatedly asked Defendants to deliver to Plaintiff all of the game IP assets, on June 15, 2021, Defendants finally produced only a snapshot copy of the game code as it existed on some unknown date. Plaintiff pressed the matter and demanded delivery of "the full source code and the entire project history." In response, Mr. Peterson advised that the "project history no longer exists" and that all Plaintiff needs is the code (even claiming there was no obligation to deliver anything to Plaintiff). Declaration of Matthew Scott ("Scott Decl."), Exhibit D.

The code delivered is inadequate for a number of reasons (addressed below) but most importantly, the terms of the Settlement Terms Sheet provides for a license of "all game IP" – not just the code.

## IV. ARGUMENT

### A. Defendants' Cannot Deliver the Bargained for Game IP Assets Which Constitutes a Failure of Consideration by Defendants Under the Settlement Terms Sheet

"A settlement agreement is a contract, and the legal principles which apply to contracts

generally apply to settlement contracts. [Citation.]" *Sully-Miller Contracting Co. v. Gledson/Cashman Constr., Inc.*, 103 Cal.App.4th 30, 35-36, 126 Cal.Rptr.2d 400, 403 (2002) (quoting *Weddington Productions, Inc. v. Flick*, 60 Cal.App.4th 793, 810-11, 71 Cal.Rptr.2d 265(1998).)

California law allows a party to seek rescission for failure of consideration. See Cal. Civ. Code § 1689(b)(2), (3), (4). The right to rescind exists even if "there has been a partial performance by the party against whom the right is exercised." *Coleman v. Mora*, 263 Cal.App.2d 137, 150, 69 Cal.Rptr. 166 (1968) (citations omitted). However, "a failure of consideration must be 'material,' or go to the 'essence' of the contract before rescission is appropriate." *Wyler v. Feuer*, 85 Cal.App.3d 392, 403-04, 149 Cal.Rptr. 626 (1978) (citations omitted). "Whether a breach constitutes a failure of consideration sufficient to be deemed material and thus to warrant rescission of a contract is a question of fact . . . ." *Fed. Deposit Ins. Corp. v. Air Fla. Sys., Inc.*, 822 F.2d 833, 840 (9th Cir. 1987) (citations omitted).

> "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, sec. 1636.) "A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." (Civ. Code, sec. 1647.) "If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." (Civ. Code, sec. 1649.) "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party; . . ." (Civ. Code, sec. 1654.)

*Detwiler v. Clune*, 77 Cal.App. 562, 567-68 (1926).

Moreover,
> "[i]f the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause" a party may rescind a contract. (Civ. Code, § 1689, subd. (b)(4).) A contract may also be rescinded if the consent of the rescinding party was given by mistake. (Civ. Code, § 1689, subd. (b)(1).) The party attempting to void the contract as a result of

mistake must also show that it would suffer material harm if the agreement were enforced, though that need not be a pecuniary loss. *Guthrie v. Times-Mirror Co*. (1975) 51 Cal.App.3d 879, 886 [124 Cal. Rptr. 577].)

*Habitat Tr. for Wildlife, Inc. v. City of Rancho Cucamonga*, 175 Cal.App.4th 1306, 1332-33 (2009).

As noted in the "Settlement Terms Sheet" in paragraph ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Such a license would require, at the very least, that the Defendants be able to provide Plaintiff ▬▬▬▬▬▬ in order to effectuate the license. The game IP includes not only the game code as continued to be developed by Defendants for several months after the termination of the parties' prior Agreement, but all original artwork and the project history among other audio, media and software assets. In fact, the Development Agreement entered into between the parties addressed the game assets in Paragraph 3.8 as follows:

> During Development of the Game, Developer shall ensure that it maintains a duplicate or "back up" copy of all software, work in progress and related materials developed or acquired by Developer, such copy to be maintained on a regular up to date basis and in separate, secure and off-site storage according to Publisher's reasonable requirements as reasonably directed by Publisher from time to time. Developer will be responsible for reconstructing the latest version of the Game without any additional cost to Publisher with each Milestone. After delivering the final version, Developer must maintain a copy of the final assets and media masters for a period of 4 years, and must provide a replacement to Publisher upon request.

Scott Decl., Exhibit A.

