1   NADA I. SHAMONKI (SBN 205359)
    nshamonki@mintz.com
2   **MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.**
    2029 Century Park East, Suite 3100
3   Los Angeles, CA 90067
    Telephone:  (310) 586-3200
4   Facsimile:   (310) 586-3202

5   MICHAEL C. WHITTICAR (*admitted pro hac vice*)
    mikew@novaiplaw.com
6   **NOVA IP LAW, PLLC**
    7420 Heritage Village Plaza, Suite 101
7   Gainesville, VA 20155
    Telephone:  (571) 386-2980
8   Facsimile:  (855) 295-0740

9   Attorneys for Defendant/Counterclaimant
    DESCENDENT STUDIOS INC. and
10  Defendant ERIC PETERSON

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13  LITTLE ORBIT LLC, a California          Case No. 8:20-cv-00089-DOC-JDE
14  Limited Liability Company,
                                            **DEFENDANTS' OPPOSITION TO**
15                          Plaintiff,      **PLAINTIFF'S MOTION TO SET**
                                            **ASIDE BINDING SETTLEMENT**
16      vs.                                 **TERMS SHEET**

17  DESCENDENT STUDIOS INC., a              **[REDACTED VERSION OF**
                                            **DOCUMENT FILED UNDER SEAL**
18  Texas corporation, and ERIC            **PURSUANT TO ORDER OF THE**
    PETERSON, an individual,                **COURT DATED APRIL 20, 2021]**
19
20                          Defendants.
    DESCENDENT STUDIOS INC., a              Date:      July 26, 2021
21  Texas corporation,                      Time:      8:30 a.m.
                                            Courtroom: 9D
22                          Counterclaimant,

23      vs.

24  LITTLE ORBIT LLC, a California          Judge: Hon. David O. Carter
25  Limited Liability Company,
                                            Complaint Filed:    1/16/2020
26                          Counterdefendant.

27

28

1

## **TABLE OF CONTENTS**

2

**PAGE**

3
I. FACTS ......................................................................................................... 1

4
   A.  The Best Defense is a Good Offense..................................................... 1

5

6
   B.  Little Orbit Recycles Previously Rejected Excuses ..................................... 2

7
   C.  The Allegedly Missing Deliverables ............................................................ 2

8
   D.  Little Orbit Failed to Meet and Confer........................................................ 6

9
II. ARGUMENT................................................................................................. 7

10
   A.  There Was No Implied Duty to Deliver All Prior Versions of
11
       Everything to Do With The Game. ............................................................. 7

12
   B.  Defendants Have Not Refused to Renegotiate (They Just Want to Get
13
       Paid)............................................................................................................ 8

14
   C.  Any Alleged Unilateral Mistake by Little Orbit is No Defense.................... 8

15
   D.  Defendants Committed No Fraud................................................................ 11

16
III.  CONCLUSION ............................................................................................. 12

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*U.S. v. Armour & Co.*,
    402 U.S. 673 (1971)....................................................................................8

*U.S. v. ITT Continental Baking Co.*,
    420 U.S. 223 (1975)....................................................................................8

**California Cases**

*Barhan v. Barhan*,
    33. Cal. 2nd 416, 427 (Cal. Sup. Ct. 1949) .............................................. 7

*City of Orange v. San Diego County Employees Retirement Association*,
    103 Cal. App. 4th 45 (2nd Dist. Ct. App. 2002)........................................ 7

*Donovan v. RRL Corp.*,
    26 Cal. 4th 261 (Cal. Sup. Ct. 2001) ...................................................... 10

*Villa v. Cole*,
    4 Cal App. 4th 1326 (1st Dist. Ct. App. 1992)......................................... 7

**Other Authorities**

Local Rule 7-3 ................................................................................................ 6

Restatement (Second) of Contracts § 153 ................................................... 10

1  Defendants and counterclaim Plaintiffs Eric Peterson and Descendent Studios,

2  by counsel, hereby respectfully submit this opposition to Plaintiff Little Orbit's

3  Motion to Set Aside Binding Settlement Terms Sheet ("BSTS").

4  **I. <u>FACTS</u>**

5  **A. <u>The Best Defense is a Good Offense</u>**

6  On the date that this first settlement payment was (again) due pursuant to this

7  Court's order dated May 24, 2021, which the district judge accepted on June 17,

8  2021, Little Orbit once again decided to jump the line and file a motion to try to

