1  M. DANTON RICHARDSON (State Bar No. 141709)
   mdantonrichardson@yahoo.com
2  LEO E. LUNDBERG, JR. (State Bar No. 125951)
   leo.law.55@gmail.com
3  LAW OFFICE OF M. DANTON RICHARDSON
   131 N. El Molino Ave., Suite 310
4  Pasadena, CA 91101
   ***Attorneys for Plaintiff,***
5
6  LITTLE ORBIT LLC

7                    **UNITED STATES DISTRICT COURT**
                     **CENTRAL DISTRICT OF CALIFORNIA**
8

9  LITTLE ORBIT LLC, a California Limited        ) Case No.: 8:20-cv-00089-DOC-JDE
   Liability Company,                            )
10                                               ) Judge:      Hon. David O. Carter
                                                 )
11              Plaintiff,                        )
                                                 ) **DECLARATION OF MATTHEW**
12      vs.                                       ) **SCOTT IN SUPPORT OF REPLY IN**
                                                 ) **SUPPORT OF PLAINTIFF LITTLE**
13                                               ) **ORBIT LLC'S MOTION TO SET ASIDE**
   DESCENDENT STUDIOS INC., a Texas              ) **THE BINDING SETTLEMENT TERMS**
14 corporation, and ERIC PETERSON, an            ) **SHEET DUE TO DEFENDANTS'**
   individual,                                   ) **FRAUD AND FAILURE TO DELIVER**
15                                               ) **THE ASSETS COVERED BY THE**
16              Defendants.                       ) **TERMS SHEET OR FOR**
                                                 ) **ALTERNATIVE RELIEF AND FOR AN**
17 _____) **AWARD OF ATTORNEYS' FEES**
                                                 )
18 DESCENDENT STUDIOS INC., a Texas              )
19 corporation,                                  ) **[FILED UNDER SEAL PURSUANT**
                                                 ) **TO ORDER OF THE COURT DATED**
20              Counterclaimant,                  ) **APRIL 20, 2021]**
                                                 )
21      vs.                                       ) **Date:   May 24, 2021**
22                                               ) **Time:   8:30 p.m.**
   LITTLE ORBIT LLC, a California Limited        ) **Ctrm:   9D**
23 Liability Company,                            )
                                                 )
24              Counter Defendant.                ) **Complaint filed: January 16, 2020**
25 _____)

26

27

28
                                        1

## DECLARATION OF MATTHEW SCOTT

I, Matthew Scott, declare:

1.     I am a managing member of Plaintiff, Little Orbit LLC ("Plaintiff" or "Little Orbit") in the above-captioned matter.  The facts stated herein are within my own personal knowledge unless otherwise stated.  If called to testify, I would and could testify competently to the facts stated in this declaration.

2.     I make this declaration in support of reply in support of Plaintiff's Motion to Set Aside the Binding Settlement Terms Sheet Due to Defendants' Fraud and Failure to Deliver the Assets Covered by the Terms Sheet, or for Alternative Relief and for an Award of Attorneys' Fees.

3.     On June 29, 2021, Defendant Eric Peterson sent links to what appears to be the full Game Project repository with code history and the full Source Art Assets. Little Orbit has been requesting these assets continuously since we signed the Binding Settlement Terms Sheet. Little Orbit has downloaded these files, and we are satisfied that the entire Game IP has been properly delivered. We are now prepared to move forward with development of the Game.

4.     Little Orbit has repeatedly requested these assets since the BSTS was signed. It is regrettable that Defendant chose to lie about their existence and not to supply these assets until after we were forced to file our Motion to Set Aside. We made the motion in good faith based on Defendant and Defendant counsel's clear and unambiguous statements that such assets were destroyed which would have irreparably damaged our ability to finish development.

5.     Unlike Defendant, I am not interested in relitigating the court case like they did in their response. That is a waste of time, and personally I think it is disrespectful to the Court's time having already agreed to the BSTS.

