NADA I. SHAMONKI (SBN 205359)
nshamonki@mintz.com
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.**
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
Telephone:  (310) 586-3200
Facsimile:   (310) 586-3202

MICHAEL C. WHITTICAR (*admitted pro hac vice*)
mikew@novaiplaw.com
**NOVA IP LAW, PLLC**
7420 Heritage Village Plaza, Suite 101
Gainesville, VA 20155
Telephone:  (571) 386-2980
Facsimile:  (855) 295-0740

Attorneys for Defendant/Counterclaimant
DESCENDENT STUDIOS INC. and
Defendant ERIC PETERSON

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LITTLE ORBIT LLC, a California Limited Liability Company,<br><br>                         Plaintiff,<br><br>    vs.<br><br>DESCENDENT STUDIOS INC., a Texas corporation, and ERIC PETERSON, an individual,<br><br>                         Defendants. | Case No. 8:20-cv-00089-DOC-JDE<br><br>**DECLARATION OF ERIC PETERSON IN SUPPORT OF DEFENDANTS' SECOND MOTION TO ENFORCE THE BINDING SETTLEMENT TERMS SHEET, FOR A MONEY JUDGMENT, AND FOR AN AWARD OF ATTORNEYS' FEES**<br><br>**[REDACTED VERSION OF DOCUMENT FILED UNDER SEAL PURSUANT TO ORDER OF THE COURT DATED APRIL 20, 2021]** |
| DESCENDENT STUDIOS INC., a Texas corporation,<br><br>                         Counterclaimant,<br><br>    vs.<br><br>LITTLE ORBIT LLC, a California Limited Liability Company,<br><br>                         Counterdefendant. | Date:        August 23, 2021<br>Time:        8:30 a.m.<br>Courtroom: 9D<br><br><br>Judge: Hon. David O. Carter<br><br>Complaint Filed:    1/16/2020 |

I, Eric Peterson, declare as follows:

1.      I am over 18 years of age, of sound mind, and competent to testify to the facts stated herein. I have personal knowledge of the facts stated herein. I am the President of Descendent Studios, Inc. ("Descendent").  I submit this declaration in support of Defendants' Second Motion to Enforce the Binding Settlement Terms Sheet, for a Money Judgment, and for an Award of Attorneys' Fees.

2.      The facts stated in Defendants' Second Motion to Enforce the Binding Settlement Terms Sheet, for a Money Judgment, and for an Award of Attorneys' Fees are true and correct.

3.      Little Orbit admits that it now has all of the game assets purportedly necessary to complete the game, but it still has failed to make the first settlement payment.

4.      The Binding Settlement Terms Sheet ("BSTS") was signed on November 17, 2020, almost eight months ago.  It required three payments from Little Orbit ("LO") to Descendent, two of which were due within 120 days of signing the original BSTS (or the first written memorialization).   Neither of these first two payments has been made, and Little Orbit has plainly stated that it has no intention of making any of the agreed upon monetary settlement payments. Exhibit A is a genuine and authentic copy of an email message from Matthew Scott of Little Orbit to Eric Peterson (me) on or about March 23, 2021.

5.      Because Little Orbit has failed for the past seven months to make any of the agreed upon settlement payments, and again skipped the June 23, 2021 payment date as extended by the Court, Descendent is gravely concerned that Little Orbit lacks the funds to pay Descendent, is stalling for time, and lacks the intent and ability to make the settlement payments.[1]  This is especially concerning given the projected $1

---

[1] Like the most recent Matthew Scott Declaration, the email attached as Exhibit A also strongly indicates that Little Orbit plans to skip all three agreed-upon settlement payments and to try to covertly impose its own misguided and erroneous definition of "Revenues," as being profits or gross income minus whatever expenses Little Orbit chooses to incur.

1  million or more in costs and expenses that will be needed for Little Orbit to adequately

2  complete and market the game.  The Defendants' concern is heightened by the fact

3  that an Experian Credit Report shows that Little Orbit has a "high risk" business credit

4  score, and keeps less than ████████ in the bank.  A genuine and authentic copy of

5  that Experian credit report obtained by the Defendants is attached hereto as Exhibit

6  B.

7       6.    In the negotiations leading up to the BSTS, the early ████ revenue split

8  of the first ████████ in revenues was never stated nor agreed to be Descendent's sole

9  or exclusive remedy for any one or more payments (plural) that are not made at all,

10 and especially not for all three payments not being made at all.  It is clear that Section

11 4 was intended to address only the *timing* of payments, and not to establish an

12 exclusive remedy for Little Orbit failing to make one or more payments ever or at all.

