1  NADA I. SHAMONKI (SBN 205359)
   nshamonki@mintz.com
2  **MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.**
   2029 Century Park East, Suite 3100
3  Los Angeles, CA 90067
   Telephone:  (310) 586-3200
4  Facsimile:   (310) 586-3202

5  MICHAEL C. WHITTICAR (*admitted pro hac vice*)
   mikew@novaiplaw.com
6  **NOVA IP LAW, PLLC**
   155 Broadview Avenue, Suite 200
7  Warrenton, VA 20186
   Telephone:  (571) 386-2980
8  Facsimile:  (855) 295-0740

9  Attorneys for Defendant/Counterclaimant
   DESCENDENT STUDIOS INC. and
10 Defendant ERIC PETERSON

11                **UNITED STATES DISTRICT COURT**

12               **CENTRAL DISTRICT OF CALIFORNIA**

13 LITTLE ORBIT LLC, a California          Case No. 8:20-cv-00089-DOC-JDE
14 Limited Liability Company,
                                          **REPLY IN SUPPORT OF**
15                          Plaintiff,    **DEFENDANTS' MOTION TO**
                                          **ENFORCE THE COURT'S JULY 27,**
16        vs.                             **2021 ORDER, FOR CONTEMPT**
                                          **SANCTIONS, FOR A DECLARATION**
17                                        **OF ENTITLEMENT TO SUSPEND OR**
   DESCENDENT STUDIOS INC., a             **TERMINATE THE SETTLEMENT**
18 Texas corporation, and ERIC            **AGREEMENT AND IP LICENSE,**
   PETERSON, an individual,               **AND TO ENJOIN LITTLE ORBIT**
19                                        **FROM RELEASING THE GAME**
20                          Defendants.
   DESCENDENT STUDIOS INC., a             **[REDACTED VERSION OF**
21 Texas corporation,                     **DOCUMENT FILED UNDER SEAL**
                                          **PURSUANT TO ORDER OF THE**
22                          Counterclaimant,  **COURT DATED APRIL 20, 2021]**
23        vs.                             Date:        November 22, 2021
                                          Time:        8:30 a.m.
24 LITTLE ORBIT LLC, a California          Courtroom: 9D
25 Limited Liability Company,
                                          Judge: Hon. David O. Carter
26                          Counterdefendant.
                                          Complaint Filed:    1/16/2020
27

28

1

## **TABLE OF CONTENTS**

2

3

I.     LITTLE ORBIT'S MATERIAL BAD FAITH NO EFFORTS BREACHES ... 1

II.    LITTLE ORBIT'S FAILURE TO PROVIDE ADEQUATE ASSURANCE. .. 8

III.   LITTLE ORBIT'S PAYMENT FAILURES. .................................................. 10

IV.    LITTLE ORBIT'S COMPLETION DEADLINE ........................................... 14

V.     DESCENDENT'S DAMAGES CALCULATION AND OPINION
       TESTIMONY ARE COMPETENT AND CORRECT.................................... 15

VI.    THE COURT HAS JURISDICTION TO ENFORCE ITS ORDERS
       AND TO ISSUE CONTEMPT SANCTIONS................................................ 16

VII.   LITTLE ORBIT IS NOT ENTITLED TO AN INJUNCTION BOND. .......... 17

VIII.  LITTLE ORBIT IS SUFFERING NO COGNIZABLE IRREPARABLE
       HARM   ....................................................................................................... 18

IX.    CONCLUSION ............................................................................................. 18

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Dardashti v. Golden*,
  2008 Br. LEXIS 4678 (9th Cir. BAP 2008) ........................................................ 16

*Hagel v. Drummond*,
  184 B.R. 793 (9th Cir. BAP 1995) ...................................................................... 16

*In re Humboldt Fir. Inc.*
  426 F. Supp. 242 (N.D. Cal. 1977) ...................................................................... 10

*Inamed Corp. v. Kuzmak*,
  275 F. Supp. 2d 1100 C.C.D. Cal. 2002 .............................................................. 10

*Lado v. Wolf*,
  952 F. 3d 999 (9th Cir. 2020) .............................................................................. 18

*Rains v. Flinn*,
  428 F. 3d 893 (9th Cir. 2005) .............................................................................. 16

*Sekaquaptewa v. MacDonald*,
  544 F. 2d 396 (9th Cir. 1976) .............................................................................. 16

*Taylor v. Johnson*,
  15 Cal. 3d 130 (1975) .......................................................................................... 10

**Other Authorities**

Fed. R. Civ. P. 65(c) ................................................................................................ 17

FRE 408 .................................................................................................................... 12

Restatement (Second) of Contracts § 251 ............................................................... 10

1   Defendants and Counterclaim Plaintiffs Descendent Studios, Inc.

2   ("Descendent") and Eric Peterson ("Mr. Peterson") hereby respectfully submit this

3   reply in support of their motion for contempt sanctions and to enforce the Binding

