NADA I. SHAMONKI (SBN 205359)
nshamonki@mintz.com
**Mintz Levin Cohn Ferris Glovsky and Popeo P.C.**
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
Telephone:  (310) 586-3200
Facsimile:   (310) 586-3202

MICHAEL C. WHITTICAR (*admitted pro hac vice*)
mikew@novaiplaw.com
**Nova IP Law, PLLC**
155 Broadview Avenue, Suite 200
Warrenton, VA 20186
Telephone:  (571) 386-2980
Facsimile:  (855) 295-0740

Attorneys for Defendant/Counterclaimant
DESCENDENT STUDIOS INC. and
Defendant ERIC PETERSON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LITTLE ORBIT LLC, a California Limited Liability Company,<br><br>                    Plaintiff,<br><br>        vs.<br><br>DESCENDENT STUDIOS INC., a Texas corporation, and ERIC PETERSON, an individual,<br><br>                    Defendants. | Case No. 8:20-cv-00089-DOC-JDE<br><br>**DECLARATION OF ERIC PETERSON IN SUPPORT OF REPLY IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE THE COURT'S JULY 27,  2021 ORDER, FOR CONTEMPT SANCTIONS, FOR A DECLARATION OF ENTITLEMENT TO SUSPEND OR TERMINATE THE SETTLEMENT AGREEMENT AND IP LICENSE, AND TO ENJOIN LITTLE ORBIT FROM RELEASING THE GAME** |
| DESCENDENT STUDIOS INC., a Texas corporation,<br><br>                    Counterclaimant,<br><br>        vs.<br><br>LITTLE ORBIT LLC, a California Limited Liability Company,<br><br>                    Counterdefendant. | **[REDACTED VERSION OF DOCUMENT FILED UNDER SEAL PURSUANT TO ORDER OF THE COURT DATED APRIL 20, 2021]**<br><br>Date:        November 22, 2021<br>Time:        8:30 a.m.<br>Courtroom: 9D<br>Judge: Hon. David O. Carter<br><br>Complaint Filed:     1/16/2020 |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| **LITTLE ORBIT LLC, a California Limited Liability Company,** | ) ) ) | **Case No.: 8:20-cv-00089-DOC-JDE** |
| **Plaintiff,** | ) ) ) | **Judge:    Hon. David O. Carter** |
| **vs.** | ) ) | |
| **DESCENDENT STUDIOS INC., a Texas corporation, and ERIC PETERSON, an individual.** | ) ) ) | |

**DECLARATION OF ERIC PETERSON**

1.      I, Eric Peterson, am over eighteen years of age, of sound mind, and competent to

testify to the facts stated herein. I have personal knowledge of the facts stated in this declaration.

Little Orbit and Descendent Studios requirements comparison chart.

| Deliveries | Company | Authority | Due | Honored | | | |
|---|---|---|---|---|---|---|---|
| Licensing Payment 1 | Little Orbit | Court/BSTS | June 23,2021 | No | | | |
| Licensing Payment 2 | Little Orbit | Court/BSTS | 21-Sep-21 | No | | | |
| Licensing Payment 3 | Little Orbit | Court/BSTS | 24-Nov-21 | No * | | | |
| Wherewithall to deliver game | Little Orbit | Court Order | 27-Jul-21 | No * | | | |
| Development plan | Little Orbit | Court Order | 27-Jul-21 | No | | | |
| Marketing plan & Funding | Little Orbit | Court Order | 27-Jul-21 | No | | | |
| Proof of Funding to complete game | Little Orbit | Court Order | 27-Jul-21 | No | | | |
| Good faith effort to complete the game | Little Orbit | BSTS | Ongoing | No * | | | |
| Good faith effort to get game on consoles | Little Orbit | BSTS | Ongoing | No | | | |
| Bound by Settlement | Little Orbit | BSTS | 17-Nov-20 | No * | | | |
| | | | | | | | |
| Deliver Backer Data | Descendent Studios | BSTS | Before Release | Yes | | | |
| License for game | Descendent Studios | BSTS | 17-Nov-20 | Yes | | | |
| Gratuitous support | | | | | | | |
| Art source code | Descendent Studios | None | | Yes | | | |
| Game source code | Descendent Studios | None | | Yes * | | | |