Defendants failed to disclose that they did not maintain the game assets, including all original artwork and project history, in the required third party repository either before or during the parties' negotiations at the Settlement Conference. That is a material omission as the absence of such original materials greatly limits the ability of anyone to pick up the work and complete the development of the Game. Even if the Game can be completed using the code as it

existed on a certain unspecified date, that task will be that much harder, and exponentially more expensive, without access to all of the underlying original artwork, audio files, project history and other materials.

The original game assets are crucial to the completion of the game for numerous reasons:

- The project was essentially never finished. Little Orbit terminated the Development Agreement because Descendent missed required milestones for 9 months in a row. During the final months, Descendent made a chaotic effort to complete the game that included changing major systems and altering every screen in the game. In order to pick up and complete the development of the game Little Orbit will need access to the project history to review the changes to each screen so Little Orbit can make sure the intended logic was implemented properly. If it is not working, Little Orbit would be able to use the project history to determine the correct logic.
- No documentation was provided by Defendants when Little Orbit terminated. Therefore, Little Orbit has no knowledge capture or written guidance on what remained to be finished or what was removed to save on time. Without the project history, this will all need to be done by manually reviewing each section of code and guessing about its completeness. This will be costly and faulty. Little Orbit is sure to miss areas of the game or functionality that were modified without its knowledge.
- Back in 2014, the Game was originally developed for older PCs. In 2017, Little Orbit funded the addition of platforms like Xbox One and Playstation 4. However, it is now 2021 and the game will not ship until at least 2022. The foregoing platforms have all been replaced and the game must work on new platforms such as Xbox X and Playstation 5 which have higher resolution standards. Part of Little Orbit's work in completing the game will be to go back to the Source Art Assets and re-export new Game Project assets that meet the new platform requirements. Without access to this original art, all of the original production work is lost.

- Source Art Assets go through lots of revisions. Again, the project history makes it obvious which asset was exported to the game at a specific time. There is no way to know if the snapshot of code provided by Defendant has the latest art assets, and without the Source Art Asset repository we have nothing to compare to.
- Without the project history, we have no way of knowing what original source art was either not yet imported into the game code or, which for whatever reason, may have been removed from the source code. Those assets are now lost.
- While the artwork already contained in the code can be used to complete the game, those assets are of poor quality when trying to meet the higher resolutions provided for in the newer platforms such as Xbox X and Playstation 5.

Scott Decl., ¶ 22.

Defendants' have confirmed they cannot deliver those IP assets and therefore there is a failure of consideration regarding the Settlement Terms Sheet as Defendants are unable to deliver the Game assets that were promised to Plaintiff pursuant to that agreement. Plaintiff would suffer material harm if forced to comply with the terms of the Settlement Terms Sheet, because it would be required to attempt to recreate the game artwork and game history which could not be assured to be accurate reconstructions of those assets.

### B. The Court Should Vacate the Settlement Based on the Bad Faith and Deception of Defendants and their Purposeful Concealment of Pertinent Facts Affecting Critical Elements and Terms of the Settlement Agreement

Fed. R. Civ. P. 60(b) provides a mechanism by which a court may relieve a party from a final judgment or order. Among the grounds for relief are: (1) "mistake, inadvertence, surprise, or excusable neglect;" (2) fraud, misrepresentation, or misconduct of an opposing party; and (3) "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(3), (6).

> In some circumstances, a party's repudiation of a settlement agreement that terminated a litigation constitutes an extraordinary circumstance that justifies vacating the court's prior dismissal order under Rule 60(b)(6). *Keeling v. Sheet Metal Workers Intern. Ass'n, Local Union*, 162 937 F.2d 408, 410 (9th Cir. 1991). Such "repudiation" must result in "complete frustration" of

>the settlement agreement, or demonstrate "bad faith noncompliance." *Id.*, at 410-11. Rule 60(b)(6) relief is warranted only in exceptional circumstances, such as where "the breach of the Settlement Agreement has deprived plaintiffs of all benefits of the agreement or where there are no other remedies for the breach." *Tweed v. Schuetzle*, 2009 U.S. Dist. LEXIS 32946, 2009 WL 874609, at *5 n.2 (D. N.D. 2009).

*Paxton v. Schillings*, No. 1:12-cv-00136-REB, 2016 U.S. Dist. LEXIS 200249, at *4 (D. Idaho Mar. 23, 2016).