9  cover up for its inability and unwillingness to make payments due to the

10  Defendants.

11  In the original underlying litigation, Defendants first notified Little Orbit of its

12  default in failing to make payments when due.  (Ex. A to the Declaration of Eric

13  Peterson ("Peterson Decl.") in support of this opposition).  Little Orbit then wrote

14  Descendent and admitted that the payment delay was due to its own inability to pay.

15  (Ex. B to Peterson Decl.).  Obviously a proponent of the old adage that the best

16  defense is a good offense, Little Orbit nevertheless retaliated by wrongfully

17  terminating the Development Agreement and the Original Terms Sheet Addendum

18  (the "Original Contracts") based on purported delays by the Defendant, which were

19  ultimately the fault and responsibility of Little Orbit in failing to ever complete a

20  revised and updated API or "application program interface" that Little Orbit has

21  requested and taken responsibility for completing.

22  Similarly here, Little Orbit has lacked the willingness and ability to make the

23  first ▮▮▮ settlement payment for the seven months since the BSTS was signed

24  and agreed upon in November of 2020.  After Little Orbit repeatedly denied,

25  misconstrued and failed to abide by the actual terms of the BSTS, the Court noted

26  that Little Orbit was trying to change and avoid the clear and unambiguous meaning

27  of "revenue" under the BSTS.

28

I think revenue---the meaning of it is clear. It's not ambiguous….. It appears to me that the ----there's been an effort made by Plaintiff to create an ambiguity where there was none….

(Ex. C to Peterson Decl., pp. 10-11).

**B. <u>Little Orbit Recycles Previously Rejected Excuses</u>**

Most of the points raised in Little Orbit's motion to set aside simply repeat arguments that the Court previously rejected in finding there to be a valid and binding settlement agreement.  The following Little Orbit arguments were rejected by the court after having been raised in Little Orbit's opposition (Docket No. 68) to Defendants' motion to enforce the settlement agreement:

- Descendent cannot deliver the (supposedly) bargained for assets. (Oppo. at p. 8).
- Little Orbit committed a mistake as to the meaning of "revenues." (Oppo. at p. 3).

**C. <u>The Allegedly Missing Deliverables</u>**

In finding that the BSTS was a binding and enforceable agreement, the Court considered and rejected virtually the same argument Little Orbit makes here regarding the alleged failure by Defendants to provide deliverables allegedly due under the BSTS.  In fact, on page 8 of Little Orbit's opposition to Defendants' motion to enforce the BSTS, Little Orbit made essentially the same breach and failure of consideration arguments about alleged failure to deliver other versions of the game code.  (Docket No. 68 at p. 10).

The only new wrinkle here to Little Orbit's previously rejected arguments about failure to provide additional game software deliverables is that Little Orbit is now complaining about not having access to the historical game artwork source files and executable versions of every prior version of the software game code.  However, this is still the same general claim and contention that the Court already rejected.  And if Little Orbit actually has been working on finishing the game since November (as it should have been) then it obviously knew long ago that it did not

1    have these items.

2         In response, Defendants point out that their deliverables under the BSTS were

3    expressly stated and limited therein.  They included and were limited to "pre-order

4    data, Kickstarter data, and early backer data."  (BSTS § 10).  All of these have been

5    provided to Little Orbit.

6         Simply put, nothing in the BSTS obligated the Defendants to provide game

7    software, revised game software, complete functional copies of each prior version of

8    the game software, or separate files for the artwork.  Nevertheless, the Defendants

9    have largely delivered that.

10        The reason additional delivery obligations were not put into the BSTS --- at

11   least from the perspective of the Defendants—was that the Plaintiff Little Orbit had

12   been given copies of the game software before it wrongfully terminated the

13   Development Agreement and the original Terms Sheet Addendum (the "Original

14   Contracts").  Little Orbit did not ask for copies of the game software during the

15   negotiations of the BSTS, and the Defendants assumed that that was because Little

16   Orbit was satisfied with the version of the game code that it had.  The updated game

17   code, the separate artwork, and the complete writable versions of all prior game

18   code versions were neither sought nor demanded in the BSTS nor during its

19   negotiation.

20        It is crucial to note that in the BSTS and the negotiation thereof, Little Orbit

21   did not request and the Defendants did not promise to deliver or provide any of the

22   purported missing items about which Little Orbit is now complaining, now that it

23   has failed (again) to make the first settlement payment on time.