6.     In fact, I am deeply frustrated that more than six months after agreeing to settle this case, both parties are still fighting in Court. From my perspective Little Orbit has acted in

good faith. Despite my belief that Defendant committed material breaches during development of the Game, Little Orbit negotiated in good faith to reach the November BSTS. Even under our definitions and interpretation, we offered Defendant terms that were better than the Original Development Agreement from October 2017. The royalty amounts based on "Net Sales" were nearly identical, but I agreed to Defendant's request for an additional ███████ licensing payment. Little Orbit agreed to take on all costs to finish development, market, and publish, which were estimated to require at least an additional investment of ███████ by Little Orbit to complete and release the game to the public. I expected Defendant's counsel to produce the long form for the BSTS and that we would be near completion of the game by now.

7.    Instead, Defendants have engaged in a campaign of efforts to distort the already very generous BSTS into abusive terms with the sole purpose of pressuring Little Orbit to discard the hard fought BSTS in favor of a completely new deal. To understand this effort, there is some context which is necessary.

8.    Little Orbit terminated Defendant's Original Development Agreement in part because Defendant failed to assign the Interplay license. This breach continues to impact the project today. Because it was never assigned, Interplay had the ability to terminate the license effectively hamstringing Little Orbit and blocking our ability to release the Game using the planned "Descent" name.

9.    During the period leading up to the BSTS, I spoke with Interplay about securing a new license for use of the Descent name. Herve Caen, Interplay's CEO, indicated he would agree to the original terms that were in place prior to the termination of Defendant's development agreement.

10.    I knew there was risk that a new license deal might not get completed. Accordingly, the BSTS does not require a license with Interplay and allows for the game to be released under a different name.  I knew that not being able to use the "Descent" name would significantly hurt the game's performance and our ability to recoup. If we couldn't get

the Interplay license, then it would make more financial sense not to increase Little Orbit's investment by making the licensing fee payment. I did not want to make the BSTS contingent on the Interplay license, but I also did not want to have to go back to court in the event of any non-payment of the license fee. Instead, I negotiated the simple remedy if Little Orbit decided not to pay all or part of the ▓▓▓▓▓ licensing fee. In lieu of the fee, we would increase Defendant's royalty from ▓▓▓▓▓ for a portion of the initial profits (*i.e.*, 50% of the first $700,000 in revenues). This insured the BSTS would be a lasting framework that allowed the Game to be released but also cover any eventuality for both parties to proceed.

11.     Directly after the BSTS was signed, I re-approached Herve Caen about proceeding with the new license. Unfortunately, he changed his mind and significantly altered the Descent license terms. He required ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Given Interplay's previously poor payment history, and the knowledge that we would be investing more money in the project to get it to market, there was no way I could agree to his terms without jeopardizing Little Orbit's ability to recoup our investment.

12.     The only option was for Little Orbit to proceed under the terms in the BSTS but ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ As part of this decision-making process, I gave several updates to Defendants. During those discussions, Mr. Peterson made it clear that he felt Little Orbit should take Interplay's terms because he preferred ▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓ regardless of the extra loss in revenue and potential problems collecting money from Interplay.

13.     I think it is critical for the Court to understand Defendant and Little Orbit are in two very different financial positions with respect their investment into Descent. As such, they appear to have two different benchmarks for a successful resolution to the Game.

14.     Without re-litigating our claims, Defendant has made a business out of raising money to <u>make the Game</u>, but not <u>finishing it and releasing it to consumers</u>. In 2015, they raised money from Kickstarter to support their studio. When they ran out of money in 2016,

they raised money from Early Access to continue supporting their studio. When they ran out of money in 2017, they secured funding from Little Orbit that allowed them to continue operating their studio. At present Defendant has put in an insignificant amount of their own money and much if not all their efforts have been compensated with funding and equity in the Game. Soon after Little Orbit was forced to terminate the Development Agreement due to Descendent's continued failure to meet the contracts requirements, Descendent laid off all of its employees and ceased all operations.  As a result, Defendants currently have no debt, no employees, and no overhead. Any monetary gain from the Game will go the Mr. Peterson as pure profit in the business.