13      7.    If the game sells well, then the early ████ split of ████████ provides

14 Descendent with no additional funds at all.  Rather, it only improves cash flow and

15 helps Descendent get *part* of the back-end ████ revenue split paid *sooner*.  This

16 potential "early" ████ split is exactly the same as Descendent's ████ back-end split

17 on ████████ from the later revenue tranches.

18      8.    Descendent did not intend to and would not have bargained away a minor

19 advance in cash flow as the only and exclusive remedy for Little Orbit skipping,

20 keeping and pocketing ████████ in settlement payments.  This is especially true

21 given that Little Orbit filed its meritless claims in the original litigation after Little

22 Orbit: (A) ran out of money, (B) shorted its payment due to Descendent, (C)

23 apologized for shorting the payment, (D) admitted that Little Orbit had run out of

24 money, and then (E) sued the Defendants shortly after they formally notified Little

25 Orbit of its payment default.  Attached as Exhibit C is a genuine and authentic copy

26 of the notice and demand letter first sent by the Defendants to Little Orbit on or about

27 February 1, 2019.  Attached as Exhibit D is a genuine and authentic copy of a Skype

28 message from Matthew Scott of Little Orbit to me in which he apologized for shorting

that payment and explained that Little Orbit had been having financial problems.

9.     Matt Scott's reply declaration states that Little Orbit purportedly bargained for the right to skip all three settlement payments in exchange for only the early ███ splits on the first $███ in revenues.  That was never in fact discussed nor agreed upon.  The early ███ splits on the first $███ in revenues was never discussed or deemed to be Defendants' only or exclusive remedy for payment breaches as to all three payments.  Rather, Section 4 of the BSTS makes this a remedy only for any single "payment" not being made "on time." It does not address, and was never discussed as applying to, the situation where all three payments are not made *at all*.  While the parties discussed that Little Orbit may have trouble making the first settlement payment on time, we never discussed or agreed that Little Orbit could skip all three payments and that the early ███ revenue split would be the Defendants' only remedy.

10.     Because Little Orbit has missed the first three payment due dates, and given its prior history of defaulting on debts to Descendent, the Defendants have demanded adequate assurance of due performance of Little Orbit's financial and development obligations under the BSTS.

11.     Specifically, the Defendants are concerned that Little Orbit lacks and has always lacked the funds necessary to make the settlement payments and complete development of the game.  That concern is based in part on an Experian Credit report, which puts Little Orbit into the "high risk" category and further indicates that Little Orbit keeps less than $███ in its bank account, which is far less than the $1 million or more necessary to complete the game and pay the Defendants.

12.     The Defendants have demanded, but have not received, the Little Orbit bank statements and its financial accounting software and reports from November 1, 2020 through the present, plus disclosures as to the status of Little Orbit's fund raising efforts and development efforts.  A genuine and authentic copy of that correspondence is attached as Exhibit E.  Little Orbit has not provided the requested financial data,

1    development status disclosure, and financing status disclosure as adequate assurance.

2        13.   The BSTS was carefully negotiated by skilled counsel at arm's length.

3 The Defendants own the relevant intellectual property to the game.  Royalties are

4 typically based on revenues and not on margins or profits, which are subjective and

5 easy to manipulate.

6        14.   Defendants' evidence would have clearly shown that Little Orbit's

7 payment defaults and many unnecessary changes and failures to perform[2] were

8 responsible for the cost overruns and delays based on which Little Orbit wrongfully

9 terminated the Original Contracts (the Development Agreement and original terms

10 sheet addendum) in February of 2019. (*See* Exs C & D).  Furthermore, the very same

11 definition of "revenues" will apply to Descendent if - as now seems likely eight

12 months into Little Orbit's one-year development deadline - the development rights

13 revert back to Descendent in four months pursuant to Section 13 of the BSTS.

14        15.   Little Orbit breached and then terminated the Original Contracts in

15 February of 2019, which is what caused this litigation, just after Descendent notified

16 Little Orbit of its payment default because Little Orbit admittedly ran out of money

17 and could not pay Descendent.