4   Settlement Terms Sheet ("BSTS") against Little Orbit, LLC ("Little Orbit").

5   The propriety of imposing contempt sanctions and of Descendent's planned

6   termination of the BSTS and the embedded IP License are both clearly shown by

7   Little Orbit's continuing threats and bad faith misconduct, and also by Little Orbit's

8   historical, ongoing and continuing refusals to comply with any agreement between

9   the parties or even with the orders of this Court.  For example, Little Orbit not only

10  refuses to make the settlement payments, but continues to defy and refuses to

11  acquiesce in this Court's July 27, 2021 decision that "revenues" in the BSTS means

12  gross revenues, that the BSTS did not require Descendent to deliver any software or

13  technology deliverables to Little Orbit, and that there is a binding and enforceable

14  settlement agreement based on a meeting of the minds.  (Doc. No. 115-1 at p. 4, ¶

15  8).

16  **I.    LITTLE ORBIT'S MATERIAL BAD FAITH NO EFFORTS**
17  **BREACHES**

18  As the exclusive licensee of the Descendent intellectual property under the

19  binding BSTS, Little Orbit owed Descendent the obligation to use Little Orbit's best

20  efforts in good faith to complete, develop and market the game.  (Doc. No. 114:

21  Contempt Motion Brief at p. 14).  However, Matt Scott of Little Orbit admitted in

22  his Declaration dated July 12, 2021 that Little Orbit had not even begun

23  development of the game as of July 2021, eight months after the BSTS was signed.

24  (Doc. No. 93-1 at p. 2, ¶3).  In fact, it now is clear that, due to Little Orbit's buyer's

25  remorse about the meaning of "revenues" in the BSTS, Little Orbit made no

26  significant efforts to develop or complete the game until late September or early

27  October of 2021.

28

1    Little Orbit erroneously tried to blame its delays and breaches on Descendent,

2    claiming that Descendent had failed to deliver software and technology deliverables

3    pursuant to the BSTS.  However, as Judge Carter correctly found and held, the

4    BSTS did not require Descendent to deliver any software or technology to Little

5    Orbit, but only to license it.  (July 27, 2021 Judge Carter Order, Doc. 99 at p. 8;

6    BSTS Doc. 89-1 at ¶ 10).[1]

7    Demonstrating the correctness of Judge Carter's decision, on March 23. 2021,

8    Little Orbit had written Descendent saying "No extension necessary" and not

9    expressing any need or desire for any software or technology deliverables.

10   (Peterson Decl., Ex. A).  Further demonstrating the correctness of Judge Carter's

11   decision, and confirming Little Orbit's lack of good faith best efforts, Little Orbit

12   never bothered to request or ask for any of the supposedly necessary software or

13   technology deliverables until April of 2021.  (Peterson Decl. ¶ 5).  Eventually,

14   Descendent showed and Little Orbit admitted that Little Orbit had had the game

15   code since November of 2018, showing that Little Orbit was at best deceptive and

16   misleading and at worst lying in its many complaints and excuses about having

17   delayed development based on lack of the supposedly necessary software.[2]  (Matt

18   Scott Nov. 2021 Decl. Doc. No. 115-1, p. 3, ¶5).  This evidence is clearly sufficient

19   to show that Little Orbit breached its good faith best efforts obligations under the

20   BSTS.

21

22   [1] The only deliverables specified in the BSTS were commercial and customer
     information such as "pre-order data, Kickstarter data and early-backer data."  (BSTS
23   Doc. No. 89-1 at ¶10).  *Inclusio unius est exclusio alterius*.
     [2] In fact, Little Orbit received automatic updates of the game code until it
24   wrongfully terminated the Original Contracts based on delays caused by Little
     Orbit's inability to pay and many unilateral and unnecessary changes, such as the
25   unilateral and unnecessary new application program interface ("API") that Little
     Orbit senselessly demanded and agreed to create but then failed to create.  In
26   addition, Mr. Peterson never told Mr. Scott that Descendent had done weeks or
     months of additional work on the game after the wrongful termination by Little
27   Orbit caused by Little Orbit failing to complete the revised API as agreed and
     unilaterally imposing new requirements on the game.  Finally, the only work done
28   by Descendent after the termination was merely some minor de-bugging work and
     putting the original Descendent API that Little Orbit did not like back into the game.
     (Peterson Decl. ¶ 4).

-2-

1    "But wait, there's more!"  The insufficient adequate assurance materials

2    provided by Little Orbit further confirm its bad faith and its weak and minimal

3    efforts to release the game.

4        The Little Orbit status report dated October 1, 2021 showed that the only

5    substantive work performed by Little Orbit in the ten months since the BSTS was

6    signed was to analyze the game code which it had had since November 2018, an

7    updated version of which gratuitously was provided to Little Orbit in June of 2021.

8    (Peterson Decl.¶6).  (Doc. No. 110-1 at p. 6; Doc. No. 96-2 at p. 25).  The financial

9    statements provided by Little Orbit on October 1, 2021 showed that Little Orbit had

10   spent only $10,000 developing the game since the BSTS was signed.  (Doc. No.