Additional notes - color coded to match asterisk above

*Magistrate Early gave initial payment Extension which Judge Carter apparently revoked for failure to pay, making due date June 17,2021
* Insufficent and incomplete documentation delivered 2 months late
* Failure to deliver game code, for inspection upon request
*Has unsuccessfully argued that the agreement is unenforceable yet operates as if it is enforce - getting full benefits while ignoring it's obligations
*Little Orbit had Self updating game code in November of 2018

2.      Above I have created a graph showing essentially what we continue to argue over.

Little Orbit has ignored court orders, ignored its part of the BSTS and has not delivered on

anything it has been required to deliver, while Descendent Studios has over-delivered and was the only party attempting to keep the agreed BSTS in force.

3.      On March 23. 2021, Little Orbit had written Descendent saying "No extension necessary" and not expressing any need or desire for any software or technology deliverables.  A genuine and authentic copy of this email is attached hereto as Exhibit A.

In it, Matt Scott makes the following statements:
"No extension needed."

"I'm not going to make any payments."

Defendants contacting the Court about Little Orbit not making payments: "Is not going to do anything."

4.      Little Orbit received automatic updates of the game code until it wrongfully terminated the original contracts based on delays caused by Little Orbit's inability to pay and many unilateral and unnecessary changes, such as the unilateral and unnecessary new application program interface ("API") that Little Orbit senselessly demanded and agreed to create but then failed to create.  In addition, I never told Mr. Scott that Descendent had done weeks or months of additional work on the game after the wrongful termination by Little Orbit caused by Little Orbit failing to complete the revised API as agreed and unilaterally imposing new requirements on the game.  Finally, the only work done by Descendent after the termination was merely some minor de-bugging work and putting the original Descendent API that Little Orbit did not like back into the game.

5.      Little Orbit never bothered to request or ask for any of the supposedly necessary software or technology deliverables until April of 2021.

6.      The Little Orbit status report dated October 1, 2021, showed that the only substantive work performed by Little Orbit in the ten months since the BSTS was signed was to analyze the game code which it has had since November 2018, an updated version of which

2

gratuitously was provided to Little Orbit in June of 2021.  (Doc. No. 110-1 at p. 6; Doc. No. 96-2
at p. 25).

7.     The financial statements provided by Little Orbit on October 1, 2021, showed that
Little Orbit had spent only ▇▇▇▇ developing the game since the BSTS was signed.  (Doc. No.
110-1 at p. 15).

8.     The unknown two to ten development company in Uruguay that Little Orbit has
hired advertises itself as a smartphone application developer and is not publicly associated with
any prior PC video games.  It therefore apparently has never developed any prior PC video
games.  A genuine and authentic copy of Internet research about Little Orbit's tiny Uruguayan
developer is attached Exhibit B.

9.     Standard billing and payment terms in the video game development industry are
net thirty days, and Little Orbit admittedly has not yet paid the developer, which means that the
tiny Uruguayan smart phone application developer likely was not even hired to work on the
game until late September or early October of 2021.

10.     Little Orbit is now planning and threatening to imminently release and rush out
(in less than ten days) a functionally gutted, sub-Beta test version of the game as an unheard-of
second early access version of the game six years after its first early access release in 2015, from
which Little Orbit is gutting and removing approximately forty percent (40%) of the prior
functionality of the game.  (Doc. No. 110-1 at p. 6; Doc. No. 96-2 at p. 25).

11.     The version Little Orbit imminently plans to release in only nine days is a sub-
Beta test version because, based on the status reports provided by Little Orbit, it is far from being
code and content complete, which is what would be required for it to be a true Beta test version.