This court, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, has the authority to vacate the court-approved Settlement Agreement and set aside the dismissal of this action based that followed. See *Triangle Capital Corp. v. I.M.C. Mgmt. Corp.*, 127 F.R.D. 444, 446 (D. Mass. 1989) (citing *U.S. v. Baus*, 834 F.2d 1114, 1123 (1st Cir. 1987); Wright & Miller, Federal Practice and Procedure: Civil § 2860, at 187-88 (1973).)

Such relief is appropriate and necessary here as there has been a total failure of consideration as Defendants have admitted they cannot deliver "all game IP" as required under the Settlement Terms Sheet. Worse, during the parties settlement negotiations Defendants purposefully concealed the fact that the game assets had not been preserved as required by the Development Agreement. Such bad faith by Defendants eviscerates any consent by Plaintiff to the Settlement Terms Sheet. In fact, Plaintiff submits that it is fraudulent for a party to license assets it knows have been destroyed. Put simply, that party is promising to deliver assets it knows it cannot deliver. That is a textbook case of fraud and justifies setting aside the Settlement Terms Sheet and the dismissal of this action entered by the Court based on that fraudulent settlement.

Furthermore, Plaintiff's consent to the Settlement Terms Sheet was given under the mistaken belief (if Defendants' position is correct) that the term "revenues" meant revenues after industry standard and customary deductions already agreed to between the parties in the Development Agreement. Plaintiff will suffer material harm if the contract is enforced in that if no deductions are to be allowed that greatly changes the amounts that have to be paid to Defendants and kills any hope of Plaintiff ever recovering its investment into the Game. In

14

essence, under Defendants' interpretation of "revenues" Defendants would reap all of the benefits from sales and Plaintiff would have to bear all of the costs, which is wholly inequitable and inconsistent with the original agreement and the standard in the gaming industry. Scott Decl., ¶¶ 9 and 11-13. See also Fed. R. Civ. P. 60(b)(1); *Habitat Tr. for Wildlife, Inc.*, *supra*.

### C. Defendants' Should be Ordered to Pay for Plaintiff's Attorneys' Fees in Connection with this Motion

The Settlement Terms Sheet provides that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiff has incurred $8,575 in fees in researching and preparing this Motion and supporting documents. Plaintiff requests that Plaintiff be declared the substantially prevailing party as to this Motion and awarded the foregoing attorneys' fees against Defendants.

### V. CONCLUSION

Defendants have failed to deliver the original game assets necessary to effectuate the license provided for in the Settlement Terms Sheet. This constitutes a blatant failure of consideration. Additionally, Defendants' offering and agreeing to license assets it knew had been destroyed and which it could not deliver was fraudulent. As a result, the Court should set aside the Settlement Terms Sheet and the dismissal entered based thereon and also award Plaintiff its attorneys' fees in having to bring this Motion.

DATED: June 23, 2021          **LAW OFFICES OF M. DANTON RICHARDSON**

By:   /s/ M. Danton Richardson
            M Danton Richardson

*Attorney for Plaintiff,*
Little Orbit LLC

15

DEFENDANTS' MOTION TO SET ASIDE
SETTLEMENT TERMS SHEET
CIVIL ACTION NO. 8:20-CV-00089-DOC-JDE

# CERTIFICATE OF SERVICE

I hereby certify that on this 23rd Day of June, 2021, the foregoing **PLAINTIFF LITTLE ORBIT LLC'S NOTICE OF MOTION AND MOTION TO SET ASIDE THE BINDING SETTLEMENT TERMS SHEET DUE TO DEFENDANTS' FRAUD AND FAILURE TO DELIVER THE ASSETS COVERED BY THE TERMS SHEET OR FOR ALTERNATIVE RELIEF AND FOR AN AWARD OF ATTORNEYS' FEES** was filed with the Court's CM/ECF system and was served on the following counsel of record via email:

Michael C. Whitticar; VSB No. 32968
NOVA IP Law, PLLC
7420 Heritage Village Plaza, Suite 101
Gainesville, VA 20155
Tel: 571-386-2980
Fax: 855-295-0740
Email: mikew@novaiplaw.com
Counsel for Defendants

NADA I. SHAMONKI (SBN 205359)
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
Telephone: (310) 586-3200
Facsimile: (310) 586-3202
Email: nshamonki@mintz.com
Counsel for Defendants

/s/ M. Danton Richardson
M. Danton Richardson