24        The allegedly "missing" game software versions which the Defendants never

25   promised or agreed to provide, nevertheless have been provided by the Defendants

26   to the extent they would be useful to Little Orbit and the Defendants have the ability

27   to provide them.  These include the game software code at the time Little Orbit

28   wrongfully terminated the Original Contracts after Little Orbit had been notified

1    that it was in default for not paying Descendent, an updated version of the game

2    code including a small amount of debugging and the old Descendent API that Little

3    Orbit did not like and had broken its promise to re-do, the artwork source file and

4    read-only copies of all prior versions of the game code.

5         The Defendants have provided Little Orbit with a library showing historical

6    images and versions of the game software.  It just does not contain a fully

7    functioning, executable version of all prior versions and iterations of the game

8    software.  That is not necessary to complete development of the game.

9         There is a reason that the Defendants have been unable to provide a complete

10   library of executable copy of all prior versions of the game code.  When Little Orbit

11   wrongfully stopped making payments to Descendant under the Original Contracts,

12   the Defendants had to lay off their staff and had no money to keep paying for the

13   servers on which the allegedly missing items were stored.  The old artwork source

14   files that Little Orbit recently demanded have been recovered recently from an old

15   remote, third-party computer and provided to Little Orbit.  However, any time

16   Descendent provides the supposedly "missing" materials, Little Orbit comes up with

17   a different allegedly "crucial" missing item as an excuse for not making the

18   settlement payment.  Descendent now has delivered virtually all of the items, and

19   Little Orbit still has not made the settlement payment.

20        All of these allegedly missing items were items to which Little Orbit had

21   access and which it could have downloaded when or before it stopped making

22   payments in January 2019.  Little Orbit had access to all of these items, and the

23   Defendants were operating under the belief that Little Orbit had downloaded them

24   before Little Orbit wrongfully stopped making payments and terminated the

25   Original Contracts.  Any competent developer would have done so and known to do

26   so.  Note that Little Orbit never actually states that it did not download and save and

27   does not actually have these items.  It just tries to use Descendent's alleged inability

28

1   to provide them to try to cancel the BSTS and avoid making the settlement

2   payments.

3        Little Orbit's argument that the Defendants are in breach because the Original

4   Contracts required Descendent to keep and maintain certain items is clearly

5   specious.  First, Little Orbit committed the first material breach of the Original

6   Contracts when it wrongfully stopped making payments to Descendent and was

7   notified by Descendent of Little Orbit's default and breach.  Second, as the result of

8   Little Orbit's wrongful breach and termination, the final game was not finished or

9   delivered, so the four-year storage requirement does not apply by its express terms.

10  Third, the BSTS (Section 19) provided for mutual general releases and clearly

11  novated, released and displaced the parties' obligations under the Original

12  Contracts, so it is specious and without merit for Little Orbit to now assert that the

13  Defendants somehow are still responsible for their pre-settlement contractual

14  obligations (which do not apply by their express terms).

15       The Defendants have never told Little Orbit that the prior versions of the game

16  software or artwork or other deliverables were destroyed.  They have never

17  represented that they had a complete, executable, writable history of all prior

18  historical versions of the game software.

19       To the contrary, in an email dated April 13, 2019, Matt Scott admitted to

20  Defendants that he had merely "assumed" that the prior versions were still available

21  on the repository or "github repo."  (Ex. D to Peterson Decl.).

22       Little Orbit does not need more than the game code to finish the game.  The

23  Defendants provided the source code and all the data in the game.  Little Orbit can

24  take it from there and finish the game.  It can access everything in the game.

25       Little Orbit is incorrect in saying that "Without the project history, we have no

26  way of knowing what original source art was either not yet imported into the game

27  code or, which for whatever reason, may have been removed from the source code.

28  Those assets are now lost."

1   This is untrue because the project history is available in "read only" format in

2   what the Defendants provided.  Little Orbit admitted that: "While the artwork

3   already contained in the code can be used to complete the game, those assets are of

4   poor quality when trying to meet the higher resolutions provided for in newer

5   platforms such as Xbox X and PlayStation 5."

6   What Little Orbit admits is true.  The artwork contained in the code is enough

7   to finish the PC version of the game, which is all Little Orbit is obligated to do in

8   the first year.  Additionally, Little Orbit was correctly informed that the artwork can

9   be extracted from the game code.  In any event, the Defendants have now recovered

10   from a third party and provided the original artwork source files from a remote

11   computer.  So this point is moot, and there is no material breach by the Defendants.