15.     Conversely, Little Orbit's entire business model generates revenue by finishing and releasing games to its customers. We have shipped more than 22 different titles in the last 11 years. We have made extensive investments into the Game totaling over $2.5M with a significant portion of that coming from short term software loans. Little Orbit has been forced to not only pay high interest charges but also repay those loans under incredible financial stress since they were secured starting in 2017. The first ███████loan was for a 12-month term from December 2017 to December 2018 with the agreement that the Game would be released in May 2018. I collateralized that loan with███████████████████ ███ All those assets had to be liquidated in 2020 and 2021 to repay that loan. Little Orbit continues to carry significant debt left from the project because it never was able to release the Game to players. Unlike Descendent, Little Orbit has a full staff of employees and office overhead. There is no easy payday here for us. Little Orbit will have to spend an additional ██████████ to finish development, market, and publish the Game. Any money we make on the game will go towards repaying the funds we borrowed that continue to accrue interest every day that goes by. In other words, we need the Game to be developed and released properly to ensure that our investment will be repaid. We cannot afford to let Defendants or any agent of the Defendants take endless time to finish the Game, to ship a poor quality game, or to bring on other parties like Interplay that might not pay or who would further dilute Little

Orbit's share of profits.

16.     Little Orbit is ready to proceed with finishing the Game, but there is still significant disagreement between the parties on two major parts of the BSTS. Under any objective analysis, Defendant already has deal terms that exceed the Original Development Agreement. Yet they are fighting for a definition of "revenues" that doubles or triples the value of their terms. At the same time, in a clear show of bad faith, they have altered their original misinterpretation of the payment terms from the long form memorialization of the BSTS by Defendants' counsel into a new more abusive interpretation that would require more and more upfront payments by Little Orbit.

17.     The best analogy for the BSTS is as a set of terms for two partners investing in a restaurant. While there is the initial period where the royalty for Little Orbit is higher, the ultimate target between the two partners is ███████ Regardless of any capital and effort to build the site for the restaurant, design the menu, finish the logo, or train the staff, if both parties simply open the restaurant with no additional effort or funding, then the restaurant will fail. Restaurants are businesses that must be run in an ongoing fashion to generate sales. There are recurring costs required to market, pay payroll, buy food, and pay for the space. The restaurant is an investment between the two parties, and it has a Profit and Loss. The gross income <u>returned by an investment</u> is not the same thing as the gross revenue for the restaurant. The gross income returned by an investment is the split of profits after the restaurant covers all its expenses. In fact, all businesses, restaurants and game publishers included, operate on a profit margin. The profit margin is the percentage of profit leftover after all expenses have been deducted from money the business has made. In many cases, businesses have profit margins ranging from 10-15%. A healthy profit margin is 20-30%. An extremely good profit margin would be 50%.

18.     Defendants' definition of "revenues" as providing for ███████ without any deductions for costs would require ████████████ received by the restaurant to go to them right off the top. Then Little Orbit would have to run the restaurant using their staff

and pay for all the expenses out of ▇▇▇▇▇▇ In order for Little Orbit not to lose money, that means the restaurant would need to have a profit margin of higher than ▇▇▇ That is simply not feasible, which is why restaurant investors (nor game publishers) never agree to this way of splitting revenues. Game publishing splits are no different. The ongoing nature of a Free-to-play game means that there every month, Little Orbit will be spending money to develop new features, generate new sellable virtual goods, market for new players, and pay for the environment that hosts the Game.  Those are all costs that are standard in the industry and are deducted before any royalties are paid.

19.     If the Court were to determine that Defendants' definition of "revenues" is correct, the Court will be effectively making Little Orbit the indentured servant of Defendants and rewarding Defendants' abusive legal tactics to re-trade on the already generous terms of the BSTS.