18        16.   The parties' relationship under the BSTS is not based on and looks

19 nothing like their relationship under the Development Agreement.  To the contrary,

20 under the BSTS, Descendent assumed absolutely no responsibility for performing any

21 development work or services after transferring (only) certain expressly designated,

22 discrete, limited items of customer information to Little Orbit.

23        17.   The parties simply did not base the payment splits in the BSTS on the

24 Development Agreement. Rather, they were the product of back-and-forth dickering

25

26 _____

27 [2] Like failing to complete the application program interface "API" that Little Orbit
demanded and promised to complete itself but then failed to complete. Because
Little Orbit never completed the API, breached its payment obligations to

28 Descendent, and wrongfully terminated the Original Contracts, Descendent never
had any obligation to convey the trademark license because the game was never
completed or released.

1    and negotiations.

2         18.    There is no standard definition or set of deductions from royalty income

3    or net sales in game software development contracts.  The contract and deal that the

4    parties were negotiating in November of 2020 was not a development agreement but

5    a settlement agreement – one which left the Defendants with no obligation to deliver

6    anything nor to provide any further services (other than delivering a few discrete,

7    expressly designated items of customer data). (BSTS § 10).

8         19.    Little Orbit has trotted out one set of purportedly "crucial" deliverables

9    after another as its excuse for not wanting to pay and for not having made any

10   development efforts.  Little Orbit did not complain about any of these allegedly

11   missing purported deliverables for about four months after it was supposed to have

12   started development in November of 2020.  None of these works was either material

13   to the development process nor due to be delivered by Descendent, and Little Orbit

14   has never actually stated that it does not have them.

15        20.    The only asset that the Defendants have not previously completely

16   delivered in response to Little Orbit's improper and illegitimate demands is the

17   writable, executable copy of the game software archive history. This was lost (except

18   for the read-only files) when Little Orbit stopped paying on the Original Contracts

19   because it was out of money, terminated the Original Contracts and then completely

20   stopped paying.  As a result, Little Orbit rendered the Defendants unable to pay the

21   approximately $2,000 per month server maintenance fees to maintain the writable,

22   executable version of the game code history.

23        21.    The Defendants did make sure to keep and maintain the game code,

24   because we knew that the game code is all that is necessary to finish the game.  The

25   game code necessary to complete the development process had been delivered and

26   downloaded to Little Orbit in November of 2018.  In fact, Matt Scott of Little Orbit

27   downloaded the entire game software on or about November 20, 2018, with assistance

28   from Descendent, shortly before Little Orbit breached and then terminated the

Original Contracts, after being called out for shorting a due payment. The Skype messages, a genuine and authentic copy of which are attached as Exhibit G, were generated in connection with Descendent helping Little Orbit to download and acquire the November 2018 game code. The game code automatically updated daily through about February 15, 2019, the time of Little Orbit's wrongful termination. Little Orbit had and needed access to the daily updated game code to work on the different API that Little Orbit insisted on, promised to complete and then failed to complete.

22.   Little Orbit did not provide any "requirements" or directions for off-site storage as required by Section 3.8 of the terminated Development Agreement. The "final version" of the game was never delivered due to Little Orbit's breach and wrongful termination of the Original Contracts, so the storage requirements and Section 3.8 are inapplicable by their express terms.

23.   Little Orbit appears to admit in Paragraph 3 of Matt Scott's reply declaration that Little Orbit has made virtually no effort to develop the game in the past eight months since the BSTS was signed. This is truly inexcusable given that: (1) the game software is the only asset that was actually needed to complete development of the game; and (2) Defendants have now established through documentary and testimonial evidence (Ex. G), that Little Orbit has had actual possession of the game software since at least November of 2018.

24.   Descendent provided the development history and art source repository on June 29, 2021. Had Little Orbit properly met and conferred and waited the required seven days until June 28, 2021 to file its motion, its motion would have been unnecessary because it would have been informed before filing its motion that the game history and art source files had been located and were in the process of being recovered.

25.   Exhibit F to this declaration is a genuine and authentic copy of relevant portions of the transcript of the May 24, 2021 hearing in this case.