11   110-1 at p. 15).  Little Orbit fails to provide any quantification or meaningful

12   description of any other work on the game that it supposedly had performed or

13   completed in-house.

14       The unknown two to ten development company in Uruguay that Little Orbit

15   has hired advertises itself as a smartphone application developer and is not publicly

16   associated with any prior video games.  It therefore apparently has never developed

17   any prior video games.  (Peterson Decl. ¶ 8 at p. 3).  Standard billing and payment

18   terms in the video game development industry are net thirty days, and Little Orbit

19   admittedly has not yet paid the developer, which means that the tiny Uruguayan

20   smart phone application developer likely was not even hired to work on the game

21   until late September or early October of 2021.  (Peterson Decl. ¶ 9 p. 3).

22       Even more important and troubling, however, is the fact that – in order to

23   compensate for its own 8 to 11 months of doing nothing or virtually nothing to

24   develop and release the game – Little Orbit is now planning and threatening to

25   imminently release and rush out (in less than ten days) a functionally gutted, sub-

26   Beta test version of the game as an unheard-of second early access version of the

27   game six years after its first early access release in 2015, from which Little Orbit is

28   gutting and removing approximately forty percent (40%) of the prior functionality

1  of the game.  (Peterson Decl. ¶ 10).  The version Little Orbit imminently plans to

2  release in only nine days is a sub-Beta test version because, based on the status

3  reports provided by Little Orbit, it is far from being code and content complete,

4  which is what would be required for it to be a true Beta test version.  (Peterson Decl.

5  ¶ 11).

6       According to those same Little Orbit status reports, the version which Little

7  Orbit is threating to imminently rush out in 9 days will lack approximately forty

8  percent of the game's pre-existing and previously planned functionality.  In fact,

9  based on those same status reports, the game will lack the following features and

10  functions that were not only in the original game plan (Peterson Decl., Ex. C), but

11  **which were also included in the version of the game code admittedly provided**

12  **to Little Orbit in November of 2018.**  (Peterson Decl. ¶ 12).

13    1. Languages Cut:

14      a. German

    b. Spanish

15      c. French

16      d. Italian

  2. 4.27 Unreal engine upgrade missing – needs to be done prior to any Beta

17      testing.

18    3. Multiplayer game modes missing

    a. Team Anarchy

19      b. Miner Mayhem

20      c. Survival

    d. Conquest

21      e. Corporate War

22      f. Vs. AI

    g. Co-op vs AI

23    4. Bot AI needs improvement.

24    5. Seasons system – what items are available for each season, and then defined

    and working and tested.

25    6. Leaderboards

26    7. Ship customization is missing the ability to customize

    a. Wings

27      b. Noses

28      c. Tails

    d. Decals

8. Little Orbit is renaming all weapons away from Descent names – but not recording or fixing the voice-overs for them in the cinematics and in the Game.
9. Difficulty levels missing
    a. Trainee
    b. Rookie
    c. Veteran
    d. Ace
    e. Insane
10. Missing Versions Promised in Kickstarter
    a. Mac
    b. Linux
    c. VR
11. Messages system in your quarters
12. Collectables
13. Intel system – in mission and in quarters

(Peterson Declaration ¶ 12).

The functionality which will be missing according to the Little Orbit status reports is approximately forty percent of the functionality already and previously contained in the November 2018 game code and the June 2021 game code, both of which were then delivered to Little Orbit. Releasing the game for a second time in early access and – more importantly -- in this gutted and diminished stage of development would be disastrous and would inflict irreparable harm on Descendent and the game project for which there is no adequate remedy at law. (Peterson Decl. ¶ 13).

In Mr. Peterson's more than 25 years in the video-game industry, he has never heard of a video game being published twice through "early access" or early release methods, especially not as a second early access version with greatly diminished functionality being published many years after the first early access version. He cannot recall and does not believe that any prior video game has been published twice in an early access version. (Peterson Decl. ¶ 14). Mr. Scott's testimony that the game at issue went through three early access releases is false and fictional. There was no release on Kickstarter. Kickstarter is a business fundraising

1  site and service, like a GoFundMe for businesses.  There was only one prior early

2  access release on Steam in 2015.  Brightlocker was only an additional portal for

3  reaching the early access version released on Steam.  (Peterson Decl. ¶ 15).

4      Descendent would not have needed a publisher and would not have needed to

5  cooperate with or pay Little Orbit at all to do another early access release.  Little

6  Orbit simply adds no value to making another early access release.  So, it clearly

7  was not contemplated nor agreed that Little Orbit would take ▮ percent of the game

8  revenues to do something worse than Descendent could have done and in fact

9  already had done by itself.  (Peterson Decl. ¶ 16).