12.     According to those same Little Orbit status reports, the version which Little Orbit

3

is threating to imminently rush out in 9 days will lack approximately forty percent of the game's

pre-existing and previously planned and working functionality.   In fact, based on those same

status reports, the game will lack the following features and functions that were not only in the

original game plan, but which were also included in the version of the game code admittedly

provided to Little Orbit in November of 2018. (Doc. No. 110-1 at p. 6; Doc. No. 96-2 at p. 25).[1]

    1)     Languages cut:
        a.     German
        b.     Spanish
        c.     French
        d.     Italian

    2)     4.27 Unreal engine upgrade missing – needs to be done prior to any Beta testing

    3)     Multiplayer game modes missing
        a.     Team Anarchy
        b.     Miner Mayhem
        c.     Survival
        d.     Conquest
        e.     Corporate War
        f.     Vs. AI
        g.     Co-op vs AI

    4)     Bot AI needs improvement.

    5)     Seasons system – what items are available for each season, and then defined and working and tested.

    6)     Leaderboards

    7)     Ship customization is missing the ability to customize
        a.     Wings
        b.     Noses
        c.     Tails
        d.     Decals

    8)     Little Orbit is renaming all weapons away from Descent names – but not recording or fixing the voice overs for them in the cinematics and in the Game.

---

[1] A genuine and authentic copy of the game original game design plan is attached as Exhibit C.

4

    9)    Difficulty levels missing
        a.    Trainee
        b.    Rookie
        c.    Veteran
        d.    Ace
        e.    Insane

    10)    Missing Versions promised in Kickstarter
        a.    Mac
        b.    Linux
        c.    VR

    11)    Messages system in your quarters

    12)    Collectables

    13)    Intel system – in mission and in quarters

13.    The functionality which will be missing according to the Little Orbit status reports is approximately forty percent of the functionality already and previously contained in the November 2018 game code and the June 2021 game code, both of which were then delivered to Little Orbit.  Releasing the game for a second time in early access and in this gutted and diminished stage of development would be disastrous and would inflict irreparable harm on Descendent and the game project for which there is no adequate remedy at law.

14.    In my more than 25 years in the video-game industry, I have never heard of a video game being published twice through "early access" or early release methods, especially not as second early access version with greatly diminished functionality being published many years after the first early access version.  I cannot recall and do not believe that any prior video game has been published twice in an early access version.

15.    Mr. Scott's testimony that the game at issue went through three early access releases is false and fictional.  There was no release on Kickstarter.  Kickstarter is a business fundraising site and service, like a GoFundMe for businesses.  There was only one prior early

5

access release on Steam in 2015.  Brightlocker was only an additional portal for reaching the early access version released on Steam.

16.     Descendent would not have needed a publisher and would not have needed to cooperate with or pay Little Orbit at all to do another early access release.   Little Orbit simply adds no value to making another early access release.  So, it clearly was not contemplated nor agreed that Little Orbit would take ▮ percent of the game revenues to do something worse than Descendent could have done and in fact already had done by itself, with Little Orbit not doing the number one job of any publisher, providing a quality marketing push to build visibility for the release.

17.     The planned second "early access" release of the game with diminished functionality threatened imminently by Little Orbit would likewise be disastrous and also would inflict irreparable harm on Descendent and on the game project for which there is no adequate remedy at law.

18.     While it is true that a handful of successful games have been released initially as early access games, it would be unprecedented and unheard of for a game to go through a second early access release with diminished functionality six years after a first early access version.

19.     I played a central role in managing the development of Star Citizen, one of the few ultimately successful video games existing or cited by Little Orbit as having started out as an early access game, which sold over 2 million copies.  The marketing behind this project was crucial to its continued success, from numerous web shows, to partnerships, this is all part of what is necessary to having a successful launch, and none of which Little Orbit has planned according to its updates, or has the money to pay for, according to its balance sheet.