12   **D.  Little Orbit Failed to Meet and Confer**

13   Little Orbit's motion to set aside the BSTS should be denied for the additional

14   reason that Little Orbit failed to meet and confer about setting aside the BSTS at

15   least seven days before filing the motion -or at all- as required by Local Rule 7-3.

16   On or about June 22 or 23, 2021, Mr. Richardson for Little Orbit called

17   Mr. Whitticar for Defendants and requested that the June 23 payment deadline be

18   suspended while Little Orbit tries to renegotiate the BSTS.  Mr. Whitticar responded

19   that Defendants are happy to engage in negotiations but that he doubted that they

20   would further extend or suspend the payment deadline.  Little Orbit through

21   Mr. Richardson then threatened that Little Orbit would file a motion to set aside the

22   BSTS if Defendants would not suspend or extend the payment deadline.

23   Little Orbit and Mr. Richardson did not state or seek to discuss any purported

24   basis for setting aside the BSTS and did not ask whether Defendants would agree to

25   that.  Therefore, Little Orbit failed to confer in good faith before filing its motion to

26   set aside, which is merely a transparent attempt to avoid the payment obligations

27   which it obviously cannot fulfill.

28

1     Little Orbit therefore also failed to certify in its notice of Motion that it

2    conferred in good faith about the Motion to Set Aside as required by Local Rule 7-3.

3    Little Orbit's motion to set aside is therefore premature and unnecessary and is due

4    to be stricken and dismissed.

5    **II. ARGUMENT**

6    **A. There Was No Implied Duty to Deliver All Prior Versions of Everything to**

7       **Do With The Game.**

8     Little Orbit fails to cite any authority whatsoever for its key argument that new

9    delivery of all past and prior versions the game code was an "implicit" requirement

10   of the BSTS.  In this case, the Defendants believed that Little Orbit still had the

11   copy of the game code that was delivered to it, before Little Orbit wrongfully

12   skipped paying on and terminated the Original Contract.  Any competent developer

13   would have known to download these items before skipping payments and before

14   terminating and breaching the Original Contracts.  Little Orbit has never actually

15   stated that it had not done so.

16    In settlement of litigation or in disputes over intellectual property, licenses are

17   often provided without any requirement that the owner or licensor deliver the

18   technology or intellectual property to the licensed party.  (¶ 5 to Michael C.

19   Whitticar Declaration ("Whitticar Decl.") in support of this opposition).

20    In addition, settlement agreements, as agreements that are carefully negotiated

21   between adversaries with different goals and who are often hostile to each other, are

22   to be strictly construed but are still favored in law and public policy. *See City of*

23   *Orange v. San Diego County Employees Retirement Association*, 103 Cal. App. 4th

24   45, 55 (2nd Dist. Ct. App. 2002) (settlement agreements are highly favored as

25   protective of peace and good will in the community, as well as reducing the expense

26   and persistence of litigation); *Villa v. Cole*, 4 Cal App. 4th 1326, 1338 (1st Dist. Ct.

27   App. 1992) (settlements of litigation are favored and should be enforced). *See also*

28   *Barhan v. Barhan*, 33. Cal. 2nd 416, 427 (Cal. Sup. Ct. 1949) (marriage settlements

1  are to be strictly construed); *U.S. v. ITT Continental Baking Co.*, 420 U.S. 223, 238
2  (1975) (consent decrees must be strictly construed); *U.S. v. Armour & Co.*, 402 U.S.
3  673, 621-82 (1971) (same, due to careful negotiation and parties' cross purposes).

4       Settlement agreements are favored in law, and parties like Little Orbit should
5  not be permitted to evade and repudiate settlement agreements just because they
6  have buyer's remorse and dislike the outcomes they have negotiated in arms-length
7  negotiations with the assistance of counsel and the Court.

8  **B.  Defendants Have Not Refused to Renegotiate (They Just Want to Get Paid).**

9       For whatever relevance it has, the Defendants have not refused to continue
10 negotiations over Little Orbit's many attempts to repudiate the BSTS.  In fact, the
11 Defendants have proposed at least two different sets of modifications that would
12 permit Little Orbit to modify and attempt to renegotiate the BSTS.  (¶ 6 to Whitticar
13 Decl.).