20.     With all of this in mind, I took a commonsense approach to negotiating the BSTS. I intended for split of income from our investment to match the terms of the Original Development Agreement. To say that the BSTS was negotiated in a vacuum as an entirely different agreement is an argument made by Defendants in bad faith. They know their interpretation is not feasible. They are using it as leverage to secure new and better terms for themselves.

21.     One might argue that Defendants' definition of revenue is so abusive that Little Orbit should simply default ▇▇▇▇▇▇▇▇▇▇ and turn over the Game to Defendant for them to finish and release. At first glance, this would appear to turn the tables, and Defendants would be at the same severe disadvantage they are pushing onto Little Orbit. However, that view would be incorrect. <u>Defendants have no money, income or ability to fund the completion of the Game.</u> This means Defendants would need to secure a publishing deal with another publisher like Interplay, which previously failed to twist a new licensing deal to their advantage. Under those new terms, Interplay would fund, market, and publish just like Little Orbit would have. Interplay would also get to deduct all expenses because that is the

7

only reasonable way to compete the development of the Game. But Interplay would also demand a significant portion of the remaining profits in consideration for their involvement. The amount to be received by Defendants is virtually unchanged from Little Orbit's definition of revenues, except Defendants would secure ongoing funding for their studio. The amount received by Little Orbit will be dramatically lower, all but insuring we never earn back the money we invested. On top of that Descendent Studios has a proven track record for not completing the Game, and there is no clause in the BSTS that enforces any time limit for Defendants to finish and release the Game. That means Little Orbit could be stuck paying interest on our loans indefinitely without any revenue from the Game to pay them off. Lastly, and most importantly, Interplay has a track record for not paying their developers. In fact, the original developer who created Descent for Interplay back in the 1990's had to sue to collect on back owed payments. So even if Defendants finish the game and Interplay publishes, Little Orbit still has a chance of not receiving any revenue.  But that is clearly what Defendants have been pushing for as they think it is a better deal for them (it is not) but would be a much worse deal for Little Orbit.

22.    A deal with Interplay is Defendants' clear goal. There is direct proof of his desire to discard the hard fought BSTS and engage in the above scenario already. A declaration from Plaintiff's counsel was submitted as Exhibit A in our Motion to Set Aside. This exhibit contains an email exchange where Defendant's counsel asserts that they have won their abusive definition of revenue. In that email exchange, Defendant's counsel attempts to leverage pressure on Little Orbit to let "Eric and Interplay finish the game as DESCENT".


I declare the foregoing to be true and correct under penalty of perjury under the laws of the United States.  Executed on July 12, 2021, in Orange, California.

_____
Matthew Scott, Declarant

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th Day of July 2021, the foregoing **DECLARATION OF MATTHEW SCOTT IN SUPPORT REPLY IN SUPPORT OF PLAINTIFF LITTLE ORBIT LLC'S MOTION TO SET ASIDE THE BINDING SETTLEMENT TERMS SHEET DUE TO DEFENDANTS' FRAUD AND FAILURE TO DELIVER THE ASSETS COVERED BY THE TERMS SHEET OR FOR ALTERNATIVE RELIEF AND FOR AN AWARD OF ATTORNEYS' FEES** was filed with the Court's CM/ECF system and was served on the following counsel of record via email:

Michael C. Whitticar; VSB No. 32968
NOVA IP Law, PLLC
7420 Heritage Village Plaza, Suite 101
Gainesville, VA 20155
Tel:   571-386-2980
Fax:  855-295-0740
Email: mikew@novaiplaw.com
Counsel for Defendants

NADA I. SHAMONKI (SBN 205359)
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
Telephone: (310) 586-3200
Facsimile: (310) 586-3202
Email: nshamonki@mintz.com
Counsel for Defendants


/s/ M. Danton Richardson
M. Danton Richardson

9