1  I declare under penalty of perjury that the above is true and correct.

2  Executed This 21st Day of July, 2021, in Austin, Texas.

3

4  _____
   Eric Peterson

5

6

# EXHIBIT A

# [REDACTED PORTIONS OF EXHIBIT FILED UNDER SEAL PURSUANT TO ORDER OF THE COURT DATED APRIL 20, 2021]

Case 8:20-cv-00089-DOC-JDE  Document 96-2  Filed 07/21/21  Page 10 of 27  Page ID
3/26/2021                                    Fwd: FW: Spoke to Herve some more - novalpoffice@gmail.com - Gmail
#:1341

**From:** Matt Scott <Matt.Scott@littleorbit.com>
**Sent:** Tuesday, March 23, 2021 7:05 PM
**To:** eric.peterson@feverpitchstudios.com
**Subject:** RE: Spoke to Herve some more



If your lawyer wants to push us on an answer – you have it. No extension needed. We are 100% onboard with the terms we
agreed to in November according to our definitions. I'm not going to make any payments. We'll split the first $        He
can raise a stink or re-approach the judge, but that's not going to do anything. Those terms are crystal clear. We don't need
anyone's permission to move forward and release the game. There's a legally binding settlement that everyone agreed to that
says we can take the game to market.

Whitticar can sue me in a year over the revenue definition to get a couple more bucks.

Thanks,
Matt

# EXHIBIT B

# [ENTIRE EXHIBIT FILED UNDER SEAL PURSUANT TO ORDER OF THE COURT DATED APRIL 20, 2021]

# EXHIBIT C



DEFENDANT'S
EXHIBIT
2



Pete Meeke
Membe

512 660 5967 dire
pmeeker@rcmhlaw.co

February 1, 2019

Matt Scott
Little Orbit, LLC
29863 Santa Margarita Parkway, Suite 110
Rancho Santa Margarita, California 92688

Re:     Descendent Studios, Inc.; Descent Video Game Development Agreement

Dear Mr. Scott:

We represent Descendent Studios, Inc.  Yesterday, January 31, Descendant Studios received a $10,000 payment from Little Orbit.  As you know, that payment was $20,000 less than the $30,000 due to Descendant Studios for its work on the Descent video game.  This failure constitutes a material breach of the Development Agreement.

As a demonstration of good faith, Descendent Studios is continuing to uphold its contractual obligations under the expectation that Little Orbit will cure its breach.  Little Orbit may cure this breach by depositing the sum of Fifty-Thousand ($50,000) U.S. Dollars to the customary bank account of Descendent Studios on or before 5:00pm CST on Friday, February 15, 2019, and by maintaining timely delivery of contractually-obligated payments thereafter.  Attached is our client's January 31, 2019 invoice.

Failure to cure this material breach will delay the release of the Game, resulting in significant financial damages to both parties.  Descendent Studios reserves its right to assert any and all rights and remedies to which it may be entitled under the Development Agreement and the law, including but not limited to termination of the agreement.

Descendent Studios would prefer to continue the Development Agreement and work toward completion and publishing of the Game, but only if Little Orbit honors its commitments and obligations under the Development Agreement.

Sincerely yours,

Pete Meeker
Enclosure

Reed, Claymon, Meeker & Hargett, PLLC

# EXHIBIT D

7/16/2021                                    MattScottAdmitsBreach.JPG


DEFENDANT'S
EXHIBIT
D

 Matthew, 4:00 PM

I'm having him organize everything, and then I'm going to have
Kyle sit with my UX person to map everything into the UI
templates

BTW - its worth saying: I am sorry about the unexpected non-
pay. That's on me. I had another payment that was supposed to
show up. We're still sorting it out.



4:04 PM

Thanks, I appreciate that - trust me when I say I want this to
work out - and we all benefit, there is no other way in which this
even remotely succeeds.....it all is like fractional if we get pissy.....