10      The planned second "early access" release of the game with diminished

11  functionality threatened imminently by Little Orbit would likewise be disastrous and

12  also would inflict irreparable harm on Descendent and on the game project for

13  which there is no adequate remedy at law.  (Peterson Decl. ¶ 17).  It is true that a

14  handful of successful games have been released initially as early access games.[3]

15  However, it would be unprecedented and unheard of for a game to go through a

16  second early access release with diminished functionality six years after a first early

17  access version.  (Peterson Decl. ¶ 18).  Given that the second threatened early access

18  would be a sub-Beta test version with diminished functionality over even the first

19  early access version, Little Orbit's threated imminent publication of a greatly

20  diminished version of the game would inflict upon Descendent and the game project

21  irreparable harm for which there is no adequate remedy at law.  (Peterson Decl. ¶

22  20).  This is especially true in light of the high levels of debt and under-

23  capitalization shown in the financial statements provided by Little Orbit, which

24

25

26  ───────────────

27  [3] Ironically, despite Little Orbit's inaccurate and baseless attacks on Mr. Peterson's expertise, Mr. Peterson played a central role in managing the development of Star

28  Citizen, one of the few ultimately successful video games existing or cited by Little Orbit as having started out as an early access game, which sold over 2 million copies.  (Peterson Decl. ¶ 19).

1   show that Little Orbit would not have the financial ability to pay millions of dollars

2   in damages.  (Peterson Decl. ¶ 21).

3       Little Orbit's effort to blame its lack of effort on negotiations with Interplay is

4   clearly erroneous and unavailing.  To be sure, both parties have tried to negotiate

5   with Interplay because the game was planned, conceived and early access released

6   (in 2015) under the name DESCENT, which is an Interplay trademark, and as a

7   sequel to a prior DESCENT game.  However, nothing was ever discussed or agreed

8   to about Little Orbit being excused from or taking a break from its development

9   efforts pending negotiations with Interplay.  Progress could and should have been

10   made concurrently with these negotiations. (Peterson Decl. ¶ 22).

11       In addition, Little Orbit's status reports also show that it has not even started

12   marketing the game, which is crucial to the success of any video game, and

13   especially one that is going to be re-released in early access for the second time six

14   years later with diminished functionality.  (Peterson Decl. ¶ 23).

15       The BSTS required Little Orbit to use its best efforts in good faith to get the

16   game approved on all major consoles (Sony, Nintendo and Xbox) "as soon as

17   possible."  (Document No. 48-1 ¶ 14).  The Little Orbit status reports show no

18   progress at all in getting or attempting to get the game approved on any major

19   platforms.  The admitted failure by Little Orbit (in Matt Scott's November 2021

20   Declaration) to make any progress getting the game approved on the three major

21   platforms for the past year is yet another example of how Little Orbit has breached

22   its good faith best efforts obligations.  (Doc. No. 116-1).

23       In short, by lazily not beginning to develop the game for at least eight months

24   after the BSTS was signed, by not doing anything substantial to market or develop

25   the game for at least ten months after the BSTS was signed, and by threatening the

26   impending second early access release of a gutted game with substantially

27   diminished features and functions, Little Orbit has breached its duty as an exclusive

28   licensee to exert it best efforts in good faith to develop and market the game.

## II.   LITTLE ORBIT'S FAILURE TO PROVIDE ADEQUATE ASSURANCE.

Little Orbit failed to make the first settlement payment by the extended June 23, 2021 do-over or "Mulligan" deadline provided for in Judge Early's May 24, 2024 report and recommendation which was adopted and confirmed by Judge Carter by Order dated June 17, 2021.  (Doc. Nos. 79 and 84).  Little Orbit also admitted in Matt Scott's July 12, 2021 reply declaration, (Doc. No. 93-1), that Little Orbit had not even started developing the game eight months after the "Binding" Settlement Term Sheet was signed.  On July 9, 2021, Defendants sent Little Orbit the e-mail demanding adequate assurance of due performance with respect to financial assurances, development status and fundraising efforts.  (Doc. No. 96-2 at p. 17).

It is undisputed and indisputable that Little Orbit provided nothing for over six weeks, despite Judge Carter ordering Little Orbit to do so on July 27, 2021. (Peterson Decl. ¶ 24).  Therefore, Little Orbit failed to timely provide adequate assurance within a reasonable period of time, and thereby repudiated the BSTS, entitling Descendent to terminate it and to sue for damages.

The first debatable effort by Little Orbit effort to provide adequate assurance came on August 24, 2021, more than six weeks after Descendent's written demand, when Mr. Richardson filed a declaration with the Ninth Circuit baldly stating, without any supporting documentation, that there was $250,000 in his trust account on account of Little Orbit.  However, this was simply too little too late, as it was not the equivalent of a payment to Descendent, it was not the equivalent of a bond, there was no enforceable mechanism for Descendent to get the funds if and when it wins the appeal, and Little Orbit failed to account for or allocate any money to the estimated $1 million in development costs of completing the game.  (Peterson Decl. ¶ 25).