20.     Given that the second threatened early access release would be a sub-Beta test

6

version with diminished functionality over even the first early release version, Little Orbit's threated imminent publication of a greatly diminished version of the game would inflict upon Descendent and the game project irreparable harm for which there is no adequate remedy at law.

21.     This is especially true considering the high levels of debt and under-capitalization shown in the financial statements provided by Little Orbit, which show that Little Orbit would not have the financial ability to pay millions of dollars in damages.

22.     The game was planned, conceived and early access released (in 2015) under the name DESCENT, which is an Interplay trademark, and as a sequel to a prior DESCENT game. However, nothing was ever discussed or agreed to about Little Orbit being excused from or taking a break from its development efforts pending negotiations with Interplay.  Progress could and should have been made concurrently with those negotiations.

23.     Little Orbit's status reports also show that it has not even started marketing the game, which is crucial to the success of any video game, and especially one that is going to be re-released in early access for the second time six years later with diminished functionality.

24.     It is undisputed and indisputable that Little Orbit provided no adequate assurance for over six weeks, despite Judge Carter ordering Little Orbit to do so on July 27, 2021.

25.     The first debatable effort by Little Orbit effort to provide adequate assurance came on August 24, 2021, more than six weeks after Descendent's demand, when Mr. Richardson filed a declaration with the Ninth Circuit baldly stating, without any supporting documentation, that there was $250,000 in his trust account on account of Little Orbit.  However, this was simply too little too late, as it was not the equivalent of a payment to Descendent, it was not the equivalent of a bond, there was no enforceable mechanism for Descendent to get the funds if and when it wins the appeal, and Little Orbit failed to account for or allocate any money

to the estimated $1 million in development costs of completing the game.

26.     Later, on September 23, 2021 almost three months after the demand for adequate
assurance, Mr. Richardson sent an unsworn, unverified letter claiming to be holding $1 million
on account for Little Orbit.  Curiously, however, any confirmation that that amount is or was in
Mr. Richardson's account is conspicuously absent from his most recent declaration, and no
documentation of this purported deposit has been provided nor appears in the Little Orbit
financial statements.

27.     Little Orbit did not produce most of its financial statements until October, 2021.
This was about 3 months after the demand for adequate assurance.  They showed that Little Orbit
admittedly is deeply in debt                    and too grossly undercapitalized to be funding or
conducting three video game projects at once.

28.     While Defendants knew that Little Orbit had borrowed some money to develop
the game in 2018, we had no idea what the status of those loans was in November of 2020.  In
addition, based on Defendants' review of Little Orbit's discovery materials and financials,
Defendants do not know and do not believe even now that Little Orbit has spent $2.5 million or
anything close to that amount to develop the game.

29.     The only way to reach that number based on the Little Orbit financial documents
and discovery provided would be to improperly allocate all or the vast majority of many Little
Orbit overhead and general expenses to the game at issue.  For example, Little Orbit took a
contract with Epic for            total which covered work on three different games (two
unrelated to this one), and falsely and fraudulently somehow allocated          of the
total contract (more than the total contract price and expense) to the single game at issue in this
case.  A genuine and authentic copy of Little Orbit's Descendent transactions summary report is

8

attached as Exhibit D.  A genuine and authentic copy of Little Orbit's Unreal Engine License
Agreement is attached as Exhibit E.

30.     Descendent has requested to review and test a copy of the game software, but
Little Orbit has failed to provide one.  A true and correct copy of an email requesting the game
code from Little Orbit is attached as Exhibit F.  Little Orbit never complied.

31.     During the settlement negotiations leading up the BSTS, Little Orbit never
disclosed that, as admitted in Matt Scott's November 2021 declaration, it planned not to make
any of the three specified settlement payments if Little Orbit failed to obtain a trademark license
from Interplay.  Descendent certainly never agreed to that.

32.     During those negotiations, Little Orbit stated that it planned to and might need
extra time to raise funds to make only the second and third settlement payments, which is why
Section 4 of the BSTS talked about Little Orbit not making payments "on time."