14      What the Defendants have insisted on is that Little Orbit make the settlement
15 payment that was due six months ago, and then again on June 23, 2021, but was not
16 made.  (¶ 7 to Whitticar Decl.).  However, Little Orbit obviously lacks the funds to
17 make the first settlement payment seven month after the BSTS was signed.  Thus,
18 on the very same day that the first payment was due for the second time, Little Orbit
19 filed its questionable motion to set aside the BSTS mostly repeating the same
20 contentions that it argued in Little Orbit's opposition to the Defendants' motion to
21 enforce the BSTS (and which the Court has rejected).  Defendants have also
22 requested and demanded that Little Orbit actually bother to engage in reasonable,
23 responsive, good faith private negotiations before imposing on the Court to re-settle
24 a dispute that already has been settled.  (¶ 7 to Whitticar Decl.).

25 **C.  Any Alleged Unilateral Mistake by Little Orbit is No Defense.**

26      Little Orbit's request to set over the BSTS on the grounds of unilateral mistake
27 by Little Orbit was-like is breach allegations - previously made and rejected by the
28 Court.  Little Orbit made this mistake claim in its Opposition to Defendants' motion

1   to enforce the BSTS on page 3.  (Docket No. 68).  The court rejected these

2   arguments in finding that there was a binding and enforceable settlement agreement.

3   Little Orbit did not object to or file any exceptions to the report and

4   recommendation before it was confirmed by the district court by order dated June

5   17th, 2021. Thus, Little Orbit's unilateral mistake claim was previously made and

6   rejected, and Little Orbit is not permitted a second bite at the apple.

7        It would be exceedingly inappropriate to set aside a settlement agreement

8   based on a <u>unilateral</u> mistake when the settlement was reached through lengthy

9   negotiations including parties represented by counsel, with the assistance of the

10  Court.  Settlement agreements are favored in law and policy and should not be set

11  aside even in the unlikely event of an actual unilateral mistake. *Supra* pp. 7-8.

12       The Court had it correct when Judge Early noted at the prior motion to enforce

13  hearing that there was a clear, agreed to and unambiguous meaning of "revenues,"

14  but that Little Orbit just became unhappy with the settlement and is trying to "create

15  an ambiguity where there was none."  (Ex. C to Peterson Decl.: May 24, 2021

16  hearing transcript at pp. 10-11).

17       To the extent Little Orbit contends that its unilateral mistake as to the meaning

18  of "revenues" makes the BSTS unconscionable, nothing could be further from the

19  truth.  Section 13 of the BSTS applies the same "revenues" term to Descendent.  So,

20  if Little Orbit cannot finish the game applying the plain language dictionary

21  definition of "revenues," it can make the settlement payments and then turn

22  completion of the game over to Descendent pursuant to Section 13 of the BSTS.

23        Here, Little Orbit's secret, unexpressed intent that "revenues" allegedly meant

24  "Net Sales" or "Profits" was never expressed to Defendants, who had no idea of that

25  purported intent and understanding for weeks after the BSTS was signed.  In

26  addition, given the vast differences between the BSTS and the Development

27  Agreement, there is no reason that Defendants should have known about Little

28

1   Orbit's erroneous and incorrect interpretation.[1]  Thus there is no basis for setting

2   aside the BSTS or any part of it based on any alleged unilateral mistake of fact by

3   Little Orbit.

4        In addition, there is no reason that paying Defendants a percentage of revenues

5   or gross income would be unconscionable, as the BSTS was carefully negotiated by

6   skilled counsel at arm's length, Defendants own the relevant intellectual property to

7   the game, and royalties are typically based on revenues and not on margins or

8   profits, which are subjective and easy to manipulate.  Furthermore, Defendants'

9   evidence would have clearly shown that Little Orbit's many payment defaults and

10  unnecessary changes and failures to perform were responsible for the cost overruns

11  and delays based on which Little Orbit wrongfully terminated Original Contracts in

12  February of 2019.  (*See* Exs. A and B to Peterson Decl.).  Therefore, there is no

13  basis for setting aside the BSTS based on a mistake.  *See Donovan v. RRL Corp.*, 26

14  Cal. 4th 261, 280-282 (Cal. Sup. Ct. 2001); Restatement (Second) of Contracts §

15  153.

16       Little Orbit's claim that it construed "revenue" not by its common dictionary

17  definition but rather to be the same thing as "Net Sales" under the Development

18  Agreement is untrue, illogical and objectively baseless.  First, the Development

19  Agreement never defined or used the terms revenues or profits, but rather the very

20  distinct and different term "Net Sales."

21       Second, Little Orbit breached and then terminated the Development

22  Agreement and the subsequent terms sheet addendum long ago in February of 2019,

23  which is what caused this litigation.