# EXHIBIT E

# [REDACTED PORTIONS OF EXHIBIT FILED UNDER SEAL PURSUANT TO ORDER OF THE COURT DATED APRIL 20, 2021]



                                                    Michael Whitticar <novaiplaw@gmail.com>

---

## Demand For Adequate Assurance of Due Performance

---

**Michael Whitticar** <mikew@novaiplaw.com>                                    Fri, Jul 9, 2021 at 1:41 PM
To: Mr Danton Richardson <mdantonrichardson@yahoo.com>
Cc: Leo Lundberg <leo.law.55@gmail.com>, "Shamonki, Nada" <nishamonki@mintz.com>, "Hashimoto, Diane" <DEHashimoto@mintz.com>
Bcc: Eric Peterson <eric.peterson@feverpitchstudios.com>, Paralegal <novaipoffice@gmail.com>

Dear Danton:

Because Little Orbit has missed the first three payment due dates, and given its history of defaulting on debts to Descendent, Descendent and Mr. Peterson hereby demand adequate assurance of due performance of Little Orbit's financial and development obligations under the Binding Settlement Terms Sheet ("BSTS").

Specifically, Descendent and Mr. Peterson are concerned that Little Orbit lacks and has always lacked the funds necessary to make the settlement payments and complete development of the game.

An Experian credit report puts Little Orbit into the "high risk" category, and further indicates that Little Orbit keeps less than $▇▇▇▇▇ in its bank account,

That obviously is not sufficient to permit Little Orbit to complete development of, much less market and promote, the game at issue.

Please send us the accounting software data and reports from Little Orbit's accounting software, as well as Little Orbit's bank statements, from November 1, SinDSSS2020 through the present.

Failure to provide the requested information and adequate assurance will be deemed yet another material breach of the BSTS by Little Orbit.

Sincerely,

Michael C. Whitticar

NOVA IP Law, PLLC
7420 Heritage Village Plaza
Suite 101
Gainesville, VA 20155
Telephone:   (571) 386-2980
Fax:   855-295-0740
www.novaiplaw.com
mikew@novaiplaw.com

 Gmail                                          **Michael Whitticar <novaiplaw@gmail.com>**

---

## Demand For Adequate Assurance of Due Performance

---

**Michael Whitticar** <mikew@novaiplaw.com>                          Fri, Jul 9, 2021 at 3:29 PM
To: Mr Danton Richardson <mdantonrichardson@yahoo.com>
Cc: Leo Lundberg <leo.law.55@gmail.com>, "Shamonki, Nada" <nishamonki@mintz.com>, "Hashimoto, Diane"
<DEHashimoto@mintz.com>, Paralegal <admin@novaiplaw.com>
Bcc: Eric Peterson <eric.peterson@feverpitchstudios.com>

Also, we are eight month into Little Orbit's development period, and four months from its completion deadline.

Please let us know what progress Little Orbit has made toward completing the game and raising any necessary
funds, investment or capital to complete, market and promote the game.

This is also part of Defendants' demands for adequate assurance of due performance.

Sincerely,

Michael C. Whitticar
]
NOVA IP Law, PLLC
7420 Heritage Village Plaza
Suite 101
Gainesville, VA 20155
Telephone:  (571) 386-2980
Fax:  855-295-0740
www.novaiplaw.com
mikew@novaiplaw.com

[Quoted text hidden]

# EXHIBIT F

DEFENDANT'S EXHIBIT
tabbies
F

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION - SANTA ANA

| | | |
|---|---|---|
| LITTLE ORBIT LLC, | ) | Case No. SACV 20-89-DOC (JDEx) |
| | ) | |
| Plaintiff, | ) | Santa Ana, California |
| | ) | Monday, May 24, 2021 |
| v. | ) | 12:00 P.M. |
| | ) | |
| DESCENDENT STUDIOS INC., et al., | ) | VIDEOCONFERENCE |
| | ) | |
| Defendants. | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JOHN D. EARLY
UNITED STATES MAGISTRATE JUDGE

| | |
|---|---|
| Appearances: | See Page 2 |
| Deputy Clerk: | Maria Barr |
| Court Reporter: | Recorded; CourtSmart |
| Transcription Service: | JAMS Certified Transcription<br>16000 Ventura Boulevard #1010<br>Encino, California 91436<br>(661) 609-4528 |

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

1   APPEARANCES:

2

3   For the Plaintiff:        Law Office of M. Danton Richardson
                              By:  MICHAEL DANTON RICHARDSON
4                             131 North El Molino Avenue, Suite 310
                              Pasadena, California   91101
5                             (949) 677-6434
                              mdantonrichardson@yahoo.com
6

7
    For the Defendants:       Nova IP Law PLLC
8                             By:  MICHAEL C. WHITTICAR
                              7420 Heritage Village Plaza, Suite 101
9                             Gainsville, Virginia   20155
                              (571) 386-2980
10                            mikew@noaiplaw.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   execute a further, more detailed, written memorialization

2   (end reading).