1     Later, on September 23, 2021 almost three months after the demand for

2     adequate assurance, Mr. Richardson sent an unsworn, unverified letter claiming to

3     be holding ███████ on account for Little Orbit.  Curiously, however, any

4     confirmation that that amount is or was in Mr. Richardson's account is

5     conspicuously absent from his most recent declaration, and no documentation of this

6     purported deposit has been provided nor appears in the Little Orbit financial

7     statements.  (Peterson Decl., ¶ 26).  Thus, Little Orbit's contention that it has

8     "proven" that it has this money is overstated, unsupported and incorrect.

9          In any event, this does not excuse or negate the fact that Little Orbit

10    admittedly is deeply in debt ███████) and too grossly undercapitalized to be

11    funding or conducting three video game projects at once, neither of which Little

12    Orbit denies.  (Peterson Decl. ¶ 27).  For this reason as well, Little Orbit has failed

13    to provide adequate assurance of due performance.

14         Little Orbit does not deny that it is deeply in debt and does not seriously

15    dispute that it is grossly undercapitalized.  Rather, Little Orbit tries to excuse its

16    own inability to perform or provide adequate assurance by arguing that Defendants

17    supposedly knew that Little Orbit borrowed ███████ to develop the game and

18    had not paid it back.  Little Orbit now is absurdly confusing "spending" with

19    "borrowing" just as it absurdly confused "revenue" with "profit."  While Defendants

20    knew that Little Orbit had borrowed some money to develop the game in 2018, they

21    had no idea what the status of those loans was in November of 2020.  In addition,

22    based on Defendants' review of Little Orbit's discovery materials and financials,

23    Defendants do not know and do not believe even now that Little Orbit has spent

24    ███████ or anything close to that amount to develop the game.  (Peterson Decl.

25    ¶ 28 at p. 8).  The only way to reach that number based on the Little Orbit financial

26    documents and discovery provided would be to improperly allocate all or the vast

27    majority of many Little Orbit overhead, salary and general expenses to the game at

28    issue.  For example, Little Orbit took a contract with Epic for ███████ which

1    covered work on three different games (two unrelated to this one) and falsely and

2    fraudulently somehow allocated ███████████████ total contract (more than

3    the amount of the total contract) to the single game at issue in this case.  (Peterson

4    Decl., Exs. D and E).

5            It is ridiculous and misleading for Little Orbit to complain that Descendent

6    has failed to review the current version of the game software.  Descendent has

7    requested to review and test a copy of the game software, but Little Orbit has failed

8    to provide one.  (Peterson Decl., Ex. F).  This is yet another example of Little Orbit

9    failing to provide adequate assurance of due performance in a reasonable amount of

10   time or at all.

11           These multiple failures by Little Orbit to provide adequate assurance

12   constitute Little Orbit repudiating the BSTS, which permits Descendent to terminate

13   it and sue for damages.  *Taylor v. Johnson*, 15 Cal. 3d 130, 138, 123 Cal. Rptr. 561,

14   539 P 2d 425 (1975); *Inamed Corp v. Kuzmak*, 275 F. Supp. 2d 1100, 1131 (C.D.

15   Cal. 2002).  *See also In re Humboldt Fir. Inc.*, 426 F. Supp. 242, 298 (N.D. Cal.

16   1977) (failure to timely provide adequate assurance operates as an anticipatory

17   repudiation); Restatement (Second) of Contracts § 251 (same).

18   **III.    LITTLE ORBIT'S PAYMENT FAILURES.**

19           Judge Carter has already correctly found and decided that "Plaintiff has failed

20   to make the first two settlement payments," ordered Little Orbit to "pay what it

21   owes Defendants" and decided that: "Plaintiff is not entitled to any extensions."

22   (Doc. No. 99 at p. 8).  It appears that Judge Carter decided that Little Orbit is no

23   longer entitled to the do-over or "Mulligan" payment deadline extensions provided

24   for in Judge Early's May 24, 2021 report and recommendation because Little Orbit

25   failed to make the first settlement payment by the formerly extended June 23, 2021

26   deadline.  That would also keep the release date deadline as November 17, 2021.  In

27   any event, even under the extended Mulligan or do-over deadline, the second

28   payment was due on September 23, 2021, so Little Orbit is still ██████ in default,

-10-

1   which will be ▓▓▓▓▓▓ November 24, 2021, a little more than two weeks from
2   now.

3       Attached as Exhibits A1 through A5 to the Whitticar Declaration are five
4   emails with slightly different, successive versions of the BSTS, going from the first
5   version next to the final version.  Note that all five versions had substantively the
6   same language Section 4.  All of them referred to not making payments on time as a
7   "default" rather than as an "option" or as an "alternative."  And all of them
8   contained the "payment not made **on time**" limitation as to the applicability of
9   Section 4.  None of them referred to the Section 4 remedy as the "exclusive" or
10  "only" remedy for Little Orbit payment defaults.