33.     In all five versions of the BSTS, Section 4 applied "if any payment [singular] not
made on time."  Nothing in the BSTS gave Little Orbit an option to not make all of three of the
settlement payments at all.

34.     The discussions surrounding the three settlement payments were that Little Orbit
would need to raise funds to make the second and third settlement payments (which may
therefore by delayed) – not skipped entirely.  Section 4 of the BSTS was predicated upon Little
Orbit trying but failing to raise the necessary funds "on time."  In addition, Little Orbit has failed
to provide an update on those fund raising efforts, which was requested as part of the order
issued by Judge Carter on July 27, 2021.

35.     Clearly, the express language of Section 4 ("If any payment [singular] not made
on time,"), means something completely different than an option to entirely skip all three

payments.

36.     Thus, the Section 4 remedy only accelerates the ▮▮▮ split to Descendent.  If the game sells well, it does not provide Descendent with any extra money.  That is illustrated by the following diagram.



1st $1 million in revenues | Next $1 million in revenues | **Next $700k in revenues**

37.     Since Section 4 has been invoked, the ▮▮▮ split gets relocated.  The total revenue stream is the same.

**1st $700k in revenues** | Next $1 million in revenues | Next $1 million in revenues

38.     Since Little Orbit claims that it had $250,000 or $1 million in Mr. Richardson's trust account, it clearly cannot claim that it missed the first two payments due to hardship or failing to raise the payment funds after exerting reasonable, good faith efforts.  Rather, it is clearly just intentionally misconstruing the language of Section 4 to try to evade its obligations under the BSTS and under the Judge Carter's Order dated July 27, 2021.

39.     After the BSTS was signed, Defendants continued to obtain reports about Little Orbit stiffing other developers and service providers (such as Torus, Boombox, Play Magic, Wicked Witch and Way Forward) on payments for services rendered.  Therefore, Defendants tried to re-negotiate additional protections to ensure that they could reclaim and take back the development rights pursuant to BSTS Section 13 if – as has now occurred – Little Orbit failed to make even the first settlement payment.

40.     While those negotiations were not successful in providing Defendants with additional protections, it is clear that Judge Carter's Order is correct, and that Little Orbit is in

10

default for not making either of the first two settlement payments which are both now substantially overdue regardless of whether Judge Carter rescinded the extended Mulligan or do-over deadline.

41.     My damages opinion testimony was based on historical sales data of similar games and based on my more than 25 years of experience in the video game industry.  In addition to the qualifications previously disclosed, I played a central role in developing Star Citizen, one of the most popular and successful video games that started out in early access and sold over 2 million copies.  I lowered my damages estimate to make it conservative.  The $39 sales price was based on my fully disclosed discussions and negotiations with Interplay and other publishers in anticipation of Little Orbit getting terminated or otherwise failing to release a compliant game by November 17, 2021.  Selling a game this long and feature rich for $19.99 per game would not make sense unless the game released was the threatened, sub-Beta, gutted, early access version.

42.     Little Orbit's criticism of my testimony is incorrect and illogical.  New versions of the main gaming platforms (XBOX, SONY, NINTENDO, etc.) cost hundreds of dollars.  The new versions that are supposed to be out now are in very short supply due to the worldwide computer chip shortage.  Therefore, the current versions of the platforms will be in use for at least a few more years, which is evidenced by EA just releasing their top title Vanguard for both Xbox1, Xbox X, Playstation 4 and Playstation 5, just last week.

43.     The $2 million total revenue projection from Little Orbit only makes sense under the assumption that Little Orbit will fulfill its threat to make an unheard-of second early access version of the game with gutted features and functionality.

11

## **VERIFICATION**

I, Eric Peterson, on this 8th Day of November, 2021 pursuant to the laws of the States of

California and Texas and the United States of America, hereby certify and declare under oath

and under penalty of perjury that the foregoing is true and correct and that the facts stated in this

Declaration are true and correct.