24       Third, the BSTS provided for "Mutual General Releases" (p. 2, ¶ 19), which

25  completely cancelled the Original Contracts.

26

27

---

28  [1] To be sure, the parties did not discuss the difference between "revenues" and "net revenues" because "net revenues" is a nonsense term that would mean margins or profits.

1  Fourth, the parties' relationship under the Binding Settlement Terms Sheet is

2  not based on and looks nothing like their relationship under the Development

3  Agreement.  To the contrary, under the BSTS, Descendent assumed absolutely no

4  responsibility for performing any development work or services after transferring

5  (only) certain customer information to Little Orbit.

6  The BSTS was a completely different animal from the terminated

7  Development Agreement.  The BSTS simply and objectively was not a continuation

8  of the Development Agreement in whole or in part.  There is no objectively logical

9  or accurate reason that Little Orbit could have reasonably expected the meanings of

10  words not used or defined in the Development Agreement (revenues) when used in

11  the BSTS to have the same meaning as the very different Development Agreement's

12  very different term (Net Sales).  In addition, the parties simply did not base the

13  payment splits in the BSTS on the Development Agreement.  Rather, they were the

14  product of back-and-forth dickering and negotiations.

15  In short, as judged by the plain language dictionary definition of the words

16  they chose and used, as properly judged by their objective manifestations of assent

17  and meaning, and properly disregarding post-hoc subjective statements of Little

18  Orbit's inaccurate, baseless, purported secret meaning of "Revenues," the parties

19  agreed that Defendants would receive royalties and payments based on a percentage

20  of revenues, meaning gross income from sales and licensing.  There was no

21  unilateral mistake and any such mistake would not justify setting aside the BSTS.

22  **D.  Defendants Committed No Fraud.**

23  Regarding fraud, Little Orbit can point to no representation by the Defendants

24  that they still had or had stored the artwork source or executable copies of every

25  prior version of the game software before the BSTS was signed.  Little Orbit

26  admitted that it merely <u>assumed</u> that those assets had been stored, apparently based

27  on the inapplicable provisions of the Original Contracts which Little Orbit had first

28  materially breached and wrongfully terminated.  (Ex. D to Peterson Decl.).

1    In addition, the alleged materiality of Little Orbit's mere assumption is

2    disproven by the fact that neither delivery nor the state of the reportedly missing

3    historical deliverables were ever discussed during the settlement conference nor

4    included in the BSTS (although Little Orbit asserts that the current version of the

5    source code was discussed).  Mere assumptions made by Little Orbit based on its

6    strained and incorrect reading of the Original Contracts which Little Orbit had

7    breached, terminated, released in the BSTS and then novated through the BSTS

8    certainly are not sufficient to permit Little Orbit to further evade its payment

9    obligations nor to set aside or rescind the settlement agreement.

10   **III.  CONCLUSION**

11   For the foregoing reasons, Little Orbit's motion to set aside the BSTS is

12   procedurally deficient, substantively without merit and due to be denied.

13   Dated:  July 2, 2021                     Respectfully submitted,

14

15                                            By: _____
                                                        Counsel
16

17   Nada I. Shamonki (SBN 205359)
     MINTZ LEVIN COHN FERRIS GLOVSKY
18   AND POPEO P.C.
     2029 Century Park East, Suite 3100
19   Los Angeles, CA 90067
     Telephone: (310) 586-3200
20   Facsimile: (310) 586-3202
     Email: nshamonki@mintz.com
21

22   Michael C. Whitticar (*admitted pro hac vice*)
23   NOVA IP Law, PLLC
     7420 Heritage Village Plaza, Suite 101
24   Gainesville, VA 20155
     Tel:  571-386-2980
25   Fax:  855-295-0740
     E-mail: mikew@novaiplaw.com
26
     *Counsel for Defendants*
27

28

**CERTIFICATE OF SERVICE**

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and am not a party to the above-entitled action.

On July 2, 2021, I filed a copy of the following document(s):

**[REDACTED] DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO SET ASIDE BINDING SETTLEMENT TERMS SHEET**

By electronically filing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- **Leo Edward Lundberg , Jr**

  leo.law.55@gmail.com

- **Michael Danton Richardson**

  mdantonrichardson@yahoo.com


Executed on July 2, 2021, at Los Angeles, California.  I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

/s/ Diane Hashimoto_____
Diane Hashimoto