3           So the parties contemplated it -- that it was

4   possible.  It didn't happen.  So now we're going to revert to

5   the settlement agreement that was put on the record way back

6   in -- on November 17th.  But in fairness to plaintiff, I'm

7   not going to make that retroactive -- that his payment was

8   due 60 days from November 17th.  I'm going to make that

9   payment due -- and I'm saying "60 days."  Maybe it was

10  30 days -- from today.  So plaintiff will have an opportunity

11  to comply.  If he doesn't make that payment, then we'll see

12  where we are, but that's what we're going to do.  I see --

13  I'm going to hold my tongue.

14          Please continue, Mr. Whitticar.

15          MR. WHITTICAR:  So the second issue, Your Honor,

16  was that the plaintiff said that they were going to treat

17  revenues as some kind of net sales under the original

18  development agreement which was of course --

19          THE COURT:  It's not -- that dispute is not ripe

20  for me.  Okay?  Come back to me, if you need to, if the first

21  payment is not made.  I think revenue -- the meaning of it is

22  clear.  It's not ambiguous.  It was clear from the context of

23  the agreement itself, and from the parties course of dealing,

24  it was not unclear.  It appears to me that the -- there's

25  been an effort made by plaintiff to create an ambiguity where

1  there was none, but it's not -- unless and until that first

2  payment is missed, you're asking me -- and I do think this is

3  fair from plaintiff -- you're asking me or Judge Carter to

4  make a advisory ruling when it's not before us.  We make

5  rulings on actual, live disputes.  Even if everybody says

6  it's going to be a dispute 60 days from now, I'm not walking

7  you guys through this.

8          You had a full and fair opportunity to put whatever

9  terms you wanted in a term sheet, in a settlement agreement,

10 and I said, I'll put whatever you -- whatever terms you want

11 will be what the settlement terms are.  This is what is

12 before us.  I find that it's not ambiguous and the meaning is

13 clear based on the course of dealing with the party and the

14 language used, and I'm not going beyond that unless there's

15 some particular ripe dispute.

16          MR. WHITTICAR:  Okay.  And then the third issue,

17 Your Honor, was them saying that they refused to market the

18 game or spend on marketing or user acquisition --

19          THE COURT:  Again, I -- I'm just going to repeat

20 myself.  It's not a ripe -- it's not ripe at this point.  I'm

21 not going to get into that.  The agreement is clear.  If you

22 hit a point where that has been violated, as opposed to them

23 expressing their agreement about what the -- their views on

24 what the agreement means, so be it, but let's get first

25 things first.  There's no more -- there's -- this is clear:

# EXHIBIT G



Matthew, 4:58 PM

I use 2017, that would be my preference  ☺

Unreal 4.20.3?  ☺

Or 4.21  ☺

5:00 PM

4.20.3

Matthew, 5:02 PM

kk  ☺

pulling that down  ☺

confirming we can us vs2017  ☺

5:03 PM

yup



5:03 PM

yup

Matthew, 5:08 PM

kk

how big is the ContentSource repo?

5:14 PM

Huge

one sec

177gig

Be back in a few, testing.

Matthew, 5:55 PM

squeaked by... 22GB free

Wednesday, November 21, 2018

**CERTIFICATE OF SERVICE**

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and am not a party to the above-entitled action.

On July 21, 2021, I filed a copy of the following document(s):

**[REDACTED] DECLARATION OF ERIC PETERSON IN SUPPORT OF DEFENDANTS' SECOND MOTION TO ENFORCE THE BINDING SETTLEMENT TERMS SHEET, FOR A MONEY JUDGMENT, AND FOR AN AWARD OF ATTORNEYS' FEES**

By electronically filing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- **Leo Edward Lundberg , Jr**

  leo.law.55@gmail.com

- **Michael Danton Richardson**

  mdantonrichardson@yahoo.com


Executed on July 21, 2021, at Los Angeles, California.  I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

/s/ Diane Hashimoto_____
Diane Hashimoto