11      If Little Orbit seriously thought that not making the settlement payments was
12  an "option" or an "alternative" rather than a "default" as expressly stated by Section
13  4 of the BSTS, it should have told Defendants and Judge Early that during the
14  May 24, 2021 hearing when Judge Early pointedly asked Mr. Richardson whether
15  Little Orbit planned to make the settlement payments.  It did not.

16      If Little Orbit seriously thought that not making the settlement payments was
17  an "option" or an "alternative" rather than a "default" as expressly stated in Section
18  4 of the BSTS, it should have changed the "default" language which appeared in at
19  least five different drafts of the settlement agreement that were sent around by email
20  on November 17, 2020.  It did not.

21      If Little Orbit seriously thought that Section 4 was the remedy for payments
22  being entirely skipped or not made at all, then it should have removed the "on time"
23  language and limitation which expressly appeared in at least five different drafts of
24  the settlement agreement that were circulated by email on November 17, 2021.  It
25  did not.

26      If Little Orbit seriously thought that Section 4 was the exclusive remedy for
27  any or all three settlement payments being made late or not at all, it should have
28  added express exclusivity language to Section 4 in one of the at least five drafts of

1  the BSTS that were circulated by email on November 17, 2021.  Again, it did not do

2  so.

3      During the settlement negotiations leading up the BSTS, Little Orbit never

4  disclosed that, as admitted in Matt Scott's November 2021 declaration, it planned

5  not to make any of the three specified settlement payments if Little Orbit failed to

6  obtain a trademark license from Interplay.  Descendent certainly never agreed to

7  that.  (Peterson Decl. ¶ 31).

8      During those negotiations, Little Orbit stated that it planned to and might

9  need extra time to raise funds to make only the second and third settlement

10  payments, which is why Section 4 talked about Little Orbit not making payments

11  "on time."  (Peterson Decl. ¶ 32).  That is something completely different from

12  Little Orbit purportedly having an "alternative" or "option" not to make all three

13  settlement payments at all.

14      After the BSTS was signed, Defendants continued to obtain additional reports

15  about Little Orbit stiffing other developers and service providers (such as Torus,

16  Boombox, Wicked Witch and Wayforward) on payments for services rendered.

17  Therefore, Defendants tried to re-negotiate additional protections to ensure that they

18  could reclaim and take back the development rights pursuant to BSTS Section 13 if

19  – as has now occurred – Little Orbit completely failed to make even the first

20  settlement payment.[4]  (Peterson Decl. ¶ 39).

21      While those negotiations were not successful in providing Defendants with

22  additional protections, it is clear that Judge Carter's order is correct and that Little

23  Orbit is in default for not making either of the first two settlement payments which

24  are both now substantially overdue regardless of whether Judge Carter rescinded the

25  extended Mulligan or do-over payment deadline.  (Peterson Decl. ¶ 40).

26

27  _____
28  [4] Defendants contend that the parties continued efforts to re-negotiate and again settle their disputes are of little probative value, and are inadmissible settlement communications pursuant to FRE 408 and the parol evidence rule, especially since they post-dated the signing of the BSTS by weeks or months.

In all five versions, Section 4 applied "if any payment [singular] not made on time."  Nothing in the BSTS gave Little Orbit an option to not make all of three of the settlement payments at all.

The discussions surrounding the three settlement payments were that Little Orbit would need to raise funds to make the second and third settlement payments (which may therefore by delayed) – not skipped entirely.  It was predicated upon Little Orbit trying but failing to raise the necessary funds "on time."

Clearly, the express language of Section 4 ("If any payment [singular] not made on time,"), means something completely different than an option to entirely skip all three payments.

Thus, the Section 4 remedy only accelerates the ▇▇▇ split to Descendent.  If the game sells well, it does not provide Descendent with any extra money.  That is illustrated by the following diagram.

1st $1 million in revenues | Next $1 million in revenues | **Next $700k in revenues**

Since Section 4 has been invoked, the 50/50 spit gets relocated.  The total revenue stream is the same.

**1st $700k in revenues** | Next $1 million in revenues | Next $1 million in revenues

Since Little Orbit claims that it had $250,000.000 or $1 million in Mr. Richardson's trust account, it clearly cannot claim that it missed the first two payments due to hardship or failing to raise the payment funds after exerting reasonable, good faith efforts.  Rather, it is clearly just intentionally misconstruing the language of Section 4 to try to evade its obligations under the BSTS and under the Judge Carter's Order dated July 27, 2021.

Little Orbit's repeated attempts to evade its payment obligations are clear evidence of its bad faith and unwillingness to fulfill its obligations under the BSTS and Judge Carter's Order.

Right before Little Orbit's first settlement payment was due on June 23, 2021, Little Orbit filed its motion to set aside the BSTS, which only repeated arguments that were rejected in and barred with Judge Early's May 24, 2021 report and recommendation, and Judge Carter's order adopting it.  Little Orbit never objected to either the May 2021 report and recommendation nor Judge Carter's June 2021 order adopting it.  However, desperate to evade its contractual obligations, Little Orbit filed its motion to set aside, largely re-hashing arguments that were previously rejected without objection and therefore were procedurally barred.