Eric Peterson

# EXHIBIT A

# [PORTIONS OF EXHIBIT FILED UNDER SEAL PURSUANT TO ORDER OF THE COURT DATED APRIL 20, 2021]

**From:** Matt Scott <Matt.Scott@littleorbit.com>
**Sent:** Tuesday, March 23, 2021 7:05 PM
**To:** eric.peterson@feverpitchstudios.com
**Subject:** RE: Spoke to Herve some more



If your lawyer wants to push us on an answer – you have it. No extension needed. We are 100% onboard with the terms we
agreed to in November according to our definitions. I'm not going to make any payments. We'll split the first [          ]. He
can raise a stink or re-approach the judge, but that's not going to do anything. Those terms are crystal clear. We don't need
anyone's permission to move forward and release the game. There's a legally binding settlement that everyone agreed to that
says we can take the game to market.

Whitticar can sue me in a year over the revenue definition to get a couple more bucks.

Thanks,
Matt

# EXHIBIT B


DEFENDANT'S
EXHIBIT
B
tabbies®

D&B Business Directory

# GAMEOLIC S.R.L.

Limited Partnership

# Overview

**Doing Business As:** GAMEOLIC S.R.L.

**Company Description:** GAMEOLIC S.R.L. is located in Punta del Este, MALDONADO, Uruguay and is part of the Computer Systems Design and Related Services Industry. GAMEOLIC S.R.L. has 10 total employees across all of its locations and generates $145,718 in sales (USD).

**Key Principal:** Pablo Bongiorni

**Industry:** Computer Systems Design and Related Services ,  Professional, Scientific, and Technical Services ,  Computer software development and applications

**See other industries within the  Professional, Scientific, and Technical Services:** Accounting, Tax Preparation, Bookkeeping, and Payroll Services ,  Advertising, Public Relations, and Related Services ,  Architectural, Engineering, and Related Services ,  Legal Services ,  Management,

Case 8:20-cv-00089-DOC-JDE Document 119-1 Filed 11/08/23 Page 18 of 27 Page ID #:2072

Scientific, and Technical Consulting Services , Other Professional, Scientific, and Technical Services , Scientific Research and Development Services , Specialized Design Services

**Popular Search:**

Computer Systems Design and Related Services      Professional, Scientific, and Technical Services

**Address:** Avenida Franklin D. Roosevelt s/n Esquina Parada 15, Local 3 Punta del Este, MALDONADO, 20100 Uruguay

**Phone:** +598-42480636

**Website:** www.gameolic.com

**Employee (all sites):** 10 Ⓐ

**Revenue:** $145,718 Ⓐ | **Fiscal Year End:** DEC

**Year Started:** 2013 | **Incorporated:** 2013

# Contacts

Get in Touch with 4 Principals*
A D&B Hoovers Subscription is your foot in the door to GAMEOLIC S.R.L. contact information.

| | | |
|---|---|---|
| **Pablo Bongiorni**<br>Managing Partner | **Cinthia Peralta**<br>Partner | **Heraldo Dardis**<br>Partner |
| **Miriam Acosta**<br>Partner | | |

# Financial Statements

Dun & Bradstreet collects private company financials for more than 23 million companies worldwide. Find out more.

Get a D&B credit report on this company

Revenue in USD

**ANNUAL REVENUE 2013**

# $145,718 USD 

1 USD = 5.9738 ARS

Case 8:20-cv-00089-DOC-JDE    Document 119-1    Filed 11/08/21    Page 20 of 27    Page ID #:2074

Home



Follow

0 Follower

## GameOlic Development Studio

We love what we do.