Judge Early's July 27, 2021 Order found that Little Orbit had failed to make two settlement payments and ordered Little orbit to pay Defendants what it owes. Rather than pay the money that was due, Little Orbit filed a premature and improper appeal to the Ninth Circuit of what clearly was not a final judgment or final order.

In short, Little Orbit's stubborn and willful refusal to comply with this Court's orders are exactly the type of action that warrants the imposition of contempt sanctions.

## IV.    LITTLE ORBIT'S COMPLETION DEADLINE

Judge Early's May 2021 report and recommendation and the June 2021 Judge Carter order confirming it only extended deadlines that were expressed in terms of "X days." (Doc. Nos. 79 and 84).  However, the completion and release deadline in Section 13 of the BSTS was expressed as "1 year." (Doc. 48-1).  Therefore, the Mulligan or do-over deadline order did not move the completion and release deadline, because Little Orbit as the exclusive licensee was obligated to be using its good faithbest efforts to develop the game all along, given that the BSTS expressly stated that it was a "final and binding settlement agreement." (BSTS, Doc. 48-1, ¶ 16).  Little Orbit's completion and release deadline remains November 17, 2021.

1    Little Orbit acknowledged this deadline when, in its motion to set aside the BSTS

2    and its reply in support, it asked the Court to extend its completion and release

3    deadline to May or June of 2022.  (Doc. 93 at p. 2).  Judge Carter found and held

4    that the requested extension was not warranted.  There would have been no reason

5    for Little Orbit to request an extension of the completion and release deadline to

6    May of 2022 unless it knew and understood that the current completion deadline

7    was November 17, 2021.

## V.    DESCENDENT'S DAMAGES CALCULATION AND OPINION TESTIMONY ARE COMPETENT AND CORRECT.

10    Mr. Peterson's damages opinion and other opinion testimony is competent,

11    admissible and correct.  It is based on historical sales data of similar games and

12    based on his 25 years in the video game industry.  In addition to the qualifications

13    previously disclosed, he played a central role in developing Star Citizen, one of the

14    most popular and successful video games that started out in early access and sold

15    over 2 million copies.  He lowered his estimate to make it conservative.  The $39.99

16    sales price was based on his fully disclosed[5] discussions and negotiations with

17    Interplay and other developers in anticipation of Little Orbit getting terminated or

18    otherwise failing to release a compliant game by November 17, 2021.  Selling a

19    game this long, rich and complex for $⬛ would <u>not</u> make sense unless the game

20    released is the threatened, sub-Beta, gutted early access version. (Peterson Decl. ¶

21    41).

22    Little Orbit's criticism of Mr. Peterson's testimony is incorrect and illogical.

23    New versions of master platforms (XBOX, SONY,  NINTENDO, etc.) cost

24    hundreds of dollars.  The new versions that are supposed to be out now are in very

25    short supply due to the worldwide computer chip shortage.  Therefore, the current

26    versions of the platforms will be in use for at least a few more years.  (Peterson

---

[5] These discussions with Interplay and other potential publishers and developers were forthrightly disclosed to Little Orbit without objection as part of settlement negotiations in which both parties were participating.  (Whitticar Decl. ¶ 3).

Decl. ¶ 42). The BSTS requires Little Orbit to use its best efforts in good faith to get the game approved on all major consoles (Sony, Nintendo and Xbox) "as soon as possible." (Document No. 48-1 ¶ 14). Defendants have seen no evidence of that, and Mr. Scott says in his November 2021 Declaration, that it will not happen in the next year.

The ▮▮▮▮▮▮ total revenue projection from Little Orbit only makes sense under the assumption that Little Orbit will fulfill its threat to make an unheard-of second early access version of the game with gutted features and functionality. (Peterson Decl. ¶ 43).

## VI. THE COURT HAS JURISDICTION TO ENFORCE ITS ORDERS AND TO ISSUE CONTEMPT SANCTIONS.

Little Orbit fails to cite a single case holding that a court lacks jurisdiction to enforce its prior orders or to issue contempt sanctions pending appeal. That argument is ridiculous. Even the Ninth Circuit order denying Little Orbit's improper motion for a stay pending appeal cited cases instructing Little Orbit to comply with the district court's order pending appeal. (Whitticar Decl., Ex. B). This Court clearly has jurisdiction to enforce its prior orders through contempt sanctions and otherwise. *Dardashti v. Golden*, 2008 Br. LEXIS 4678 *16 (9th Cir. BAP 2008); *Hagel v. Drummond*, 184 B.R. 793, 798 (9th Cir. BAP 1995) ("while an appeal of an order is pending, the trial court retains jurisdiction to implement or enforce the order."); *Rains v. Flinn*, 428 F. 3d 893, 904 (9th Cir. 2005) (same); *Sekaquaptewa v. MacDonald*, 544 F. 2d 396, 406 (9th Cir. 1976).