**0.0 (0 Reviews)**

Visit Website (https://www.gameolic.com/)

GameOlic Development Studio is an indie videogame development firm based in Punta del Este, Uruguay. We are the tango dancers, the Latin lovers, the tall dark strangers from the southern hemisphere of the gaming industry. Passion defines us.

| | |
|---|---|
| **Hourly Rate** | **Employees** |
| < $25/hr | 2 - 9 |
| **Founded** | **Locations** |
| 2014 | Uruguay |

📝 Write a Review (/reviews/add/18430/gameolic-development-studio)



Services

**GameOlic Development Studio**

Gaming, Unreal Engine, Developers, ARCore, Vuforia, AR Technologies, Art & Animation, Mobile, PC, Console, Engineering & Technology, eSports, Consumer Products, Video Game Development, and Marketing & Communications

We love what we do.

**0.0 (0 Reviews)**

Visit Website (https://www.gameolic.com/)

Read more (/company/gameolic-development-studio/services)

Case 8:20-cv-00089-DOC-JDE    Document 119-1    Filed 11/08/21    Page 21 of 27    Page ID
#:2075

Focus

Service Focus



100 %

Game Development

View all focus area (/company/gameolic-development-studio/focus)

## Contact information

GameOlic Development Studio

1 GameOlic Way, Punta del Este, Maldonado , UY, Maldonado, Maldonado 00000
Uruguay

### GameOlic Development Studio

We love what we do.

0.0 (0 Reviews)

## Similar Companies

Visit Website (https://www.gameolic.com/)

### Logic Simplified (/company/logic-simplified)

# EXHIBIT C

# [ENTIRE EXHIBIT FILED UNDER SEAL PURSUANT TO ORDER OF THE COURT DATED APRIL 20, 2021]

# EXHIBIT D

# [ENTIRE EXHIBIT FILED UNDER SEAL PURSUANT TO ORDER OF THE COURT DATED APRIL 20, 2021]

# EXHIBIT E

# [ENTIRE EXHIBIT FILED UNDER SEAL PURSUANT TO ORDER OF THE COURT DATED APRIL 20, 2021]

# EXHIBIT F

 Gmail

Michael W...                    ...ail.com>

**DEFENDANT'S EXHIBIT**

## Descendent - Give me a call when you get a chance

**Michael Whitticar** <mikew@novaiplaw.com>                    Mon, Oct 4, 2021 at 4:22 PM
To: Mr Danton Richardson <mdantonrichardson@yahoo.com>

Remember that your client cannot release the game without paying the money and otherwise fully complying with the court's orders.

We will terminate the IP License if Little Orbit tries that.

We will consider letting the game publish if we get to see and test the current version of the game software.

Please send that over immediately.

Sincerely,

Michael C. Whitticar

NOVA IP Law, PLLC
155 Broadview Avenue
Suite 200
Warrenton, VA 20186
Telephone:   (571) 386-2980
Fax:  855-295-0740
www.novaiplaw.com
mikew@novaiplaw.com


On Wed, Sep 29, 2021 at 12:39 PM Mr Danton Richardson <mdantonrichardson@yahoo.com> wrote:
[Quoted text hidden]

## CERTIFICATE OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years,

employed in the County of Los Angeles, State of California, and am not a party to the

above-entitled action.

On November 8, 2021, I filed a copy of the following document(s):

**[REDACTED] DECLARATION OF ERIC PETERSON IN SUPPORT OF
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE THE
COURT'S JULY 27, 2021 ORDER, FOR CONTEMPT SANCTIONS, FOR A
DECLARATION OF ENTITLEMENT TO SUSPEND OR TERMINATE THE
SETTLEMENT AGREEMENT AND IP LICENSE, AND TO ENJOIN
LITTLE ORBIT FROM RELEASING THE GAME**

By electronically filing with the Clerk of the Court using the CM/ECF system which
will send notification of such filing to the following:

- **Leo Edward Lundberg , Jr**

  leo.law.55@gmail.com

- **Michael Danton Richardson**

  mdantonrichardson@yahoo.com


Executed on November 8, 2021, at Los Angeles, California.  I hereby certify

that I am employed in the office of a member of the Bar of this Court at whose

direction the service was made.

/s/ Diane Hashimoto_____
Diane Hashimoto