In terms of addressing the supersedeas bond arguments that Little Orbit improperly makes in its opposition, of course the parties know and knew what the first two settlement payment amounts are ▮▮▮▮▮▮▮▮. However, that does not mean that the Judge Carter's July 27 order is an executable money judgment that can be executed upon or properly suspended by a supersedeas bond. Because the order is not called a judgment and does not state a sum certain, no bank or other

garnishee could even determine from Judge Carter's July 27 Order how much money Little Orbit owes without obtaining access to sealed documents.

In addition, after incorrectly informing the Court that it has obtained an "expedited" appeal, Little Orbit then failed to disclose to the Court that it sought and obtained a one-month extension of the briefing deadline, meaning that only Little Orbit's opening brief is likely to be filed by the time the November 17, 2021 completion deadline and the November 24, 2021 third payment deadline expire. (Whitticar Decl. ¶ 5).

In short, there has been no final order and no executable judgment to support either an appeal or a supersedeas bond.  But, in any event, the Court retains jurisdiction to enforce its own prior orders and to issue contempt sanctions.

## VII.   LITTLE ORBIT IS NOT ENTITLED TO AN INJUNCTION BOND.

Little Orbit's request for a ███████ injunction bond is misplaced and baseless on multiple levels.  Descendent is not seeking a preliminary injunction or temporary restraining order.  Rather, Descendent is seeking a permanent injunction based on Little Orbit's many well-documented breaches and repudiations of the BSTS.  Neither Fed. R. Civ. P. 65(c) nor any other authority existing or cited by Little Orbit authorizes imposing an injunction bond for a permanent injunction.

In addition, Little Orbit illogically seeks a ███████ injunction bond based on projected gross sales revenues to both parties of ███████ Little Orbit is now confusing its undefined and undocumented projected profits from the game with ███████ in gross sales revenues to *both parties*.  That is just legally, logically and economically ridiculous and unsupportable.

In addition, Little Orbit owes or soon will owe Descendent ███████ which should be considered in any bond calculation.

## VIII.   LITTLE ORBIT IS SUFFERING NO COGNIZABLE IRREPARABLE HARM

As the Ninth Circuit reminded Little Orbit in the order denying Little Orbit's motion for a stay pending appeal, "self-inflicted wounds are not irreparable injury." *Lado v. Wolf*, 952 F. 3d 999, 1008 (9th Cir. 2020).  (Whitticar Decl., Ex. B).

In other words, Little Orbit suffers no cognizable irreparable harm from the consequences of its deliberate, voluntary decision not to make the court-ordered and contractually required settlement payments from the ██████████ in cash that reportedly is in Mr. Richardson's trust account.

## IX.   CONCLUSION

While Little Orbit stubbornly claims that the BSTS is invalid and does not exist, it keeps using the IP assets to which it only has any claim through the BSTS. The Court should put a stop to this.

Little Orbit has anticipatorily repudiated and breached the BSTS by:
- Not using any good faith best efforts to market or develop the game.
- Threatening to shovel out a gutted, second early access, sub-Beta version of the game in nine days.
- Not providing any timely assurance of due performance within **six weeks** of written demand.
- Not providing adequate assurance of its plan or ability to timely and fully complete and market the game.
- Not paying at least the first two settlement payments ██████) that are well overdue under any arguable extended deadline.

It is clear from Little Orbit's continuing pattern of willful non-acquiescence that contempt sanctions are appropriate and that permanent injunctive relief is necessary to prevent Little Orbit from taking and using Descendent's game IP without paying for it and without doing any competent, good faith job of developing or marketing the game.

1  Dated:  November 8, 2021

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

By: _____
        Counsel

Nada I. Shamonki (SBN 205359)
MINTZ LEVIN COHN FERRIS GLOVSKY
AND POPEO P.C.
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
Telephone: (310) 586-3200
Facsimile: (310) 586-3202
Email: nshamonki@mintz.com

Michael C. Whitticar (*admitted pro hac vice*)
NOVA IP Law, PLLC
155 Broadview Avenue, Suite 200
Warrenton, VA 20186
Tel:   571-386-2980
Fax:  855-295-0740
E-mail: mikew@novaiplaw.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and am not a party to the above-entitled action.

On November 8, 2021, I filed a copy of the following document(s):

**[REDACTED] REPLY IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE THE COURT'S JULY 27, 2021 ORDER, FOR CONTEMPT SANCTIONS, FOR A DECLARATION OF ENTITLEMENT TO SUSPEND OR TERMINATE THE SETTLEMENT AGREEMENT AND IP LICENSE, AND TO ENJOIN LITTLE ORBIT FROM RELEASING THE GAME**

By electronically filing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- **Leo Edward Lundberg , Jr**

  leo.law.55@gmail.com

- **Michael Danton Richardson**

  mdantonrichardson@yahoo.com

Executed on November 8, 2021, at Los Angeles, California.  I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

_/s/ Diane Hashimoto_____
Diane Hashimoto